1                  UNITED STATES DISTRICT COURT
                    MIDDLE DISTRICT OF FLORIDA
2


3
     JENNA CLARK,
4
         Plaintiff,
5                                    CASE NO.: 2:22-cv-614-SPC-NPM
     v.
6
     CARMINE MARCENO, in
7    his official capacity
     as Sheriff of Lee
8    Country, Florida,

9        Defendant.
     ----------------------/
10
                          ZOOM DEPOSITION OF
11
                            TANYA TANNER
12
                   TAKEN ON BEHALF OF PLAINTIFF
13


14
     DATE TAKEN:     Wednesday, October 18, 2023
15
     TIME:           10 a.m. to 11 a.m.
16
     PLACE:          All parties appeared via videoconference
17


18


19


20


21


22
           Examination of the witness taken before:
23
                        Julie S. Evans
24            Court Reporter and Notary Public

25

```
 1   APPEARANCES:

 2   KYLE T. MACDONALD, ESQUIRE (via Zoom)
     Derek Smith Law Group, PLLC
 3   520 Brickell Key Dr.
     Suite O-301
 4   Miami, Florida 33131

 5        On behalf of the Plaintiff.

 6   DAVID J. STEFANY, ESQUIRE (via Zoom)
     Allen Norton & Blue, P.A.
 7   324 South Hyde Park Avenue
     Suite 225
 8   Tampa, Florida 33606-4128

 9        On behalf of the Defendant.

10                           - - - - -

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

```
 1                    EXAMINATION INDEX

 2   ZOOM TESTIMONY OF TANYA TANNER
            DIRECT BY MR. MACDONALD                  4
 3          CROSS BY MR. STEFANY                     37

 4   CERTIFICATE OF OATH                             41

 5   CERTIFICATE OF REPORTER                         42

 6

 7                     EXHIBIT INDEX

     Plaintiff's
 8    1       Notice of Taking Deposition            7

 9    11      Bates 567-575; Annual Performance      21
              Evaluation; Jenna Clark
10

11

12                     - - - - -

13               S T I P U L A T I O N S

14         It is hereby agreed and so stipulated by and

15   between the parties hereto, through their respective

16   counsel, that the reading and signing of the transcript

17   are hereby waived.
                         - - - - -
18

19

20

21

22

23

24

25
```

```
 1                  P R O C E E D I N G S

 2            THE COURT REPORTER:  Today is Wednesday,

 3       October 18, 2023.  The time is approximately

 4       10 a.m.  This is the Zoom deposition of Tanya

 5       Tanner, being taken in the matter of Jenna Clark v.

 6       Carmine Marceno, as Sheriff of Lee County.  Will

 7       counsel please state their appearance, for the

 8       record, beginning with Plaintiff's counsel.

 9            MR. MACDONALD:  Kyle MacDonald, for the

10       Plaintiff, Jenna Clark.

11            MR. STEFANY:  David Stefany, with the firm of

12       Allen Norton & Blue, for Sheriff Carmine Marceno.

13            THE COURT REPORTER:  Ms. Tanner, please raise

14       your right hand.  Do you solemnly swear or affirm

15       your testimony will be the truth, the whole truth,

16       nothing but the truth, so help you God?

17         THE WITNESS:  Yes, ma'am.

18   THEREUPON:

19                     TANYA TANNER,

20   having first been duly sworn, testified as follows:

21                   DIRECT EXAMINATION

22   BY MR. MACDONALD:

23       Q.   Good morning, Ms. Tanner.  My name is Kyle

24   MacDonald, and I represent Ms. Clark in her lawsuit

25   against Carmine Marceno, in his official capacity as
```

1    Sheriff of Lee County, Florida.  Thank you for being

2    here today.

3        A.    Thank you.  You're welcome.

4        Q.    Could you please begin by stating your full

5    name, for the record.

6        A.    Tanya Lynn Tanner.

7        Q.    Have you ever been deposed before, Ms. Tanner?

8        A.    Yes, I have.

9        Q.    And when were you deposed previously?

10       A.    It's been a little bit; it was back when I

11   first started my work in Communications.

12       Q.    Would you say it was more than five years ago?

13       A.    Yes.

14       Q.    And you said it was related to your role at the

15   Lee County Sheriff's Office; correct?

16       A.    Yes, sir.

17       Q.    So even though this isn't your first

18   deposition, I'm going to go over a few things, just so

19   we're on the same page.  Okay?

20       A.    Okay.

21       Q.    Do you understand that you've been placed under

22   oath and that you have an obligation to testify

23   truthfully?

24       A.    I do.

25       Q.    And do you understand that even though we are

1    conducting this testimony via Zoom, your testimony has

2    the same force and effect as if you were testifying in a

3    court of law, before a judge and jury?

4        A.   I do.

5        Q.   Now, the court reporter cannot transcribe any

6    inaudible responses, like gestures or shrugs; so just

7    please make sure you respond clearly, just as you have

8    been doing.  Okay?

9        A.   Yes, sir.

10       Q.   And the court reporter also cannot accurately

11   reflect your responses if we speak at the same time.  So

12   I'll wait for you to finish your answers, and I'd just

13   ask that you wait until I finish my questions.  Is that

14   fair?

15       A.   Yes.

16       Q.   Now, I want to ensure we get your best

17   testimony.  So if there's a question that you don't

18   understand or you think is confusing, just tell me; I

19   can go ahead and try and rephrase it for you.  Okay?

20       A.   Okay.

21       Q.   And on the same note, if you do not say

22   anything, I'm going to assume that you understood the

23   question as asked.  Okay?

24       A.   Okay.

25       Q.   If you need to take a break at any point, to go

1   to the bathroom, get a glass of water, anything like

2   that, just let me know and we can go ahead and take a

3   break.   Okay?

4        A.   Yes.

5        Q.   Do you understand that you are here today to

6   testify on behalf of the Lee County Sheriff's Office?

7        A.   Yes, sir.

8        Q.   And do you understand that your answers are

9   based not only on your personal knowledge but also all

10  knowledge known or reasonably available to the Lee

11  County Sheriff's Office?

12       A.   Yes, sir.

13       Q.   And do you understand that your answers will be

14  binding on the Lee County Sheriff's Office?

15       A.   Yes, sir.

16       Q.   I'm going to show you a document.  (Screen

17  share began.)  This has been previously marked as

18  Plaintiff's Exhibit 1.  Have you ever seen this document

19  before?

20       A.   Yes, I have.

21       Q.   I'm going to draw your attention down to

22  paragraphs 7 through 10.  Are you prepared to give

23  testimony regarding the topics listed in paragraphs 7

24  through 10, listed here on this document?

25       A.   Yes, sir.

1    Q.   And are you prepared to give testimony

2    regarding the topics listed in paragraphs 25, 27, and

3    28, listed here on this document?

4    A.   Yes, sir.

5    Q.   Okay.  Where are you conducting this deposition

6    here today from?

7    A.   Down at the Sheriff's Office headquarters, in

8    the intelligence conference room.

9    Q.   Is anyone else in the room with you today?

10   A.   No.

11   Q.   And it looks like you have some documents in

12   front of you; is that correct?

13   A.   That's correct.

14   Q.   And what documents are those?

15   A.   I have the document that you just showed me,

16   and then I have policies relating to those areas that

17   are referenced.

18   Q.   Okay.  And those policy documents are all

19   employment policies of the Lee County Sheriff's Office,

20   I imagine; is that correct?

21   A.   Yes, sir.

22   Q.   Anything else, besides those policy documents

23   and that notice document that I previously showed you?

24   A.   No, sir.

25   Q.   What did you do to prepare for today's

 1   deposition?

 2       A.   I had a meeting last Friday with Attorney

 3   Stefany and then he showed me some -- we went over this

 4   document that you had showed me previously and then I

 5   pulled policies pertaining to that and we went over it.

 6       Q.   Okay.  And you don't have to tell me anything

 7   you discussed with Mr. Stefany.  But did you speak to

 8   anyone else, besides Mr. Stefany, about your deposition

 9   today?

10       A.   No, sir; outside of my supervisor because he

11   knew I had to be here today.

12       Q.   And who is your supervisor?

13       A.   Stan Nelson.

14       Q.   You said Dan Nelson; is that correct?

15       A.   Stan, S-T-A-N.

16       Q.   And what is his title?

17       A.   He is the primary search director.

18       Q.   Does the Lee County Sheriff's Office conduct

19   performance reviews for its employees?

20       A.   Yes.

21       Q.   And what is the purpose of the performance

22   reviews conducted by Lee County Sheriff's Office?

23       A.   To evaluate the employee on their performance

24   and anything that they can improve on and to let them

25   know where they stand with their supervisor.

1     Q.    And when you say, to let them know where they

2  stand with their supervisor, what do you mean by that?

3     A.    How well that they're doing, how well they've

4  done throughout the year, if there's anything they need

5  to improve on.

6     Q.    Does every employee undergo a performance

7  review at the Lee County Sheriff's Office?

8     A.    Every employee, yes.

9     Q.    Does that include civilian employees and

10 certified employees, I believe they're called?

11    A.    Yes, sir.

12    Q.    And how often are the performance reviews

13 conducted?

14    A.    For on an employee that's off probation, it's

15 every year; if you're on probation, which means new

16 hires, you get them every two months, until you've

17 completed your one-year probation.

18    Q.    And who typically conducts an employee's

19 performance evaluation?

20    A.    Their supervisor.

21    Q.    Is it required to be an employee's supervisor

22 or can another employee conduct the performance

23 evaluation?

24    A.    It has to be their supervisor.

25    Q.    In what areas are employees evaluated?

1    A.    I'm going to refer to one of the evaluations.

2  They refer to their job tasks, their proficiencies, and

3  policy; those are the three topic areas.

4    Q.    Do you mind repeating those one more time for

5  me.

6    A.    Policy, proficiency, and job tasks.

7    Q.    And what are the possible ratings that an

8  employee could receive in a performance evaluation?

9    A.    Meets standard, requires improvement, and below

10  standard.

11    Q.    You said meets standard, requires improvement;

12  and what was the third one?

13    A.    Below standard.

14    Q.    Is it seen as a positive thing if an employee

15  gets a "meets standard" rating in a performance

16  evaluation?

17    A.    Yes.

18    Q.    And what if an employee receives "requires

19  improvement"; what does that mean, in terms of their job

20  at the Lee County Sheriff's Office?

21    A.    That there's something within there that they

22  may be lacking in, that they need some improvement; and

23  then the supervisor goes over it with them and gives

24  them a chance to try to improve it, prior to the end of

25  their evaluation.

1    Q.   So if an employee receives "requires

2  improvement" is there typically a plan put in place, to

3  improve in that area?

4    A.   Yes, sir.

5    Q.   And what happens if an employee receives "below

6  standard," in terms of their job at the Lee County

7  Sheriff's Office?

8    A.   If they receive a "below standard" evaluation

9  and they haven't fixed the areas that they were lacking

10  in, it just is a "below standard"; and then, if they do

11  not agree with the comments, they're able to either make

12  comments explaining why, or they can -- we have an

13  appeals process for that.

14    Q.   So you said if an employee doesn't agree with

15  the "below standard" rating, they could make comments on

16  the performance review?

17    A.   That is correct.

18    Q.   And does anyone have to approve those comments,

19  or is it whatever the employee wants to put as a

20  comment?

21    A.   The employee can put their comment down there,

22  the supervisor reviews it; and then, if they do not have

23  an agreement, then it proceeds to be -- it becomes part

24  of their personnel file.  If the employee does not want

25  to appeal it to go any further, then that's where it

1    stays.

2           There is a second level signature; so however,

3    if the supervisor -- so if it's my evaluation, I wasn't

4    okay with the comments but I just had a conversation

5    with my supervisor over it, his supervisor at that point

6    will then sign off on it, so they are aware of what is

7    going on; it's just not between the employee and the

8    supervisor.  However, if I still am not happy with it,

9    at that point then I can say, "I want the comments

10   removed"; then I have to do the appeal process, where

11   that goes up to the next level supervisor and the

12   commander, should there be one over that area.

13       Q.   And you said that that second level signature

14   only comes in if an employee has comments; is that

15   correct?

16       A.   No, sir.  Every -- every evaluation has a

17   second level supervisor.

18       Q.   So regardless of the rating, there's always the

19   second level supervisor that signs off; correct?

20       A.   That is correct.

21       Q.   And that second level supervisor, I would

22   imagine, it is typically the supervisor of that

23   employee's supervisor; is that accurate?

24       A.   That is correct.

25       Q.   And if an employee wants to appeal that

1   evaluation, what does that process look like?

2       A.    I'm going to refer to policy, because we don't

3   have that often, so.  (Witness peruses document).  Can I

4   read what it says here in the policy, or do you just

5   want me to kind of give you a synopsis?

6       Q.    I'd like you to tell me in your own words, if

7   you can.

8       A.    Okay.  So if an employee disagrees with their

9   performance rating, they have to provide/submit a

10  written letter to their division commander, explaining

11  their disagreement; following receipt of the division

12  commander receiving it, they will meet with the

13  employee; the meeting will take place as soon as

14  administratively feasible, but within 10 days of the

15  division commander receiving it.

16          After the discussion with the members, the

17  commander will then forward the recommendation resolving

18  the matter to their respective bureau commander.  So the

19  bureau commander, at that point, will then review it and

20  then communicate their decision to the division

21  commander, rating supervisor, and the employee.

22          If the employee is still not happy with the

23  outcome of it and disagrees with the bureau commander of

24  the final resolution, they can submit a formal written

25  objection to attach to the performance evaluation form,

1    to be placed into their personnel file.

2         Q.    And you said, in your experience, those appeals

3    are fairly rare?

4         A.    That is correct.

5         Q.    And let me ask you, do you interact with the

6    performance evaluation process often, in your role at

7    the Lee County Sheriff's Office?

8         A.    Yes.  That is part of my responsibility as an

9    accreditation; I'm over the performance evaluation.

10        Q.    Do you review employee performance evaluations

11   often, in your role?

12        A.    The program coordinator that reports to me,

13   she's responsible for reviewing every evaluation that

14   comes in, and she has to check to make sure they're

15   turned in on time and that type of thing.

16        Q.    How common would you say it is for an employee

17   to receive a "requires improvement" or "below standard"?

18        A.    I'm sure it happens often.  Like, to be able to

19   put that in, like, say monthly or that type of thing, I

20   would say it happens monthly.  Because we have people

21   that are on probation, and they're still doing their

22   training process.  So not always is a "requires

23   improvement" negative or bad; it could just be something

24   they need to improve to get where they need to be.

25        Q.    Would you say that a "below standard" rating

1  could be seen as something negative for an employee?

2      A.   Yes.

3      Q.   Is a "below standard" rating more rare among

4  Lee County Sheriff's Office employees, from your

5  experience?

6      A.   I would say it's not rare; I mean, I know it

7  happens, but I would say -- I wouldn't say that it's

8  rare that it happens, no.

9      Q.   If an employee gets a "below standard" rating,

10 does that ever result in disciplinary action taken

11 towards the employee?

12          MR. STEFANY:  Counsel, can I just interject a

13     clarification, which I think is needed?  When you

14     are asking about a rating, are you talking about a

15     rating on a particular job task, or are you talking

16     about an overall rating for a performance

17     evaluation?

18          MR. MACDONALD:  An overall rating.

19          MR. STEFANY:  Okay.  So with that

20     clarification, that's fine.  I just wanted to make

21     sure the witness was answering it with that scope.

22          MR. MACDONALD:  Not a problem.

23 BY MR. MACDONALD:

24     Q.   So let me rephrase the question.  If an

25 employee -- let's start with overall.  If an employee

1    receives an overall rating that they're below standard,

2    does that happen often?

3        A.   I would say that happens -- when you say

4    "often," I guess, could you clarify "often"?

5        Q.   Well, let me ask you this.  In your role, you

6    obviously interact with performance evaluations.  Let's

7    say in the past year, have you seen any employees with

8    below standard ratings given on their performance

9    evaluation?

10           MR. STEFANY:  As an overall rating?

11   BY MR. MACDONALD:

12       Q.   As an overall rating.

13       A.   I would say yes.

14       Q.   And do you recall, roughly, how many employees

15   you've seen in the past year with "below standard"

16   overall ratings?

17       A.   I do not.

18       Q.   Now, can you elaborate a little bit on the

19   difference between an overall rating versus in

20   particular areas on a performance evaluation?

21       A.   The required improvement is what is on the

22   individual tasks, per se, for the evaluation.  So as a

23   supervisor, we have different -- different areas under

24   each one of those groups, talking about policy and

25   proficiency and task; so that is where they would give

1    them a "meets standards," "required improvement," or

2    "below"; or it can also be not evaluated.  If it's an

3    area that doesn't pertain to, say, a civilian, security

4    of inmates; that wouldn't pertain to a civilian job

5    task, so that's like a non-evaluated area.

6            So if you're getting a "required improvement,"

7    that's on the individual's actual area that you're

8    actually being evaluated on, not the overall.

9        Q.   Can you get a "required improvement" rating on

10   the overall evaluation?

11       A.   It will stay on the evaluation, but that's

12   where it would go until the "below standard" evaluation.

13   I have to look; I think if you get more than, hold on.

14   (Witness peruses document.)

15           It appears, if they get one RI, it will make it

16   a "below standard," unless they are able to correct

17   that.  So they get time to -- if you're giving an

18   employee an RI, you're supposed to give them enough

19   notification ahead of time to set a plan in place so

20   they can correct that, prior to the end of their

21   evaluation period; so if they correct it prior to that,

22   then it will not be a "below standard."

23           If they get more than one, clearly, they would

24   have to clear up all of those before the end of the

25   rating period, or it would still remain a "below

 1    standard."

 2        Q.   So what you're saying is if an employee

 3    receives a "requires improvement" in a particular task,

 4    then it would result in an overall rating of "below

 5    standard," unless it's fixed by the employee; is that

 6    correct?

 7        A.   Yes.

 8        Q.   And we said that the "requires improvement" is

 9    not necessarily a rare evaluation rating that's given to

10    an employee sometimes, if they need to improve?

11        A.   Yes.

12        Q.   And what is your current job title at the Lee

13    County Sheriff's Office?

14        A.   Accreditation manager.

15        Q.   Accreditation manager.  And how long have you

16    been an accreditation manager for?

17        A.   I have been the accreditation manager going on,

18    I would say at least -- at least ten to twelve years.

19        Q.   And in your role as accreditation manager, did

20    you ever see or supervise any performance evaluations

21    from the purchasing department of Lee County Sheriff's

22    Office?

23        A.   Did I ever see -- could you repeat the

24    question?  I'm sorry.

25        Q.   Yeah, no problem at all.  So in your role as

Deposition of Tanya Tanner                                    Jenna Clark v. Carmine Marceno

1    accreditation manager, did you ever see any performance

2    evaluations for employees of the Purchasing Department?

3         A.   I'm going to say no, outside of -- unless there

4    was a problem; but I don't recall there being a problem.

5              If the program coordinator has an issue and

6    she's looking at it, or a supervisor calls her with a

7    question and she needs additional guidance on how to

8    handle it, then that's usually where she'll come to me

9    and ask me which way to go with it.  So I do not

10   personally review every single one of them that comes

11   in; Vanessa, who is the program coordinator for

12   performance evaluations, does that.

13        Q.   And what is Vanessa's last name?

14        A.   Smith.

15        Q.   And you are Vanessa Smith's supervisor; is that

16   correct?

17        A.   That's correct.

18        Q.   And Vanessa Smith is responsible for looking at

19   every performance evaluation in Lee County Sheriff's

20   Office; is that fair to say?

21        A.   Yes, sir.

22        Q.   I'm going to show you a document.  (Screen

23   share began.)  We're going to mark this as Plaintiff's

24   Exhibit 11.  And it's Defense Bates label 567 through

25   575.

1        So I first just want you to review the first

2   three pages of this document.  So we'll go through it in

3   parts.  So just let me know when you'd like me to

4   scroll.

5        A.   Okay.  I'm going to have to move up a little

6   closer.  7/15 of 2020, is that the --

7        Q.   That's correct.

8        A.   Okay.  I have that in front of me.

9        Q.   I want to make sure you look at the same one

10  that I'm showing you as well, so you're welcome to move

11  closer, as I'm not sure what particular document you may

12  have in front of you.

13       A.   I want to see it closer.

14       Q.   It's not problem at all.

15            MR. STEFANY:  Was this Exhibit 2, Kyle?

16            MR. MACDONALD:  It's Exhibit 11, because

17       they're marked sequentially.

18            MR. STEFANY:  And the Bates pages are 567 to

19       what?

20            MR. MACDONALD:  It is 570 to 575 -- or, I'm

21       sorry, 567 to 575.

22            MR. STEFANY:  Okay.

23            (Witness peruses the document.)

24            MR. STEFANY:  Is there a question pending?

25            MR. MACDONALD:  I was just giving the witness a

1      moment to review.

2   BY MR. MACDONALD:

3      Q.   If you'd like me to scroll, I can go to the

4   next one.  Just let me know when you've had a chance to

5   review that first page.

6      A.   You can go to the next one.  (Document was

7   scrolled.)  Okay.  (Document was scrolled to page 3.)

8   Okay.

9      Q.   Do you recognize these first three pages of the

10  document I'm showing you?

11     A.   Yes.

12     Q.   And what is it?

13     A.   It's the evaluation -- the performance -- the

14  annual evaluation form.

15     Q.   So it's an annual performance evaluation for

16  which employee?

17     A.   Jenna Clark.

18     Q.   And do you see where it says, "Review date

19  7/2/2021"?

20     A.   Yes.

21     Q.   And that would be the date on which the review

22  was conducted; is that correct?

23     A.   When it was completely signed off on, yes.

24     Q.   And the period for which Ms. Clark was being

25  rated here was from 6/5/2020 to 6/4/2021; is that

1    correct?

2         A.    That's correct.

3         Q.    And here, the topic says "Overall rating, MS";

4    is that correct?

5         A.    That's correct.

6         Q.    And what does that "MS" stand for?

7         A.    Meets standards.

8         Q.    And on the left-hand side here it says the

9    supervisor is Annmarie Reno; is that correct?

10        A.    That's correct.

11        Q.    And would that be Ms. Clark's supervisor

12   completing the performance evaluation?

13        A.    Yes, sir.

14        Q.    And now, if we scroll down, these individual

15   items listed here, these seem to be particular job

16   tasks; is that correct?

17        A.    That's correct.

18        Q.    And the "MS" listed for the job tasks would be

19   "meets standards," I imagine; is that correct?

20        A.    That's correct.

21        Q.    And on this first page, it looks like all of

22   the job tasks say "MS," except for one that says "NE";

23   is that correct?

24        A.    That's correct.

25        Q.    And what does "NE" stand for?

1      A.    Not Evaluated.

2      Q.    And it looks like the task for Not Evaluated is

3    "security/care of detainees"; is that correct?

4      A.    That's correct.

5      Q.    I assume that would not one that's not

6    applicable to Ms. Clark's job position?

7      A.    Yes, sir.

8      Q.    And then, if we scroll to the next page, it

9    looks like there's several more job categories -- or

10   sorry, strike that.

11          If we go to the second page, it looks like

12   there's several job tasks that receive ratings as well;

13   is that correct?

14     A.    It's proficiency tasks, yes.

15     Q.    And what is a proficiency task?

16     A.    Those are more related to our rules and

17   regulations of how they interact with other employees or

18   outside individuals, their judgment, leadership skills,

19   job knowledge.  So there's various.

20     Q.    And those all seem to have received positive

21   ratings; is that correct?

22     A.    That's correct.

23     Q.    And the next category below that, it says

24   "Type: Career Counseling Plan"; is that correct?

25     A.    Yes.

1    Q.    What is a Career Counseling Plan in this

2    context?

3    A.    That is where the employee, prior to signing

4    off, the supervisor goes over their evaluation with them

5    and then discusses any additional plans that they may

6    have; and then the employee fills in their goals, their

7    various short-term and long-term goals.

8    Q.    And these goals, are they made in conjunction

9    with the supervisor for the employee?

10    A.    The supervisor allows them to fill the

11    information in and then goes and looks over it with

12    them, prior to completing the evaluation.

13    Q.    And for Jenna Clark's Career Counseling Plan,

14    under Long-term Goals, do you see where it says, "Next

15    January, get ready for the DROP, stay healthy, and

16    retire"?

17    A.    Yes.

18    Q.    Is that statement something that Ms. Reno would

19    have to approve?

20    A.    No.  They don't have to approve their goals.

21    They can ask them to make them better, if they want to;

22    but that's just the supervisor, in general.  But they

23    don't have to technically approve that; that's just the

24    employee's view on what they project for themselves.

25    Q.    And what is the "DROP" referenced there in that

 1   sentence; do you know?

 2        A.   I believe it's the Deferred Retirement

 3   Opportunity Program; I would have to actually look, to

 4   get the exact words, but.

 5        Q.   Would that be referring to Ms. Clark's

 6   retirement, the DROP that's referenced there?

 7        A.   Yes, sir.

 8        Q.   And under the next two categories, Previous

 9   Requires Improvement and Current Requires Improvement,

10   do you see anything listed there?

11        A.   No, I do not.

12        Q.   So looking at this performance evaluation,

13   would you agree that Ms. Clark did not receive any

14   requires improvement, in any areas?

15        A.   Yes, I would.

16        Q.   And is it fair to say that, during your time in

17   your role, that employees have gotten worse performance

18   ratings than the ones I'm showing you here?

19        A.   Yes.

20        Q.   And we said that the overall rating on this

21   particular evaluation was "meets standard"; is that

22   right?

23        A.   That's correct.

24        Q.   And that's the highest possible overall rating

25   that an employee can receive; correct?

 1        A.    That is correct.

 2        Q.    All right.  Now I'm going to show you another

 3   document -- or part of the same document, I should say.

 4   I'll give you a chance to review this first page.  Just

 5   let me know when you would like me to scroll.

 6        A.    Okay.  (Witness peruses the document.)  Okay.

 7   (Document was scrolled to next page.)  Okay.  (Document

 8   was scrolled to next page.)  Okay.

 9        Q.    Now, do you recognize these three pages that

10   I'm showing you in the document?

11        A.    Yes, I do.

12        Q.    And what is it?

13        A.    It's Jenna's annual evaluation for the rating

14   period of 6/5/2019 to 6/4/2020.

15        Q.    And it looks like this evaluation would have

16   been finalized on 7/15/2020; is that correct?

17        A.    Yes.

18        Q.    And this evaluation was also conducted by

19   Annmarie Reno; is that correct?

20        A.    That's correct.

21        Q.    And at the top here, it says "Overall rating,

22   MS."  Do you see that?

23        A.    Yes, I do.

24        Q.    And that would mean that this overall rating

25   that Ms. Clark received for this evaluation was "meets

```
 1    standard"; is that right?

 2         A.    That's right.

 3         Q.    And looking at these individual tasks listed

 4    here on the first page, it looks like all of the tasks

 5    received the MS rating, except for one, which is

 6    "security and care of detainees"; is that right?

 7         A.    That's correct.

 8         Q.    And that one task, similar I think to the last

 9    performance evaluation we reviewed, that "NE" means it's

10    not applicable to this particular job position; is that

11    right?

12         A.    That's correct.

13         Q.    And scrolling down to the second page, there

14    are some proficiencies listed.  That's what we called

15    them; right?

16         A.    Yes.

17         Q.    And those proficiencies, each received ratings

18    of "MS"; is that correct?

19         A.    That's correct.

20         Q.    So looking at the individual tasks and the

21    proficiencies, it seems that all of them received a

22    "meets standard" rating; is that correct, except for the

23    ones that were not applicable?

24         A.    That is correct.

25         Q.    And under Career Counseling Plan, there are
```

Deposition of Tanya Tanner                                    Jenna Clark v. Carmine Marceno

1   goals listed there, as well; is that right?

2        A.   That's right.

3        Q.   And under long-term goals for this particular

4   performance evaluation, do you see where it says, "2022,

5   reach retirement at 30 years, slash, stay healthy and

6   possibly go into the DROP"?

7        A.   Yes.  I see that.

8        Q.   And the DROP that's referenced is the same one

9   that's referenced in that last performance evaluation;

10  is that fair to say?

11       A.   Yes.

12       Q.   And it appears to be referencing Ms. Clark's

13  retirement; is that right?

14       A.   That's correct.

15       Q.   Now, under the previous "requires improvement"

16  and current "requires improvement," do you see anything

17  listed there?

18       A.   I do not.

19       Q.   Now, based on your review of this performance

20  evaluation, would you say that this was a positive

21  performance evaluation rating given to Ms. Clark?

22       A.   Yes.

23       Q.   And do you see any comments listed under the

24  Comments section?

25       A.   I do not.

1    Q.    Now, earlier, we spoke about a second line

2    supervisor having to sign off on these performance

3    evaluations; is that correct?

4    A.    That's correct.

5    Q.    Now, based on your review of the performance

6    evaluation I'm showing you and the last one I showed

7    you, who appears to be the second line supervisor to

8    sign off on Ms. Clark's performance evaluation?

9    A.    John Holloway.

10   Q.    And who is that?

11   A.    He is the undersheriff of the Sheriff's Office.

12   Q.    So the undersheriff would have reviewed and

13   approved this performance evaluation; is that correct?

14   A.    That's correct.

15   Q.    All right.  Now, moving down to the next

16   performance evaluation -- I'll give you a moment to

17   review this.

18   A.    Okay.  (Witness peruses the document.)  Okay.

19   (Document was scrolled to next page.)  Okay.  (Document

20   was scrolled to next page.)  Okay.

21   Q.    Do you recognize these three pages of the

22   document that I'm showing you?

23   A.    Yes, I do.

24   Q.    And what is this?

25   A.    It's Jenna's annual evaluation, from June 5,

1    2018 through June 4, 2019.

2         Q.    And it looks like this performance review would

3    have been finalized on 7/9/2019; is that right?

4         A.    That's correct.

5         Q.    And it notes that this performance evaluation

6    was conducted by Annmarie Reno; is that right?

7         A.    Yes.

8         Q.    And it appears that the overall rating on this

9    particular evaluation was "MS," for "meets standards";

10   is that right?

11        A.    Yes.

12        Q.    And that's the highest possible that Ms. Clark

13   could have received for an overall rating; correct?

14        A.    That's correct.

15        Q.    Now, looking at the individual tasks listed

16   here on the first page, similar to the last two

17   performance evaluations that we reviewed, it appears

18   that all of the ratings are "MS" for "meets standards,"

19   except for the job task of "security-slash-care of

20   detainees"; is that right?

21        A.    That's correct.

22        Q.    And that "NE" rating is written there because

23   it's not applicable to Ms. Clark's job; is that correct?

24        A.    That's correct.

25        Q.    Scrolling to the second page, under the

1  proficiencies listed, it appears that Ms. Clark also

2  received the "MS" rating for each of those

3  proficiencies; is that right?

4       A.    Yes.

5       Q.    And under Career Counseling Plan, do you see

6  under Long-Term Goal where it says, "Stay healthy,

7  retire-slash-go into DROP, at 30 years of service, June

8  2020"?

9       A.    Yes.

10       Q.    Do you know what that 30 years of service

11  that's referenced here refers to?

12       A.    Yes, I do.

13       Q.    And what does that refer to?

14       A.    For civilians, we have to have 30 years of

15  service or reach the age of 62, I believe it is, before

16  we are eligible to go into -- before we're eligible to

17  retire, before going into the DROP.  Which at that

18  point, means if you go into the DROP, then you have to

19  leave -- you have five years -- you still work, but any

20  time within the five years, you can go ahead and retire.

21       Q.    Any time within the five years of, what?

22       A.    Any -- so let's say for this person, once she

23  met her 30 years, she would be eligible to go into the

24  DROP, or just say, "I want to retire"; so she could have

25  just retired or she could have went into the DROP, which

1   means she would have been -- technically been retired,

2   but she will still work.  And then you can do that up

3   until the end of the five years, but at the end of that

4   five years, you have to retire officially.

5        Q.   Now, among the employees at Lee County

6   Sheriff's Office, is there a preference between the DROP

7   program versus the standard 30 years of service, from

8   your experience?

9        A.   Is there a difference?

10       Q.   Is there a preference among employees as to

11  which one they might prefer?

12            MR. STEFANY:  I'm going to object to the form

13       of that question before the witness answers it.

14            You may answer, subject to that objection.

15            THE WITNESS:  Would you repeat your question,

16       again?  I'm sorry.

17  BY MR. MACDONALD:

18       Q.   Yes, I can.  In your experience as an employee

19  of the Lee County Sheriff's Office, is there a

20  preference among employees whether to participate in

21  that DROP program or the standard 30 years of service?

22            MR. STEFANY:  Same objection.

23            THE WITNESS:  I mean, I can't really answer

24       that, due to the fact that I don't know; some do,

25       because within the five years, I believe it goes

Deposition of Tanya Tanner                                    Jenna Clark v. Carmine Marceno

```
1        off, like, your -- basically, the longer you stay,

2        the more money you'll get within your retirement;

3        so some of them do like to stay for that, and then

4        others -- because once you go into the DROP, they

5        take, like, the last three years of your annual pay

6        to determine how much your income will be, per se.

7            So once you go into DROP, so if you decide, "I

8        don't want to go into DROP at 30 years," but then

9        you still continue to work; and then you say,

10       "Okay.  I want to go into the DROP at," let's say,

11       "32 years," then they base your retirement pay off

12       the past three years, your top pay.

13           So it just depends on the individual on if they

14       want to go ahead and go, or if they want to

15       continue to stay.

16   BY MR. MACDONALD:

17       Q.   And based on your comment being included in the

18   performance evaluation, is it safe to say that Annmarie

19   Reno would have reviewed this statement or discussed it

20   with Ms. Clark?

21       A.   She would have reviewed it, but I'm not sure --

22   I mean, yes, they would have reviewed it together; she

23   would have looked, to see that she put in her two goals.

24       Q.   And then under Short-Term Goals, do you see

25   where it says, "Continue to mentor Purchasing employees
```

1    to take over my position and duties when I retire"?

2         A.   Yes.

3         Q.   And that statement also appears to reference

4    Ms. Clark's retirement; is that correct?

5         A.   That's correct.

6         Q.   Now, under the Previous Requires Improvement

7    and Current Requires Improvement categories, do you see

8    anything listed there?

9         A.   I do not.

10        Q.   And do you see anything listed under the

11   Comments?

12        A.   I do not.

13        Q.   And based upon your experience with performance

14   evaluations, would you say that this is a positive

15   performance evaluation given to Ms. Clark?

16        A.   Yes.

17        Q.   And we said that this was the highest possible

18   overall rating that Ms. Clark could have received for

19   this performance rating; is that right?

20        A.   That's correct.

21        Q.   And on the electronic signature page, it looks

22   like John Holloway is also referenced here as that

23   second line supervisor; is that right?

24        A.   That's correct.

25        Q.   So Mr. Holloway would have reviewed and

 1  approved this performance evaluation as well as Annmarie

 2  Reno; is that correct?

 3      A.   That's correct.  (Screen share ended.)

 4           MR. MACDONALD:  What we'll go ahead and do is

 5      go off the record at 10:48.  We'll take a five-

 6      minute break; I just want to review my notes, and

 7      we can come back and be able to wrap up soon.

 8           MR. STEFANY:  That's fine.

 9           THE WITNESS:  Sounds good.

10           THE COURT REPORTER:  We're off the record.

11           (A brief recess was taken.)

12           THE COURT REPORTER:  We're back on record.

13           MR. MACDONALD:  Ms. Tanner, that is all the

14      questions that I have for you today.  I want to

15      thank you for your time.  Mr. Stefany may have some

16      questions for you.

17           THE WITNESS:  Okay.  Thank you.

18           MR. STEFANY:  Counsel, can you put back up

19      Exhibit 11?

20           MR. MACDONALD:  Yes.  Give me one moment.

21           (Screen share began with said document

22  displayed.)

23           MR. STEFANY:  And would you please scroll to

24      the third page of that document -- I'm sorry, the

25      second page.

```
 1                    CROSS-EXAMINATION

 2   BY MR. STEFANY:

 3       Q.    Ms. Tanner, I'm sorry to make you get up again.

 4   I just have a couple of follow-up questions.  On Exhibit

 5   11 which you've already testified about, I just want to

 6   be clear.  Under the second page here -- and scroll down

 7   just a second, Kyle -- which is Bates Page 568, the form

 8   has this section called "Type, colon, Career Counseling

 9   Plan."

10           As I understand your testimony, the content of

11   those short-term goals and long-term goals are words

12   that are inserted in the evaluation by the employee

13   being evaluated; is that right?

14       A.    That's correct.

15       Q.    So this is like a form that multiple people

16   have the ability to add comments to, which include the

17   employee; correct?

18       A.    Yes.  As part of the evaluation program, yes.

19       Q.    So is there any other part of this form that

20   the employee would typically add the wording to, or is

21   it limited to this Career Counseling Plan section?

22       A.    Only to this Career Counseling Plan.  And they

23   have to access that through the supervisor's log-in.

24       Q.    And is that done typically when they're meeting

25   face-to-face to review the performance evaluation?
```

```
 1        A.   Yes, sir.

 2             MR. STEFANY:  And then, Kyle, if you don't

 3        mind, go down to the next page.

 4   BY MR. STEFANY:

 5        Q.   And you testified about the supervisor doing

 6   the evaluation with a second-tier supervisor also

 7   reviewing the documents.  And with respect to the

 8   information that's shown here on the third page of the

 9   performance evaluation form, under the column heading,

10   Date Signed, is that date automatically entered, or does

11   the supervisor enter that date?

12        A.   It is automatically entered once the supervisor

13   or the individual signing it, they have a password that

14   is assigned to them, that they have to log-in.  So once

15   they put in their password, it will generate that date,

16   the date the password was put in, electronically.

17        Q.   And underneath each of these individuals' names

18   as shown on Bates Page 569 on Exhibit 11, there appears

19   to be a couple of lines where data could be added.

20             Do the supervisors ever have the ability -- do

21   they ever, from your experience, add comments or notes

22   in the section beneath their names on this third page of

23   the form?

24        A.   Yes, they can.  When they go to sign-off, there

25   is an option for, I believe it's called Notes, to say;
```

1  this is where an employee would say if they wanted to

2  make a comment, that's where they make their comment at.

3       Q.   Okay.   And, equally true, it looks like on this

4  particular evaluation, Bates Pages 567 through 569, it

5  looks like John Holloway would have reviewed this, on

6  July 6, 2021.   And he would have had the same kind of

7  opportunity to write a comment in the Notes section

8  beneath his name, if he chose to do so?

9       A.   That's correct.

10      Q.   Okay.   And the second tier, since these dates

11  are different from the supervisor's date of July 2, with

12  the employee's date of July 2, and then John Holloway's

13  date of July 6, I gather that the reviewing supervisor

14  is not part of the face-to-face performance evaluation

15  conference that's held between the supervisor and the

16  employee?

17      A.   That's correct.

18           MR. STEFANY:   That's all I have.   Anything

19      further, Kyle?

20           MR. MACDONALD:   No further questions.   So we

21      can go ahead and suspend the deposition at this

22      time.

23           MR. STEFANY:   Ms. Tanner, you have the right to

24      read a transcript of this deposition, if one is

25      ordered; or you can waive reading of the

 1          transcript.  The court reporter just needs to know

 2      which you want to do before she closes the record.

 3              THE WITNESS:  I'll waive it.

 4              MR. STEFANY:  Witness will waive.  Thank you.

 5              MR. MACDONALD:  We'll hold off on ordering.

 6              (Thereupon, the deposition was terminated at

 7   11 a.m.)

```
 1                    CERTIFICATE OF OATH

 2   STATE OF FLORIDA   )
     COUNTY OF ORANGE   )
 3
            I, Julie S. Evans, Professional Court Reporter,
 4
     Notary Public, State of Florida, certify that TANYA
 5
     TANNER appeared before me via Zoom on October 18, 2023,
 6
     and was duly sworn.
 7
            Witness my hand and official seal this 28th day
 8
     of December 2023.
 9

10

11

12   _____
     JULIE S. EVANS
13   Professional Court Reporter
     Notary Public, State of Florida
14   My Commission No. GG939756
     Expires:  1/21/2024
15

16

17

18

19

20

21

22

23

24

25
```

```
 1                    CERTIFICATE OF REPORTER

 2      STATE OF FLORIDA   )
        COUNTY OF ORANGE   )
 3
               I, Julie S. Evans, Professional Court Reporter,
 4
        do hereby certify that I was authorized to and did
 5
        stenographically report the deposition of TANYA TANNER;
 6
        that a review of the transcript was not requested; and
 7
        that the foregoing transcript, page number 1 through 40,
 8
        is a true and complete record of my stenographic notes.
 9

10             I further certify that I am not a relative,

11      employee, attorney, or counsel of any of the parties,

12      nor am I a relative or employee of any of the parties'

13      attorneys or counsel connected with the action, nor am I

14      financially interested in the action.

15             Dated this 28th day of December 2023.

16

17

18      _____
        Julie S. Evans
19      Professional Court Reporter

20

21

22

23

24

25
```

## WORD INDEX

**< 1 >**
**1**  3:8  7:18  42:2
**1/21/2024**  41:13
**10**  1:9  4:4  7:22, 24
14:14
**10:48**  36:5
**11**  1:9  3:9  20:24
21:16  36:19  37:5
38:18  40:7
**18**  1:9  4:3  41:2

**< 2 >**
**2**  21:15  39:11, 12
**2:22-cv-614-SPC-**
**NPM**  1:5
**2018**  31:1
**2019**  31:1
**2020**  21:6  32:8
**2021**  39:6
**2022**  29:4
**2023**  1:9  4:3  41:2
42:14
**21**  3:9
**225**  2:7
**25**  8:2
**27**  8:2
**28**  8:3
**28th**  41:2  42:14

**< 3 >**
**3**  22:7
**30**  29:5  32:7, 10, 14,
23  33:7, 21  34:8
**32**  34:11
**324**  2:7
**33131**  2:4
**33606-4128**  2:8
**37**  3:3

**< 4 >**
**4**  3:2  31:1
**40**  42:2
**41**  3:4
**42**  3:5

**< 5 >**
**5**  30:25
**520**  2:3

**567**  20:24  21:18, 21
39:4
**567-575**  3:9
**568**  37:7
**569**  38:18  39:4
**570**  21:20
**575**  20:25  21:20, 21

**< 6 >**
**6**  39:6, 13
**6/4/2020**  27:14
**6/4/2021**  22:25
**6/5/2019**  27:14
**6/5/2020**  22:25
**62**  32:15

**< 7 >**
**7**  3:8  7:22, 23
**7/15**  21:6
**7/15/2020**  27:16
**7/2/2021**  22:19
**7/9/2019**  31:3

**< A >**
**a.m**  1:9  4:4  40:7
**ability**  37:16  38:20
**able**  12:11  15:18
18:16  36:7
**access**  37:23
**accreditation**  15:9
19:14, 15, 16, 17, 19
20:1
**accurate**  13:23
**accurately**  6:10
**action**  16:10  42:13,
14
**actual**  18:7
**add**  37:16, 20  38:21
**added**  38:19
**additional**  20:7  25:5
**administratively**
14:14
**affirm**  4:14
**age**  32:15
**ago**  5:12
**agree**  12:11, 14  26:13
**agreed**  3:9
**agreement**  12:23

**ahead**  6:19  7:2
18:19  32:20  34:14
36:4  39:21
**Allen**  2:6  4:12
**allows**  25:10
**Annmarie**  23:9
27:19  31:6  34:18
36:1
**Annual**  3:9  22:14,
15  27:13  30:25  34:5
**answer**  33:14, 23
**answering**  16:21
**answers**  6:12  7:8, 13
33:13
**appeal**  12:25  13:10,
25
**appeals**  12:13  15:2
**appearance**  4:7
**APPEARANCES**  2:1
**appeared**  1:9  41:2
**appears**  18:15  29:12
30:7  31:8, 17  32:1
35:3  38:18
**applicable**  24:6
28:10, 23  31:23
**approve**  12:18  25:19,
20, 23
**approved**  30:13  36:1
**approximately**  4:3
**area**  12:3  13:12
18:3, 5, 7
**areas**  8:16  10:25
11:3  12:9  17:20, 23
26:14
**asked**  6:23
**asking**  16:14
**assigned**  38:14
**assume**  6:22  24:5
**attach**  14:25
**attention**  7:21
**Attorney**  9:2  42:11
**attorneys**  42:13
**authorized**  42:2
**automatically**  38:10,
12
**available**  7:10
**Avenue**  2:7
**aware**  13:6

**< B >**

**back**  5:10  36:7, 12,
18
**bad**  15:23
**base**  34:11
**based**  7:9  29:19
30:5  34:17  35:13
**basically**  34:1
**Bates**  3:9  20:24
21:18  37:7  38:18
39:4
**bathroom**  7:1
**began**  7:17  20:23
36:21
**beginning**  4:8
**BEHALF**  1:9  2:5, 9
7:6
**believe**  10:10  26:2
32:15  33:25  38:25
**beneath**  38:22  39:8
**best**  6:16
**better**  25:21
**binding**  7:14
**bit**  5:10  17:18
**Blue**  2:6  4:12
**break**  6:25  7:3  36:6
**Brickell**  2:3
**brief**  36:11
**bureau**  14:18, 19, 23

**< C >**
**called**  10:10  28:14
37:8  38:25
**calls**  20:6
**capacity**  1:7  4:25
**care**  28:6
**Career**  24:24  25:1,
13  28:25  32:5  37:8,
21, 22
**CARMINE**  1:5  4:6,
12, 25
**CASE**  1:5
**categories**  24:9  26:8
35:7
**category**  24:23
**CERTIFICATE**  3:4,
5  41:1  42:1
**certified**  10:10
**certify**  41:2  42:2, 10
**chance**  11:24  22:4

27:4
**check** 15:*14*
**chose** 39:*8*
**civilian** 10:*9* 18:*3, 4*
**civilians** 32:*14*
**clarification** 16:*13, 20*
**clarify** 17:*4*
**CLARK** 1:*1* 3:*9*
4:*5, 10, 24* 22:*17, 24*
26:*13* 27:*25* 29:*21*
31:*12* 32:*1* 34:*20*
35:*15, 18*
**Clark's** 23:*11* 24:*6*
25:*13* 26:*5* 29:*12*
30:*8* 31:*23* 35:*4*
**clear** 18:*24* 37:*6*
**clearly** 6:*7* 18:*23*
**closer** 21:*6, 11, 13*
**closes** 40:*2*
**colon** 37:*8*
**column** 38:*9*
**come** 20:*8* 36:*7*
**comes** 13:*14* 15:*14*
20:*10*
**commander** 13:*12*
14:*10, 12, 15, 17, 18,*
*19, 21, 23*
**comment** 12:*20, 21*
34:*17* 39:*2, 7*
**comments** 12:*11, 12,*
*15, 18* 13:*4, 9, 14*
29:*23, 24* 35:*11*
37:*16* 38:*21*
**Commission** 41:*13*
**common** 15:*16*
**communicate** 14:*20*
**Communications** 5:*11*
**complete** 42:*2*
**completed** 10:*17*
**completely** 22:*23*
**completing** 23:*12*
25:*12*
**conduct** 9:*18* 10:*22*
**conducted** 9:*22*
10:*13* 22:*22* 27:*18*
31:*6*
**conducting** 6:*1* 8:*5*
**conducts** 10:*18*
**conference** 8:*8* 39:*15*

**confusing** 6:*18*
**conjunction** 25:*8*
**connected** 42:*13*
**content** 37:*10*
**context** 25:*2*
**continue** 34:*9, 15, 25*
**conversation** 13:*4*
**coordinator** 15:*12*
20:*5, 11*
**correct** 5:*15* 8:*12, 13,*
*20* 9:*14* 12:*17* 13:*15,*
*19, 20, 24* 15:*4* 18:*16,*
*20, 21* 19:*6* 20:*16, 17*
21:*7* 22:*22* 23:*1, 2, 4,*
*5, 9, 10, 16, 17, 19, 20,*
*23, 24* 24:*3, 4, 13, 21,*
*22, 24* 26:*23, 25* 27:*1,*
*16, 19, 20* 28:*7, 12, 18,*
*19, 22, 24* 29:*14* 30:*3,*
*4, 13, 14* 31:*4, 13, 14,*
*21, 23, 24* 35:*4, 5, 20,*
*24* 36:*2, 3* 37:*14, 17*
39:*9, 17*
**counsel** 3:*9* 4:*7, 8*
16:*12* 36:*18* 42:*11,*
*13*
**Counseling** 24:*24*
25:*1, 13* 28:*25* 32:*5*
37:*8, 21, 22*
**Country** 1:*8*
**County** 4:*6* 5:*1, 15*
7:*6, 11, 14* 8:*19* 9:*18,*
*22* 10:*7* 11:*20* 12:*6*
15:*7* 16:*4* 19:*13, 21*
20:*19* 33:*5, 19* 41:*2*
42:*2*
**couple** 37:*4* 38:*19*
**COURT** 1:*1, 24* 4:*2,*
*13* 6:*3, 5, 10* 36:*10,*
*12* 40:*1* 41:*2, 12*
42:*2, 19*
**CROSS** 3:*3*
**CROSS-**
**EXAMINATION**
37:*1*
**current** 19:*12* 26:*9*
29:*16* 35:*7*

**< D >**

**Dan** 9:*14*
**data** 38:*19*
**DATE** 1:*9* 22:*18, 21*
38:*10, 11, 15, 16*
39:*11, 12, 13*
**Dated** 42:*14*
**dates** 39:*10*
**DAVID** 2:*6* 4:*11*
**day** 41:*2* 42:*14*
**days** 14:*14*
**December** 41:*2* 42:*14*
**decide** 34:*7*
**decision** 14:*20*
**Defendant** 1:*9* 2:*9*
**Defense** 20:*24*
**Deferred** 26:*2*
**department** 19:*21*
20:*2*
**depends** 34:*13*
**deposed** 5:*7, 9*
**DEPOSITION** 1:*9*
3:*8* 4:*4* 5:*18* 8:*5*
9:*1, 8* 39:*21, 24* 40:*6*
42:*2*
**Derek** 2:*2*
**detainees** 24:*3* 28:*6*
31:*20*
**determine** 34:*6*
**difference** 17:*19* 33:*9*
**different** 17:*23* 39:*11*
**DIRECT** 3:*2* 4:*21*
**director** 9:*17*
**disagreement** 14:*11*
**disagrees** 14:*8, 23*
**disciplinary** 16:*10*
**discussed** 9:*7* 34:*19*
**discusses** 25:*5*
**discussion** 14:*16*
**displayed** 36:*22*
**DISTRICT** 1:*1*
**division** 14:*10, 11, 15,*
*20*
**document** 7:*16, 18,*
*24* 8:*3, 15, 23* 9:*4*
14:*3* 18:*14* 20:*22*
21:*2, 11, 23* 22:*6, 7,*
*10* 27:*3, 6, 7, 10*
30:*18, 19, 22* 36:*21,*
*24*

**documents** 8:*11, 14,*
*18, 22* 38:*7*
**doing** 6:*8* 10:*3*
15:*21* 38:*5*
**Dr** 2:*3*
**draw** 7:*21*
**DROP** 25:*15, 25*
26:*6* 29:*6, 8* 32:*7, 17,*
*18, 24, 25* 33:*6, 21*
34:*4, 7, 8, 10*
**due** 33:*24*
**duly** 4:*20* 41:*2*
**duties** 35:*1*

**< E >**
**earlier** 30:*1*
**effect** 6:*2*
**either** 12:*11*
**elaborate** 17:*18*
**electronic** 35:*21*
**electronically** 38:*16*
**eligible** 32:*16, 23*
**employee** 9:*23* 10:*6,*
*8, 14, 22* 11:*8, 14, 18*
12:*1, 5, 14, 19, 21, 24*
13:*7, 14, 25* 14:*8, 13,*
*21, 22* 15:*10, 16* 16:*1,*
*9, 11, 25* 18:*18* 19:*2,*
*5, 10* 22:*16* 25:*3, 6, 9*
26:*25* 33:*18* 37:*12,*
*17, 20* 39:*1, 16* 42:*11,*
*12*
**employees** 9:*19* 10:*9,*
*10, 25* 16:*4* 17:*7, 14*
20:*2* 24:*17* 26:*17*
33:*5, 10, 20* 34:*25*
**employee's** 10:*18, 21*
13:*23* 25:*24* 39:*12*
**employment** 8:*19*
**ended** 36:*3*
**ensure** 6:*16*
**enter** 38:*11*
**entered** 38:*10, 12*
**equally** 39:*3*
**ESQUIRE** 2:*2, 6*
**evaluate** 9:*23*
**evaluated** 10:*25*
18:*2, 8* 24:*1, 2* 37:*13*
**Evaluation** 3:*9*
10:*19, 23* 11:*8, 16, 25*

12:*8*  13:*3*, *16*  14:*1*,
*25*  15:*6*, *9*, *13*  16:*17*
17:*9*, *20*, *22*  18:*10*, *11*,
*12*, *21*  19:*9*  20:*19*
22:*13*, *14*, *15*  23:*12*
25:*4*, *12*  26:*12*, *21*
27:*13*, *15*, *18*, *25*  28:*9*
29:*4*, *9*, *20*, *21*  30:*6*, *8*,
*13*, *16*, *25*  31:*5*, *9*
34:*18*  35:*15*  36:*1*
37:*12*, *18*, *25*  38:*6*, *9*
39:*4*, *14*
**evaluations**  11:*1*
15:*10*  17:*6*  19:*20*
20:*2*, *12*  30:*3*  31:*17*
35:*14*
**Evans**  1:*9*  41:*2*, *11*
42:*2*, *18*
**exact**  26:*4*
**Examination**  1:*9*  3:*1*
4:*21*
**EXHIBIT**  3:*5*  7:*18*
20:*24*  21:*15*, *16*
36:*19*  37:*4*  38:*18*
**experience**  15:*2*  16:*5*
33:*8*, *18*  35:*13*  38:*21*
**Expires**  41:*13*
**explaining**  12:*12*
14:*10*

**< F >**
**face-to-face**  37:*25*
39:*14*
**fact**  33:*24*
**fair**  6:*14*  20:*20*
26:*16*  29:*10*
**fairly**  15:*3*
**feasible**  14:*14*
**file**  12:*24*  15:*1*
**fill**  25:*10*
**fills**  25:*6*
**final**  14:*24*
**finalized**  27:*16*  31:*3*
**financially**  42:*14*
**fine**  16:*20*  36:*8*
**finish**  6:*12*, *13*
**firm**  4:*11*
**first**  4:*20*  5:*11*, *17*
21:*1*  22:*5*, *9*  23:*21*
27:*4*  28:*4*  31:*16*

**five**  5:*12*  32:*19*, *20*,
*21*  33:*3*, *4*, *25*  36:*5*
**fixed**  12:*9*  19:*5*
**FLORIDA**  1:*1*, *8*
2:*4*, *8*  5:*1*  41:*2*, *12*
42:*2*
**following**  14:*11*
**follows**  4:*20*
**follow-up**  37:*4*
**force**  6:*2*
**foregoing**  42:*2*
**form**  14:*25*  22:*14*
33:*12*  37:*7*, *15*, *19*
38:*9*, *23*
**formal**  14:*24*
**forward**  14:*17*
**Friday**  9:*2*
**front**  8:*12*  21:*8*, *12*
**full**  5:*4*
**further**  12:*25*  39:*19*,
*20*  42:*10*

**< G >**
**gather**  39:*13*
**general**  25:*22*
**generate**  38:*15*
**gestures**  6:*6*
**getting**  18:*6*
**GG939756**  41:*13*
**give**  7:*22*  8:*1*  14:*5*
17:*25*  18:*18*  27:*4*
30:*16*  36:*20*
**given**  17:*8*  19:*9*
29:*21*  35:*15*
**gives**  11:*23*
**giving**  18:*17*  21:*25*
**glass**  7:*1*
**go**  5:*18*  6:*19*, *25*  7:*2*
12:*25*  18:*12*  20:*9*
21:*2*  22:*3*, *6*  24:*11*
29:*6*  32:*16*, *18*, *20*, *23*
34:*4*, *7*, *8*, *10*, *14*  36:*4*,
*5*  38:*3*, *24*  39:*21*
**Goal**  32:*6*
**goals**  25:*6*, *7*, *8*, *14*,
*20*  29:*1*, *3*  34:*23*, *24*
37:*11*
**God**  4:*16*
**goes**  11:*23*  13:*11*
25:*4*, *11*  33:*25*

**going**  5:*18*  6:*22*
7:*16*, *21*  11:*1*  13:*7*
14:*2*  19:*17*  20:*3*, *22*,
*23*  21:*5*  27:*2*  32:*17*
33:*12*
**Good**  4:*23*  36:*9*
**gotten**  26:*17*
**Group**  2:*2*
**groups**  17:*24*
**guess**  17:*4*
**guidance**  20:*7*

**< H >**
**hand**  4:*14*  41:*2*
**handle**  20:*8*
**happen**  17:*2*
**happens**  12:*5*  15:*18*,
*20*  16:*7*, *8*  17:*3*
**happy**  13:*8*  14:*22*
**heading**  38:*9*
**headquarters**  8:*7*
**healthy**  25:*15*  29:*5*
32:*6*
**held**  39:*15*
**help**  4:*16*
**hereto**  3:*9*
**highest**  26:*24*  31:*12*
35:*17*
**hires**  10:*16*
**hold**  18:*13*  40:*5*
**Holloway**  30:*9*  35:*22*,
*25*  39:*5*
**Holloway's**  39:*12*
**Hyde**  2:*7*

**< I >**
**imagine**  8:*20*  13:*22*
23:*19*
**improve**  9:*24*  10:*5*
11:*24*  12:*3*  15:*24*
19:*10*
**improvement**  11:*9*,
*11*, *19*, *22*  12:*2*  15:*17*,
*23*  17:*21*  18:*1*, *6*, *9*
19:*3*, *8*  26:*9*, *14*
29:*15*, *16*  35:*6*, *7*
**inaudible**  6:*6*
**include**  10:*9*  37:*16*
**included**  34:*17*

**income**  34:*6*
**INDEX**  3:*1*, *5*
**individual**  17:*22*
23:*14*  28:*3*, *20*  31:*15*
34:*13*  38:*13*
**individuals**  24:*18*
38:*17*
**individual's**  18:*7*
**information**  25:*11*
38:*8*
**inmates**  18:*4*
**inserted**  37:*12*
**intelligence**  8:*8*
**interact**  15:*5*  17:*6*
24:*17*
**interested**  42:*14*
**interject**  16:*12*
**issue**  20:*5*
**items**  23:*15*
**its**  9:*19*

**< J >**
**January**  25:*15*
**JENNA**  1:*1*  3:*9*  4:*5*,
*10*  22:*17*  25:*13*
**Jenna's**  27:*13*  30:*25*
**job**  11:*2*, *6*, *19*  12:*6*
16:*15*  18:*4*  19:*12*
23:*15*, *18*, *22*  24:*6*, *9*,
*12*, *19*  28:*10*  31:*19*,
*23*
**John**  30:*9*  35:*22*
39:*5*, *12*
**judge**  6:*3*
**judgment**  24:*18*
**Julie**  1:*9*  41:*2*, *11*
42:*2*, *18*
**July**  39:*6*, *11*, *12*, *13*
**June**  30:*25*  31:*1*
32:*7*
**jury**  6:*3*

**< K >**
**Key**  2:*3*
**kind**  14:*5*  39:*6*
**knew**  9:*11*
**know**  7:*2*  9:*25*  10:*1*
16:*6*  21:*3*  22:*4*  26:*1*
27:*5*  32:*10*  33:*24*
40:*1*

knowledge  7:9, *10*
24:*19*
known  7:*10*
KYLE  2:2  4:*9, 23*
21:*15*  37:*7*  38:2
39:*19*

< L >
label  20:*24*
lacking  11:22  12:9
Law  2:2  6:*3*
lawsuit  4:*24*
leadership  24:*18*
leave  32:*19*
Lee  1:*7*  4:6  5:*1, 15*
7:6, *10, 14*  8:*19*  9:*18,*
22  10:7  11:*20*  12:6
15:*7*  16:*4*  19:*12, 21*
20:*19*  33:*5, 19*
left-hand  23:*8*
letter  14:*10*
level  13:2, *11, 13, 17,*
*19, 21*
limited  37:*21*
line  30:*1, 7*  35:*23*
lines  38:*19*
listed  7:*23, 24*  8:2, *3*
23:*15, 18*  26:*10*  28:*3,*
*14*  29:*1, 17, 23*  31:*15*
32:*1*  35:8, *10*
little  5:*10*  17:*18*
21:*5*
log-in  37:*23*  38:*14*
long  19:*15*
longer  34:*1*
long-term  25:7, *14*
29:*3*  32:6  37:*11*
look  14:*1*  18:*13*
21:9  26:*3*
looked  34:*23*
looking  20:6, *18*
26:*12*  28:*3, 20*  31:*15*
looks  8:*11*  23:*21*
24:2, *9, 11*  25:*11*
27:*15*  28:4  31:2
35:*21*  39:*3, 5*
Lynn  5:6

< M >
ma'am  4:*17*

MACDONALD  2:2
3:2  4:*9, 22, 24*  16:*18,*
*22, 23*  17:*11*  21:*16,*
*20, 25*  22:2  33:*17*
34:*16*  36:*4, 13, 20*
39:*20*  40:*5*
manager  19:*14, 15,*
*16, 17, 19*  20:*1*
MARCENO  1:*5*  4:*6,*
*12, 25*
mark  20:*23*
marked  7:*17*  21:*17*
matter  4:5  14:*18*
mean  10:2  11:*19*
16:6  27:*24*  33:*23*
34:*22*
means  10:*15*  28:9
32:*18*  33:*1*
meet  14:*12*
meeting  9:2  14:*13*
37:*24*
Meets  11:9, *11, 15*
18:*1*  23:7, *19*  26:*21*
27:*25*  28:22  31:9, *18*
members  14:*16*
mentor  34:*25*
met  32:*23*
Miami  2:*4*
MIDDLE  1:*1*
mind  11:*4*  38:*3*
minute  36:6
moment  22:*1*  30:*16*
36:*20*
money  34:2
monthly  15:*19, 20*
months  10:*16*
morning  4:*23*
move  21:5, *10*
moving  30:*15*
multiple  37:*15*

< N >
name  4:*23*  5:5
20:*13*  39:*8*
names  38:*17, 22*
NE  23:22, *25*  28:9
31:*22*
necessarily  19:*9*
need  6:*25*  10:*4*

11:22  15:*24*  19:*10*
needed  16:*13*
needs  20:7  40:*1*
negative  15:*23*  16:*1*
Nelson  9:*13, 14*
new  10:*15*
non-evaluated  18:*5*
Norton  2:6  4:*12*
Notary  1:*24*  41:2, *12*
note  6:*21*
notes  31:*5*  36:6
38:*21, 25*  39:7  42:2
Notice  3:8  8:*23*
notification  18:*19*
number  42:2

< O >
O-301  2:*3*
OATH  3:*4*  5:22
41:*1*
object  33:*12*
objection  14:*25*
33:*14, 22*
obligation  5:*22*
obviously  17:6
October  1:9  4:*3*
41:2
Office  5:*15*  7:6, *11,*
*14*  8:7, *19*  9:*18, 22*
10:7  11:*20*  12:7
15:*7*  16:*4*  19:*13, 22*
20:20  30:*11*  33:6, *19*
official  1:7  4:*25*
41:2
officially  33:*4*
Okay  5:*19, 20*  6:*8,*
*19, 20, 23, 24*  7:*3*  8:5,
*18*  9:6  13:*4*  14:8
16:*19*  21:5, 8, *22*
22:7, *8*  27:6, 7, *8*
30:*18, 19, 20*  34:*10*
36:*17*  39:*3, 10*
once  32:22  34:*4, 7*
38:*12, 14*
ones  26:*18*  28:*23*
one-year  10:*17*
Opportunity  26:*3*
39:7
option  38:*25*

ORANGE  41:2  42:2
ordered  39:*25*
ordering  40:*5*
outcome  14:*23*
outside  9:*10*  20:*3*
24:*18*
overall  16:*16, 18, 25*
17:*1, 10, 12, 16, 19*
18:*8, 10*  19:*4*  23:*3*
26:*20, 24*  27:*21, 24*
31:8, *13*  35:*18*

< P >
P.A  2:6
page  5:*19*  22:5, *7*
23:*21*  24:*8, 11*  27:*4,*
*7, 8*  28:*4, 13*  30:*19,*
*20*  31:*16, 25*  35:*21*
36:*24, 25*  37:6, *7*
38:*3, 8, 18, 22*  42:2
pages  21:2, *18*  22:9
27:9  30:*21*  39:4
paragraphs  7:*22, 23*
8:2
Park  2:*7*
part  12:*23*  15:8
27:*3*  37:*18, 19*  39:*14*
participate  33:*20*
particular  16:*15*
17:*20*  19:*3*  21:*11*
23:*15*  26:*21*  28:*10*
29:*3*  31:9  39:*4*
parties  1:9  3:9
42:*11, 12*
parts  21:*3*
password  38:*13, 15,*
*16*
pay  34:5, *11, 12*
pending  21:*24*
people  15:*20*  37:*15*
Performance  3:9
9:*19, 21, 23*  10:6, *12,*
*19, 22*  11:8, *15*  12:*16*
14:9, 25  15:6, 9, *10*
16:*16*  17:6, 8, *20*
19:20  20:*1, 12, 19*
22:*13, 15*  23:*12*
26:*12, 17*  28:9  29:*4,*
*9, 19, 21*  30:2, *5, 8, 13,*
*16*  31:2, 5, *17*  34:*18*

35:*13, 15, 19*  36:*1*
37:*25*  38:*9*  39:*14*
**period**  18:*2*, *25*
22:*24*  27:*14*
**person**  32:*22*
**personal**  7:*9*
**personally**  20:*10*
**personnel**  12:*24*  15:*1*
**pertain**  18:*3, 4*
**pertaining**  9:*5*
**peruses**  14:*3*  18:*14*
21:*23*  27:*6*  30:*18*
**PLACE**  1:*9*  12:*2*
14:*13*  18:*19*
**placed**  5:*21*  15:*1*
**Plaintiff**  1:*1, 9*  2:*5*
4:*10*
**Plaintiff's**  3:*5*  4:*8*
7:*18*  20:*23*
**plan**  12:*2*  18:*19*
24:*24*  25:*1, 13*  28:*25*
32:*5*  37:*9, 21, 22*
**plans**  25:*5*
**please**  4:*7, 13*  5:*4*
6:*7*  36:*23*
**PLLC**  2:*2*
**point**  6:*25*  13:*5, 9*
14:*19*  32:*18*
**policies**  8:*16, 19*  9:*5*
**policy**  8:*18, 22*  11:*3,
6*  14:*2, 4*  17:*24*
**position**  24:*6*  28:*10*
35:*1*
**positive**  11:*14*  24:*20*
29:*20*  35:*14*
**possible**  11:*7*  26:*24*
31:*12*  35:*17*
**possibly**  29:*6*
**prefer**  33:*11*
**preference**  33:*6, 10,
20*
**prepare**  8:*25*
**prepared**  7:*22*  8:*1*
**Previous**  26:*8*  29:*15*
35:*6*
**previously**  5:*9*  7:*17*
8:*23*  9:*4*
**primary**  9:*17*
**prior**  11:*24*  18:*20,
21*  25:*3, 12*

**probation**  10:*14, 15,
17*  15:*21*
**problem**  16:*22*
19:*25*  20:*4*  21:*14*
**proceeds**  12:*23*
**process**  12:*13*  13:*10*
14:*1*  15:*6, 22*
**Professional**  41:*2, 12*
42:*2, 19*
**proficiencies**  11:*2*
28:*14, 17, 21*  32:*1, 3*
**proficiency**  11:*6*
17:*25*  24:*14, 15*
**program**  15:*12*  20:*5,
11*  26:*3*  33:*7, 21*
37:*18*
**project**  25:*24*
**provide/submit**  14:*9*
**Public**  1:*24*  41:*2, 12*
**pulled**  9:*5*
**purchasing**  19:*21*
20:*2*  34:*25*
**purpose**  9:*21*
**put**  12:*2, 19, 21*
15:*19*  34:*23*  36:*18*
38:*15, 16*

**< Q >**
**question**  6:*17, 23*
16:*24*  19:*24*  20:*7*
21:*24*  33:*13, 15*
**questions**  6:*13*  36:*14,
16*  37:*4*  39:*20*

**< R >**
**raise**  4:*13*
**rare**  15:*3*  16:*3, 6, 8*
19:*9*
**rated**  22:*25*
**rating**  11:*15*  12:*15*
13:*18*  14:*9, 21*  15:*25*
16:*3, 9, 14, 15, 16, 18*
17:*1, 10, 12, 19*  18:*9,
25*  19:*4, 9*  23:*3*
26:*20, 24*  27:*13, 21,
24*  28:*5, 22*  29:*21*
31:*8, 13, 22*  32:*2*
35:*18, 19*

**ratings**  11:*7*  17:*8, 16*
24:*12, 21*  26:*18*
28:*17*  31:*18*
**reach**  29:*5*  32:*15*
**read**  14:*4*  39:*24*
**reading**  3:*9*  39:*25*
**ready**  25:*15*
**really**  33:*23*
**reasonably**  7:*10*
**recall**  17:*14*  20:*4*
**receipt**  14:*11*
**receive**  11:*8*  12:*8*
15:*17*  24:*12*  26:*13,
25*
**received**  24:*20*  27:*25*
28:*5, 17, 21*  31:*13*
32:*2*  35:*18*
**receives**  11:*18*  12:*1,
5*  17:*1*  19:*3*
**receiving**  14:*12, 15*
**recess**  36:*11*
**recognize**  22:*9*  27:*9*
30:*21*
**recommendation**
14:*17*
**record**  4:*8*  5:*5*  36:*5,
10, 12*  40:*2*  42:*2*
**refer**  11:*1, 2*  14:*2*
32:*13*
**reference**  35:*3*
**referenced**  8:*17*
25:*25*  26:*6*  29:*8, 9*
32:*11*  35:*22*
**referencing**  29:*12*
**referring**  26:*5*
**refers**  32:*11*
**reflect**  6:*11*
**regarding**  7:*23*  8:*2*
**regardless**  13:*18*
**regulations**  24:*17*
**related**  5:*14*  24:*16*
**relating**  8:*16*
**relative**  42:*10, 12*
**remain**  18:*25*
**removed**  13:*10*
**Reno**  23:*9*  25:*18*
27:*19*  31:*6*  34:*19*
36:*2*
**repeat**  19:*23*  33:*15*

**repeating**  11:*4*
**rephrase**  6:*19*  16:*24*
**report**  42:*2*
**Reporter**  1:*24*  3:*5*
4:*2, 13*  6:*5, 10*  36:*10,
12*  40:*1*  41:*2, 12*
42:*1, 2, 19*
**reports**  15:*12*
**represent**  4:*24*
**requested**  42:*2*
**required**  10:*21*
17:*21*  18:*1, 6, 9*
**requires**  11:*9, 11, 18*
12:*1*  15:*17, 22*  19:*3,
8*  26:*9, 14*  29:*15, 16*
35:*6, 7*
**resolution**  14:*24*
**resolving**  14:*17*
**respect**  38:*7*
**respective**  3:*9*  14:*18*
**respond**  6:*7*
**responses**  6:*6, 11*
**responsibility**  15:*8*
**responsible**  15:*13*
20:*18*
**result**  16:*10*  19:*4*
**retire**  25:*16*  32:*17,
20, 24*  33:*4*  35:*1*
**retired**  32:*25*  33:*1*
**Retirement**  26:*2, 6*
29:*5, 13*  34:*2, 11*
35:*4*
**retire-slash-go**  32:*7*
**review**  10:*7*  12:*16*
14:*19*  15:*10*  20:*10*
21:*1*  22:*1, 5, 18, 21*
27:*4*  29:*19*  30:*5, 17*
31:*2*  36:*6*  37:*25*
42:*2*
**reviewed**  28:*9*  30:*12*
31:*17*  34:*19, 21, 22*
35:*25*  39:*5*
**reviewing**  15:*13*
38:*7*  39:*13*
**reviews**  9:*19, 22*
10:*12*  12:*22*
**RI**  18:*15, 18*
**right**  4:*14*  26:*22*
27:*2*  28:*1, 2, 6, 11, 15*
29:*1, 2, 13*  30:*15*

31:*3*, *6*, *10*, *20*   32:*3*
35:*19*, *23*   37:*13*
39:*23*
**role**   5:*14*   15:*6*, *11*
  17:*5*   19:*19*, *25*   26:*17*
**room**   8:*8*, *9*
**roughly**   17:*14*
**rules**   24:*16*

**< S >**
**safe**   34:*18*
**saying**   19:*2*
**says**   14:*4*   22:*18*
  23:*3*, *8*, *22*   24:*23*
  25:*14*   27:*21*   29:*4*
  32:*6*   34:*25*
**scope**   16:*21*
**Screen**   7:*16*   20:*22*
  36:*3*, *21*
**scroll**   21:*4*   22:*3*
  23:*14*   24:*8*   27:*5*
  36:*23*   37:*6*
**scrolled**   22:*7*   27:*7*, *8*
  30:*19*, *20*
**scrolling**   28:*13*   31:*25*
**se**   17:*22*   34:*6*
**seal**   41:*2*
**search**   9:*17*
**second**   13:*2*, *13*, *17*,
  *19*, *21*   24:*11*   28:*13*
  30:*1*, *7*   31:*25*   35:*23*
  36:*25*   37:*6*, *7*   39:*10*
**second-tier**   38:*6*
**section**   29:*24*   37:*8*,
  *21*   38:*22*   39:*7*
**security**   18:*3*   28:*6*
**security/care**   24:*3*
**security-slash-care**
  31:*19*
**see**   19:*20*, *23*   20:*1*
  21:*13*   22:*18*   25:*14*
  26:*10*   27:*22*   29:*4*, *7*,
  *16*, *23*   32:*5*   34:*23*, *24*
  35:*7*, *10*
**seen**   7:*18*   11:*14*
  16:*1*   17:*7*, *15*
**sentence**   26:*1*
**sequentially**   21:*17*
**service**   32:*7*, *10*, *15*

**33**:*7*, *21*
**set**   18:*19*
**share**   7:*17*   20:*23*
  36:*3*, *21*
**she'll**   20:*8*
**Sheriff**   1:*7*   4:*6*, *12*
  5:*1*
**Sheriff's**   5:*15*   7:*6*,
  *11*, *14*   8:*7*, *19*   9:*18*,
  *22*   10:*7*   11:*20*   12:*7*
  15:*7*   16:*4*   19:*13*, *21*
  20:*19*   30:*11*   33:*6*, *19*
**short-term**   25:*7*
  34:*24*   37:*11*
**show**   7:*16*   20:*22*
  27:*2*
**showed**   8:*15*, *23*   9:*3*,
  *4*   30:*6*
**showing**   21:*10*   22:*10*
  26:*18*   27:*10*   30:*6*, *22*
**shown**   38:*8*, *18*
**shrugs**   6:*6*
**side**   23:*8*
**sign**   13:*6*   30:*2*, *8*
**signature**   13:*2*, *13*
  35:*21*
**signed**   22:*23*   38:*10*
**signing**   3:*9*   25:*3*
  38:*13*
**sign-off**   38:*24*
**signs**   13:*19*
**similar**   28:*8*   31:*16*
**single**   20:*10*
**sir**   5:*16*   6:*9*   7:*7*, *12*,
  *15*, *25*   8:*4*, *21*, *24*
  9:*10*   10:*11*   12:*4*
  13:*16*   20:*21*   23:*13*
  24:*7*   26:*7*   38:*1*
**skills**   24:*18*
**slash**   29:*5*
**Smith**   2:*2*   20:*14*, *18*
**Smith's**   20:*15*
**solemnly**   4:*14*
**soon**   14:*13*   36:*7*
**sorry**   19:*24*   21:*21*
  24:*10*   33:*16*   36:*24*
  37:*3*
**Sounds**   36:*9*
**South**   2:*7*

**speak**   6:*11*   9:*7*
**spoke**   30:*1*
**Stan**   9:*13*, *15*
**S-T-A-N**   9:*15*
**stand**   9:*25*   10:*2*
  23:*6*, *25*
**standard**   11:*9*, *10*, *11*,
  *13*, *15*   12:*6*, *8*, *10*, *15*
  15:*17*, *25*   16:*3*, *9*
  17:*1*, *8*, *15*   18:*12*, *16*,
  *22*   19:*1*, *5*   26:*21*
  28:*1*, *22*   33:*7*, *21*
**standards**   18:*1*   23:*7*,
  *19*   31:*9*, *18*
**start**   16:*25*
**started**   5:*11*
**state**   4:*7*   41:*2*, *12*
  42:*2*
**statement**   25:*18*
  34:*19*   35:*3*
**STATES**   1:*1*
**stating**   5:*4*
**stay**   18:*11*   25:*15*
  29:*5*   32:*6*   34:*1*, *3*, *15*
**stays**   13:*1*
**STEFANY**   2:*6*   3:*3*
  4:*11*   9:*3*, *7*, *8*   16:*12*,
  *19*   17:*10*   21:*15*, *18*,
  *22*, *24*   33:*12*, *22*   36:*8*,
  *15*, *18*, *23*   37:*2*   38:*2*,
  *4*   39:*18*, *23*   40:*4*
**stenographic**   42:*2*
**stenographically**   42:*2*
**stipulated**   3:*9*
**strike**   24:*10*
**subject**   33:*14*
**submit**   14:*24*
**Suite**   2:*3*, *7*
**supervise**   19:*20*
**supervisor**   9:*10*, *12*,
  *25*   10:*2*, *20*, *21*, *24*
  11:*23*   12:*22*   13:*3*, *5*,
  *8*, *11*, *17*, *19*, *21*, *22*, *23*
  14:*21*   17:*23*   20:*6*, *15*
  23:*9*, *11*   25:*4*, *9*, *10*,
  *22*   30:*2*, *7*   35:*23*
  38:*5*, *6*, *11*, *12*   39:*13*,
  *15*
**supervisors**   38:*20*

**supervisor's**   37:*23*
  39:*11*
**supposed**   18:*18*
**sure**   6:*7*   15:*14*, *18*
  16:*21*   21:*9*, *11*   34:*21*
**suspend**   39:*21*
**swear**   4:*14*
**sworn**   4:*20*   41:*2*
**synopsis**   14:*5*

**< T >**
**take**   6:*25*   7:*2*   14:*13*
  34:*5*   35:*1*   36:*5*
**TAKEN**   1:*9*   4:*5*
  16:*10*   36:*11*
**talking**   16:*14*, *15*
  17:*24*
**Tampa**   2:*8*
**TANNER**   1:*9*   3:*2*
  4:*5*, *13*, *19*, *23*   5:*6*, *7*
  36:*13*   37:*3*   39:*23*
  41:*2*   42:*2*
**TANYA**   1:*9*   3:*2*   4:*4*,
  *19*   5:*6*   41:*2*   42:*2*
**task**   16:*15*   17:*25*
  18:*5*   19:*3*   24:*2*, *15*
  28:*8*   31:*19*
**tasks**   11:*2*, *6*   17:*22*
  23:*16*, *18*, *22*   24:*12*,
  *14*   28:*3*, *4*, *20*   31:*15*
**technically**   25:*23*
  33:*1*
**tell**   6:*18*   9:*6*   14:*6*
**ten**   19:*18*
**terminated**   40:*6*
**terms**   11:*19*   12:*6*
**testified**   4:*20*   37:*5*
  38:*5*
**testify**   5:*22*   7:*6*
**testifying**   6:*2*
**TESTIMONY**   3:*2*
  4:*15*   6:*1*, *17*   7:*23*
  8:*1*   37:*10*
**Thank**   5:*1*, *3*   36:*15*,
  *17*   40:*4*
**thing**   11:*14*   15:*15*, *19*
**things**   5:*18*
**think**   6:*18*   16:*13*
  18:*13*   28:*8*

**third** 11:*12* 36:*24* 38:*8*, *22*
**three** 11:*3* 21:2 22:9 27:9 30:*21* 34:*5*, *12*
**tier** 39:*10*
**TIME** 1:*9* 4:*3* 6:*11* 11:*4* 15:*15* 18:*17*, *19* 26:*16* 32:20, *21* 36:*15* 39:22
**title** 9:*16* 19:*12*
**Today** 4:*2* 5:*2* 7:*5* 8:*6*, *9* 9:*9*, *11* 36:*14*
**today's** 8:*25*
**top** 27:*21* 34:*12*
**topic** 11:*3* 23:*3*
**topics** 7:*23* 8:2
**training** 15:22
**transcribe** 6:*5*
**transcript** 3:*9* 39:*24* 40:*1* 42:2
**true** 39:*3* 42:2
**truth** 4:*15*, *16*
**truthfully** 5:*23*
**try** 6:*19* 11:*24*
**turned** 15:*15*
**twelve** 19:*18*
**two** 10:*16* 26:8 31:*16* 34:*23*
**type** 15:*15*, *19* 24:24 37:*8*
**typically** 10:*18* 12:2 13:22 37:*20*, *24*

**< U >**
**undergo** 10:*6*
**underneath** 38:*17*
**undersheriff** 30:*11*, *12*
**understand** 5:*21*, *25* 6:*18* 7:*5*, *8*, *13* 37:*10*
**understood** 6:*22*
**UNITED** 1:*1*
**usually** 20:*8*

**< V >**
**Vanessa** 20:*11*, *15*, *18*
**Vanessa's** 20:*13*
**various** 24:*19* 25:7
**versus** 17:*19* 33:7

**videoconference** 1:*9*
**view** 25:*24*

**< W >**
**wait** 6:*12*, *13*
**waive** 39:*25* 40:*3*, *4*
**waived** 3:*9*
**want** 6:*16* 12:24 13:9 14:*5* 21:*1*, *9*, *13* 25:*21* 32:24 34:8, *10*, *14* 36:6, *14* 37:*5* 40:2
**wanted** 16:*20* 39:*1*
**wants** 12:*19* 13:25
**water** 7:*1*
**way** 20:9
**Wednesday** 1:*9* 4:2
**welcome** 5:*3* 21:*10*
**well** 10:*3* 17:*5* 21:*10* 24:*12* 29:*1* 36:*1*
**went** 9:*3*, *5* 32:25
**we're** 5:*19* 20:23 32:16 36:*10*, *12*
**witness** 1:*9* 4:*17* 14:*3* 16:*21* 18:*14* 21:23, *25* 27:6 30:*18* 33:*13*, *15*, *23* 36:*9*, *17* 40:*3*, *4* 41:2
**wording** 37:*20*
**words** 14:6 26:*4* 37:*11*
**work** 5:*11* 32:*19* 33:2 34:9
**worse** 26:*17*
**wrap** 36:7
**write** 39:7
**written** 14:*10*, *24* 31:22

**< Y >**
**Yeah** 19:*25*
**year** 10:*4*, *15* 17:7, *15*
**years** 5:*12* 19:*18* 29:*5* 32:7, *10*, *14*, *19*, *20*, *21*, *23* 33:*3*, *4*, *7*, *21*, *25* 34:*5*, *8*, *11*, *12*

**< Z >**

**ZOOM** 1:*9* 2:2, *6* 3:*2* 4:*4* 6:*1* 41:2

## WORD LIST

**< 1 >**
**1** *(3)*
**1/21/2024** *(1)*
**10** *(5)*
**10:48** *(1)*
**11** *(8)*
**18** *(3)*

**< 2 >**
**2** *(3)*
**2:22-cv-614-SPC-NPM** *(1)*
**2018** *(1)*
**2019** *(1)*
**2020** *(2)*
**2021** *(1)*
**2022** *(1)*
**2023** *(5)*
**21** *(1)*
**225** *(1)*
**25** *(1)*
**27** *(1)*
**28** *(1)*
**28th** *(2)*

**< 3 >**
**3** *(1)*
**30** *(8)*
**32** *(1)*
**324** *(1)*
**33131** *(1)*
**33606-4128** *(1)*
**37** *(1)*

**< 4 >**
**4** *(2)*
**40** *(1)*
**41** *(1)*
**42** *(1)*

**< 5 >**
**5** *(1)*
**520** *(1)*
**567** *(4)*
**567-575** *(1)*
**568** *(1)*
**569** *(2)*

**570** *(1)*
**575** *(3)*

**< 6 >**
**6** *(2)*
**6/4/2020** *(1)*
**6/4/2021** *(1)*
**6/5/2019** *(1)*
**6/5/2020** *(1)*
**62** *(1)*

**< 7 >**
**7** *(3)*
**7/15** *(1)*
**7/15/2020** *(1)*
**7/2/2021** *(1)*
**7/9/2019** *(1)*

**< A >**
**a.m** *(4)*
**ability** *(2)*
**able** *(4)*
**access** *(1)*
**accreditation** *(7)*
**accurate** *(1)*
**accurately** *(1)*
**action** *(3)*
**actual** *(1)*
**add** *(3)*
**added** *(1)*
**additional** *(2)*
**administratively** *(1)*
**affirm** *(1)*
**age** *(1)*
**ago** *(1)*
**agree** *(3)*
**agreed** *(1)*
**agreement** *(1)*
**ahead** *(7)*
**Allen** *(2)*
**allows** *(1)*
**Annmarie** *(5)*
**Annual** *(6)*
**answer** *(2)*
**answering** *(1)*
**answers** *(4)*
**appeal** *(3)*
**appeals** *(2)*
**appearance** *(1)*

**APPEARANCES** *(1)*
**appeared** *(2)*
**appears** *(8)*
**applicable** *(4)*
**approve** *(4)*
**approved** *(2)*
**approximately** *(1)*
**area** *(5)*
**areas** *(7)*
**asked** *(1)*
**asking** *(1)*
**assigned** *(1)*
**assume** *(2)*
**attach** *(1)*
**attention** *(1)*
**Attorney** *(2)*
**attorneys** *(1)*
**authorized** *(1)*
**automatically** *(2)*
**available** *(1)*
**Avenue** *(1)*
**aware** *(1)*

**< B >**
**back** *(4)*
**bad** *(1)*
**base** *(1)*
**based** *(5)*
**basically** *(1)*
**Bates** *(6)*
**bathroom** *(1)*
**began** *(3)*
**beginning** *(1)*
**BEHALF** *(4)*
**believe** *(5)*
**beneath** *(2)*
**best** *(1)*
**better** *(1)*
**binding** *(1)*
**bit** *(2)*
**Blue** *(2)*
**break** *(3)*
**Brickell** *(1)*
**brief** *(1)*
**bureau** *(3)*

**< C >**
**called** *(4)*
**calls** *(1)*

**capacity** *(2)*
**care** *(1)*
**Career** *(8)*
**CARMINE** *(4)*
**CASE** *(1)*
**categories** *(3)*
**category** *(1)*
**CERTIFICATE** *(4)*
**certified** *(1)*
**certify** *(3)*
**chance** *(3)*
**check** *(1)*
**chose** *(1)*
**civilian** *(3)*
**civilians** *(1)*
**clarification** *(2)*
**clarify** *(1)*
**CLARK** *(15)*
**Clark's** *(8)*
**clear** *(2)*
**clearly** *(2)*
**closer** *(3)*
**closes** *(1)*
**colon** *(1)*
**column** *(1)*
**come** *(2)*
**comes** *(3)*
**commander** *(9)*
**comment** *(6)*
**comments** *(12)*
**Commission** *(1)*
**common** *(1)*
**communicate** *(1)*
**Communications** *(1)*
**complete** *(1)*
**completed** *(1)*
**completely** *(1)*
**completing** *(2)*
**conduct** *(2)*
**conducted** *(5)*
**conducting** *(5)*
**conducts** *(1)*
**conference** *(2)*
**confusing** *(1)*
**conjunction** *(1)*
**connected** *(1)*
**content** *(1)*
**context** *(1)*
**continue** *(3)*

conversation *(1)*
coordinator *(3)*
correct *(70)*
counsel *(7)*
Counseling *(8)*
Country *(1)*
County *(21)*
couple *(2)*
COURT *(14)*
CROSS *(1)*
CROSS-
EXAMINATION *(1)*
current *(4)*

**< D >**
Dan *(1)*
data *(1)*
DATE *(11)*
Dated *(1)*
dates *(1)*
DAVID *(2)*
day *(2)*
days *(1)*
December *(2)*
decide *(1)*
decision *(1)*
Defendant *(2)*
Defense *(1)*
Deferred *(1)*
department *(2)*
depends *(1)*
deposed *(2)*
DEPOSITION *(11)*
Derek *(1)*
detainees *(3)*
determine *(1)*
difference *(2)*
different *(3)*
DIRECT *(2)*
director *(1)*
disagreement *(1)*
disagrees *(2)*
disciplinary *(1)*
discussed *(2)*
discusses *(1)*
discussion *(1)*
displayed *(1)*
DISTRICT *(2)*
division *(4)*

document *(28)*
documents *(5)*
doing *(4)*
Dr *(1)*
draw *(1)*
DROP *(16)*
due *(1)*
duly *(2)*
duties *(1)*

**< E >**
earlier *(1)*
effect *(1)*
either *(1)*
elaborate *(1)*
electronic *(1)*
electronically *(1)*
eligible *(3)*
employee *(45)*
employees *(14)*
employee's *(5)*
employment *(1)*
ended *(1)*
ensure *(1)*
enter *(1)*
entered *(2)*
equally *(1)*
ESQUIRE *(2)*
evaluate *(1)*
evaluated *(6)*
Evaluation *(58)*
evaluations *(9)*
Evans *(5)*
exact *(1)*
Examination *(3)*
EXHIBIT *(8)*
experience *(6)*
Expires *(1)*
explaining *(2)*

**< F >**
face-to-face *(2)*
fact *(1)*
fair *(4)*
fairly *(1)*
feasible *(1)*
file *(2)*
fill *(1)*
fills *(1)*

final *(1)*
finalized *(2)*
financially *(1)*
fine *(2)*
finish *(2)*
firm *(1)*
first *(11)*
five *(8)*
fixed *(2)*
FLORIDA *(9)*
following *(1)*
follows *(1)*
follow-up *(1)*
force *(1)*
foregoing *(1)*
form *(8)*
formal *(1)*
forward *(1)*
Friday *(1)*
front *(3)*
full *(1)*
further *(4)*

**< G >**
gather *(1)*
general *(1)*
generate *(1)*
gestures *(1)*
getting *(1)*
GG939756 *(1)*
give *(8)*
given *(4)*
gives *(1)*
giving *(2)*
glass *(1)*
go *(27)*
Goal *(1)*
goals *(11)*
God *(1)*
goes *(5)*
going *(15)*
Good *(2)*
gotten *(1)*
Group *(1)*
groups *(1)*
guess *(1)*
guidance *(1)*

**< H >**

hand *(2)*
handle *(1)*
happen *(1)*
happens *(6)*
happy *(2)*
heading *(1)*
headquarters *(1)*
healthy *(3)*
held *(1)*
help *(1)*
hereto *(1)*
highest *(3)*
hires *(1)*
hold *(2)*
Holloway *(4)*
Holloway's *(1)*
Hyde *(1)*

**< I >**
imagine *(3)*
improve *(6)*
improvement *(20)*
inaudible *(1)*
include *(2)*
included *(1)*
income *(1)*
INDEX *(2)*
individual *(7)*
individuals *(2)*
individual's *(1)*
information *(2)*
inmates *(1)*
inserted *(1)*
intelligence *(1)*
interact *(3)*
interested *(1)*
interject *(1)*
issue *(1)*
items *(1)*
its *(1)*

**< J >**
January *(1)*
JENNA *(6)*
Jenna's *(1)*
job *(17)*
John *(4)*
judge *(1)*
judgment *(1)*

Deposition of Tanya Tanner                                          Jenna Clark v. Carmine Marceno

Julie  (5)
July  (4)
June  (3)
jury  (1)

< K >
Key  (1)
kind  (2)
knew  (1)
know  (11)
knowledge  (3)
known  (1)
KYLE  (7)

< L >
label  (1)
lacking  (2)
Law  (2)
lawsuit  (1)
leadership  (1)
leave  (1)
Lee  (20)
left-hand  (1)
letter  (1)
level  (6)
limited  (1)
line  (3)
lines  (1)
listed  (16)
little  (3)
log-in  (2)
long  (1)
longer  (1)
long-term  (5)
look  (4)
looked  (1)
looking  (6)
looks  (12)
Lynn  (1)

< M >
ma'am  (1)
MACDONALD  (21)
manager  (6)
MARCENO  (4)
mark  (1)
marked  (2)
matter  (2)
mean  (6)

means  (4)
meet  (1)
meeting  (3)
Meets  (11)
members  (2)
mentor  (1)
met  (1)
Miami  (1)
MIDDLE  (1)
mind  (2)
minute  (1)
moment  (3)
money  (1)
monthly  (2)
months  (1)
morning  (1)
move  (2)
moving  (1)
multiple  (1)

< N >
name  (4)
names  (2)
NE  (4)
necessarily  (1)
need  (6)
needed  (1)
needs  (2)
negative  (2)
Nelson  (2)
new  (1)
non-evaluated  (1)
Norton  (2)
Notary  (3)
note  (1)
notes  (6)
Notice  (2)
notification  (1)
number  (1)

< O >
O-301  (1)
OATH  (3)
object  (1)
objection  (3)
obligation  (1)
obviously  (1)
October  (3)
Office  (19)

official  (3)
officially  (1)
Okay  (31)
once  (5)
ones  (2)
one-year  (1)
Opportunity  (2)
option  (1)
ORANGE  (2)
ordered  (1)
ordering  (1)
outcome  (1)
outside  (3)
overall  (19)

< P >
P.A  (1)
page  (25)
pages  (6)
paragraphs  (3)
Park  (1)
part  (6)
participate  (1)
particular  (10)
parties  (4)
parts  (1)
password  (3)
pay  (3)
pending  (1)
people  (2)
Performance  (50)
period  (4)
person  (1)
personal  (1)
personally  (1)
personnel  (2)
pertain  (2)
pertaining  (1)
peruses  (5)
PLACE  (4)
placed  (2)
Plaintiff  (4)
Plaintiff's  (4)
plan  (10)
plans  (1)
please  (5)
PLLC  (1)
point  (5)
policies  (3)

policy  (7)
position  (3)
positive  (4)
possible  (4)
possibly  (1)
prefer  (1)
preference  (3)
prepare  (1)
prepared  (2)
Previous  (3)
previously  (4)
primary  (1)
prior  (5)
probation  (4)
problem  (5)
proceeds  (1)
process  (5)
Professional  (4)
proficiencies  (6)
proficiency  (4)
program  (7)
project  (1)
provide/submit  (1)
Public  (3)
pulled  (1)
purchasing  (3)
purpose  (1)
put  (8)

< Q >
question  (8)
questions  (5)

< R >
raise  (1)
rare  (5)
rated  (1)
rating  (35)
ratings  (8)
reach  (2)
read  (2)
reading  (2)
ready  (1)
really  (1)
reasonably  (1)
recall  (2)
receipt  (1)
receive  (6)
received  (8)

Deposition of Tanya Tanner                                           Jenna Clark v. Carmine Marceno

receives  *(5)*
receiving  *(2)*
recess  *(1)*
recognize  *(3)*
recommendation  *(1)*
record  *(7)*
refer  *(4)*
reference  *(1)*
referenced  *(7)*
referencing  *(1)*
referring  *(1)*
refers  *(1)*
reflect  *(1)*
regarding  *(2)*
regardless  *(1)*
regulations  *(1)*
related  *(2)*
relating  *(1)*
relative  *(2)*
remain  *(1)*
removed  *(1)*
Reno  *(6)*
repeat  *(2)*
repeating  *(1)*
rephrase  *(2)*
report  *(1)*
Reporter  *(14)*
reports  *(1)*
represent  *(1)*
requested  *(1)*
required  *(5)*
requires  *(15)*
resolution  *(1)*
resolving  *(1)*
respect  *(1)*
respective  *(2)*
respond  *(1)*
responses  *(2)*
responsibility  *(1)*
responsible  *(2)*
result  *(2)*
retire  *(6)*
retired  *(2)*
Retirement  *(7)*
retire-slash-go  *(1)*
review  *(18)*
reviewed  *(8)*
reviewing  *(3)*
reviews  *(4)*

RI  *(2)*
right  *(21)*
role  *(7)*
room  *(2)*
roughly  *(1)*
rules  *(1)*

< S >
safe  *(1)*
saying  *(1)*
says  *(11)*
scope  *(1)*
Screen  *(4)*
scroll  *(2)*
scrolled  *(6)*
scrolling  *(2)*
se  *(2)*
seal  *(1)*
search  *(1)*
second  *(15)*
second-tier  *(1)*
section  *(5)*
security  *(2)*
security/care  *(1)*
security-slash-care  *(1)*
see  *(17)*
seen  *(5)*
sentence  *(1)*
sequentially  *(1)*
service  *(5)*
set  *(1)*
share  *(4)*
she'll  *(1)*
Sheriff  *(4)*
Sheriff's  *(19)*
short-term  *(3)*
show  *(3)*
showed  *(5)*
showing  *(6)*
shown  *(2)*
shrugs  *(1)*
side  *(1)*
sign  *(2)*
signature  *(3)*
signed  *(2)*
signing  *(3)*
sign-off  *(1)*
signs  *(1)*
similar  *(2)*

single  *(1)*
sir  *(18)*
skills  *(1)*
slash  *(1)*
Smith  *(3)*
Smith's  *(1)*
solemnly  *(1)*
soon  *(2)*
sorry  *(6)*
Sounds  *(1)*
South  *(1)*
speak  *(2)*
spoke  *(1)*
Stan  *(2)*
S-T-A-N  *(1)*
stand  *(4)*
standard  *(26)*
standards  *(5)*
start  *(1)*
started  *(1)*
state  *(5)*
statement  *(3)*
STATES  *(1)*
stating  *(1)*
stay  *(7)*
stays  *(1)*
STEFANY  *(26)*
stenographic  *(1)*
stenographically  *(1)*
stipulated  *(1)*
strike  *(1)*
subject  *(1)*
submit  *(1)*
Suite  *(2)*
supervise  *(1)*
supervisor  *(38)*
supervisors  *(1)*
supervisor's  *(2)*
supposed  *(1)*
sure  *(7)*
suspend  *(1)*
swear  *(1)*
sworn  *(2)*
synopsis  *(1)*

< T >
take  *(6)*
TAKEN  *(6)*
talking  *(3)*

Tampa  *(1)*
TANNER  *(13)*
TANYA  *(7)*
task  *(8)*
tasks  *(12)*
technically  *(2)*
tell  *(3)*
ten  *(1)*
terminated  *(1)*
terms  *(2)*
testified  *(3)*
testify  *(2)*
testifying  *(1)*
TESTIMONY  *(8)*
Thank  *(5)*
thing  *(3)*
things  *(1)*
think  *(4)*
third  *(4)*
three  *(7)*
tier  *(1)*
TIME  *(12)*
title  *(1)*
Today  *(8)*
today's  *(1)*
top  *(2)*
topic  *(2)*
topics  *(2)*
training  *(1)*
transcribe  *(1)*
transcript  *(5)*
true  *(1)*
truth  *(3)*
truthfully  *(1)*
try  *(2)*
turned  *(1)*
twelve  *(1)*
two  *(4)*
type  *(4)*
typically  *(5)*

< U >
undergo  *(1)*
underneath  *(1)*
undersheriff  *(2)*
understand  *(7)*
understood  *(1)*
UNITED  *(1)*
usually  *(1)*

< V >
**Vanessa**  *(3)*
**Vanessa's**  *(1)*
**various**  *(2)*
**versus**  *(2)*
**videoconference**  *(1)*
**view**  *(1)*

< W >
**wait**  *(2)*
**waive**  *(3)*
**waived**  *(1)*
**want**  *(17)*
**wanted**  *(2)*
**wants**  *(2)*
**water**  *(1)*
**way**  *(1)*
**Wednesday**  *(2)*
**welcome**  *(2)*
**well**  *(7)*
**went**  *(3)*
**we're**  *(5)*
**witness**  *(17)*
**wording**  *(1)*
**words**  *(3)*
**work**  *(4)*
**worse**  *(1)*
**wrap**  *(1)*
**write**  *(1)*
**written**  *(3)*

< Y >
**Yeah**  *(1)*
**year**  *(4)*
**years**  *(19)*

< Z >
**ZOOM**  *(7)*