## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## FORT MYERS DIVISION

JENNA CLARK,

     Plaintiff,

                                Case No. 2:22-cv-614-SPC-NPM

v.

CARMINE MARCENO, in his official
capacity as Sheriff of Lee County,
Florida,

     Defendant.

_____/

## PLAINTIFF'S RESPONSE IN OPPOSITION TO
## DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Plaintiff, JENNA CLARK ("Plaintiff" or "Ms. Clark"), by and through her undersigned counsel and pursuant to Federal Rule of Civil Procedure 56, hereby files her Response in Opposition to Defendant's Motion for Summary Judgment, and in support states as follows:

## INTRODUCTION

In this action, Plaintiff seeks redress for Defendant's violations of the Age Discrimination in Employment Act, 29 U.S.C. § 623 *et seq.* ("ADEA") and the Family Medical Leave Act, 29 U.S.C. § 2612 *et seq.* ("FMLA"). After dedicating 29 years of exemplary service to Defendant, Plaintiff, a 59-year-old woman, was unlawfully terminated under the pretext of a Reduction in Force ("RIF"), along with six other employees, all of whom were over the age of 40 years old. The record evidence compellingly demonstrates that Defendant's purported rationale for the RIF is rife with

inconsistencies, lacks credibility, and was intended to mask Defendant's discriminatory and retaliatory intent.

Defendant's Motion seeks to obfuscate these critical issues, disregarding substantial evidence that establishes genuine material issues of fact regarding the Plaintiff's claims against Defendant for (1) ADEA discrimination, (2) FMLA interference, and (3) FMLA retaliation.[1] Defendant has failed to provide the Court with any factual or legal evidence that would support the entry of summary judgment in its favor. For these reasons and those set forth in further detail below, Defendant's Motion for Summary Judgment must be denied.

## RESPONSE TO STATEMENT OF MATERIAL FACTS ("SOMF")

Plaintiff does not dispute Defendant's Paragraphs 1-5, 7-11, and 24. Plaintiff disputes every other paragraph.

**Paragraph 6 and Plaintiff's Dispute:** Disputed. Plaintiff's position was eliminated effective September 4, 2021, due to Plaintiff's age and in retaliation for exercising her FMLA benefits, as part of a purported reduction-in-force, contrary to Defendant's stated reasons. *See* D.E. 33-9; D.E. 33-1 at ¶¶ 8-12; D.E. 33-7 at 125:5-12, 128:25-129:12; D.E. 33-4 at 92:7-20, 93:4-11. Plaintiff's supervisor, Annmarie Reno ("Reno"), was directly involved in managing and approving her medical leave requests, indicating personal knowledge and involvement in the circumstances leading to Plaintiff's termination. D.E.

---

[1] In the interest of judicial economy and focusing the Court's attention on the remainder of Plaintiff's claims, Plaintiff hereby voluntarily withdraws the claim for ADEA retaliation set forth in Count II of Plaintiff's Amended Complaint [D.E. 13]. Plaintiff maintains that the remainder of her claims are supported by substantial evidence and warrant the denial of Defendant's Motion.

33-4 at 94:7-15.

**Paragraph 12 and Plaintiff's Dispute:** Disputed. John Holloway ("Holloway") testified that the first discussion of the RIF occurred in February or March of 2021, and that Holloway was the first to propose the RIF to Sheriff Marceno. D.E. 33-2 at 9:17-10:2, 10:16-18. According to Defendant's EEOC Position Statement, the first discussion of the RIF started in July or August of 2021. D.E. 33-15 at p. 3. Defendant did not have any written policy or use any objective criteria, such as a point system, to determine the positions to be eliminated. D.E. 33-13 at p. 3; D.E. 33-2 at 18:3-21. Holloway's RIF analysis included observations and anecdotal comments. D.E. 33-2 at 19:16-22. Holloway was aware that some of the employees selected for termination as part of the RIF "had been around for a very significant number of years." *Id.* at 58:24-59:15. Holloway's acknowledgment of targeting long-tenured employees contradicts Defendant's claims of an objective, efficiency-driven process. *Id.* at 9:17-10:18, 18:3-21, 58:24-59:15; D.E. 33-13 at p. 3.

**Paragraph 13 and Plaintiff's Dispute:** Disputed. Plaintiff incorporates her Dispute to SOMF ¶ 12. This paragraph improperly rephrases Holloway and Reno's testimony. D.E. 33-2 at 49:6-24; D.E. 33-4 at 55:5-16, 56:9-25. Defendant's internal Workload Assessment and Staff Inspection Report (the "Report") conducted in October 2020 concluded the Purchasing Department was inadequately staffed and would benefit from hiring additional Purchasing Agents. D.E. 33-12. The Report did not make any recommendations regarding Plaintiff's Purchasing Director position, which contradicts Defendant's rationale. *Id.*

**Paragraph 14 and Plaintiff's Dispute:** Disputed. This paragraph contradicts Reno's testimony as to the RIF and the criteria used in her analysis. D.E. 33-4 at 42:2-19, 47:16-48:2. Reno testified Defendant's RIF was conducted for budgetary purposes and to save money. *Id.* at 42:2-19. Reno testified that she reviewed the potential savings of salary and benefits costs with Holloway when selecting positions to be eliminated. *Id.* at 62:2-12. Yet, Defendant contends it gave no consideration to the salaries of employees or payroll costs in selecting positions to be eliminated. D.E. 33-2 at 22:17-23.

**Paragraph 15 and Plaintiff's Dispute:** Disputed. Defendant never considered eliminating Shannon Lehman's position. *Id.* at 51:17-24. Defendant contended Plaintiff's job responsibilities were absorbed exclusively by Shannon Lehman, who prior to Plaintiff's position being eliminated, was a subordinate employee to Plaintiff. *Id.* at 51:9-12; D.E. 33-4 at 57:9-11. Defendant previously asserted that it considered only the job positions themselves, and not the employees in those positions or the individual skills and characteristics of those employees in selecting positions to be eliminated as part of the RIF. "This was about the position, not the person." D.E. 33-2 at 23:2-13, 23:21-24:2, 60:24-61:5; D.E. 33-3 at 11:25-12:8. Yet, Reno testified that the individual skills of the employees were considered in selecting employees to have their positions eliminated. D.E. 33-4 at 85:17-19.

**Paragraph 16 and Plaintiff's Dispute:** Disputed. Plaintiff incorporates her Dispute to SOMF ¶ 12. Reno was involved in Holloway's decision to eliminate Plaintiff's position. *Id.* at 55:24-56:25; D.E. 33-2 at 11:19-24. Defendant considered the age of employees in selecting positions to be eliminated as part of the RIF. D.E. 33-7 at 125:5-

12, 128:25-129:12; D.E. 33-9.   All the employees Defendant selected to have their positions eliminated were over 40 years of age, but Defendant asserts that no consideration was given to that fact when conducting the RIF. D.E. 33-2 at 61:6-12. Defendant selected the following employees to have their positions with Defendant eliminated: (1) Jami Bartz, 58 years old; (2) Marsha Sprankel, 66 years old; (3) Tracy Estep, 48 years old; (4) Jenna Clark, 59 years old; (5) Amy DellAquilla, 58 years old; (6) James Jones, 51 years old; (7) Anthony Ramsey, 46 years old. D.E. 33-2 at 28:4-10; *id.* at Ex. 4. Defendant's records reflect that of the employees selected, Jami Bartz, Marsha Sprankel, and Tracy Estep, had their respective positions eliminated in early 2021, prior to the approval of the purported RIF. D.E. 33-9.

**Paragraph 17 and Plaintiff's Dispute:** Disputed. This paragraph mischaracterizes the email exchange between Plaintiff and Dawn Heikkila ("Heikkila"). Plaintiff respectfully refers the Court to the email exchange filed as Docket Entry 33-10. Heikkila believed Plaintiff had shared enough information about Plaintiff's health condition to know that Plaintiff's leave request qualified for FMLA leave. D.E. 33-6 at 20:4-13. Defendant had an internal practice where if an employee took qualifying leave under the FMLA for less than seven (7) days, Defendant would not designate the leave as FMLA leave. *Id.* at 18:15-19:14; D.E. 33-5 at 20:13-21, 24:1-13, 25:13-25.

**Paragraph 18 and Plaintiff's Dispute:** Disputed. Plaintiff incorporates her Dispute to SOMF ¶ 17. Plaintiff did not designate her absence as sick leave so that she could receive her normal pay, as Plaintiff could only enter the absence as sick leave, vacation leave, or personal leave. D.E. 33-7 at 46:17-24. Defendant failed to designate

Plaintiff's leave as FMLA leave and failed to provide Plaintiff with an eligibility notice or a rights and responsibilities notice. D.E. 33-1 at ¶ 14. Defendant admits that Plaintiff requested leave for a health condition for the period of August 18, 2021, to August 27, 2021. D.E. 33-13 at p. 7.

**Paragraph 19 and Plaintiff's Dispute:** Disputed. Plaintiff incorporates her Dispute to SOMF ¶¶ 17, 18. Reno testified that Plaintiff's position was approved to be eliminated as part of the RIF on August 20, 2021, and was notified by Holloway. D.E. 33-4 at 89:14-24. Yet, Defendant's letter to Plaintiff notifying her of the RIF was dated on August 15, 2021. D.E. 33-8. On August 19, 2021, Reno issued a write-up against Plaintiff for insubordination, which she emailed to Holloway. D.E. 33-11; D.E. 33-4 at 86:11-24. Reno discussed the email with Holloway that same day. D.E. 33-4 at 86:11-24. Reno testified that Plaintiff's disciplinary record played no role in the decision to eliminate Plaintiff's position. D.E. 33-4 at 85:9-12. Defendant considered Plaintiff's age and Plaintiff's use of FMLA leave in deciding to eliminate Plaintiff's position. D.E. 33-9; D.E. 33-1 at ¶¶ 8-12; D.E. 33-7 at 125:5-12, 128:25-129:12; D.E. 33-4 at 92:7-20, 93:4-11.

**Paragraph 20 and Plaintiff's Dispute:** Disputed. Objection: This paragraph contains improper speculation and inadmissible testimony, as Reno is not sufficiently qualified to testify regarding electronic metadata in the letter. Plaintiff incorporates her Dispute to SOMF ¶¶ 17-19. Heikkila drafted the letter to the Plaintiff on August 15, 2021, and was instructed to do so by Reno. D.E. 33-6 at 31:1-6, 31:17-23; D.E. 33-8. Heikkila did not draft a letter for any of the other employees terminated during the RIF. D.E. 33-

6 at 33:13-34:7. In the letter dated August 15, 2021, Defendant notified Plaintiff that her position was being eliminated and gave Plaintiff the choice of retiring by September 3, 2021, or having her "appointment withdrawn," meaning the employee would be terminated. D.E. 33-8; D.E. 33-14 at p. 14; D.E. 33-15 at p. 3; D.E. 33-2 at 37:4-22.

**Paragraph 21 and Plaintiff's Dispute:** Disputed in part. Undisputed that Reno contacted Plaintiff on August 21, 2021, informing Plaintiff that Defendant had eliminated her position. Disputed as to Defendant's characterization of Reno's statements on the call. D.E. 33-7 at 48:6-24. Reno was aware that Plaintiff was on sick leave for a surgery when she notified Plaintiff that her position was eliminated. D.E. 33-4 at 92:7-20.

**Paragraph 22 and Plaintiff's Dispute:** Disputed in part. Undisputed that Heikkila and Plaintiff spoke via telephone on August 23, 2021. Otherwise, disputed. Heikkila prevented Plaintiff from applying for available positions and made age-related disparaging remarks to her. Disputed as to Defendant's characterization of Heikkila's statements and Plaintiff's statements on the telephone call. D.E. 33-7 at 54:9-55:23, 57:10-58:6; D.E. 33-1 at ¶¶ 19-20.

**Paragraph 23 and Plaintiff's Dispute:** Disputed. On August 24, 2021, Plaintiff received the letter notifying her of her position being eliminated. D.E. 33-7 at 61:8-18. Defendant notified Plaintiff of her position being eliminated while she was on leave for surgery. D.E. 33-5 at 29:10-16; D.E 33-8. Plaintiff was forced to retire or she would have been terminated on September 3, 2021. D.E. 33-8; D.E. 33-2 at 37:4-22. As a result of her forced early retirement, Plaintiff was subjected to early retirement monetary

penalties. D.E. 33-8; D.E. 33-1 at ¶ 27.

## **LEGAL ARGUMENT**

I.    **Plaintiff Has Established a *Prima Facie* Case of Age Discrimination and Demonstrated Genuine Issues of Material Fact**

In a RIF case brought under the ADEA, a Plaintiff must show (1) that she was in a protected age group and was adversely affected by an employment decision, (2) that she was qualified for her current position or to assume another position at the time of discharge, and (3) evidence by which a fact finder could reasonably conclude that the employer intended to discriminate on the basis of age in reaching that decision. *Watkins v. Sverdrup Tech., Inc.*, 153 F.3d 1308, 1314 (11th Cir. 1998) (quoting *Williams v. Vitro Servs. Corp.*, 144 F.3d 1438, 1441 (11th Cir. 1998)).

### a. **Plaintiff Was in a Protected Age Group and Was Adversely Affected by Defendant's RIF**

Plaintiff has established sufficient record evidence as to each element of her age discrimination claim. Plaintiff was adversely affected by Defendant's elimination of her job position under the false guise of a reduction in force and was 59 years of age at the time.

In its Motion, Defendant argues that the fact Plaintiff resigned means that she cannot establish that she was adversely affected by an employment decision. *See* D.E. 28, p. 17. Defendant ignores Eleventh Circuit precedent which establishes that in cases like the Plaintiff's, "[a]n involuntary resignation that constitutes a constructive discharge is an adverse employment act." *Ross v. City of Perry*, 396 F. App'x 668, 670 (11th Cir. 2010); *see also Morgan v. Ford*, 6 F.3d 750, 755 (11th Cir. 1993). A plaintiff's choice to retire early

results in a constructive discharge when the retirement offer was "an impermissible take-it-or-leave-it choice between retirement and discharge." *Rowell v. BellSouth Corp.*, 433 F.3d 794, 806 (quoting *Vega v. Kodak Caribbean, Ltd.*, 3 F.3d 476, 480 (1st Cir. 1993); s*ee also Downey v. Southern Natural Gas Co.*, 649 F.2d 302, 305 (5th Cir. Unit B June 1981) (reversing grant of summary judgment finding a reasonable person might have been compelled to resign where plaintiff was advised by his supervisor he might be discharged with a consequent loss of benefits and voluntarily entered early retirement).

In *Rowell*, the Eleventh Circuit explained that the plaintiff could not show his resignation resulted in an adverse employment action because he was "never in a position without an opportunity to continue his status quo employment" and failed to demonstrate "that there [was] no objectively reasonable opportunity to remain employed" with the Defendant. *Rowell*, 433 F.3d at 806 (quoting *Vega v. Kodak Caribbean, Ltd.*, 3 F.3d 476, 480 (1st Cir. 1993)). Here, Plaintiff was in the very position described in *Rowell*, in that Defendant's letter left no reasonable alternative besides retirement or discharge. *Id.* Defendant gave Plaintiff ten (10) days from receipt of the letter to either elect early retirement or be terminated and was expressly prevented from seeking alternative positions with Defendant. D.E. 33-1 at ¶ 23; D.E. 33-8. Although Plaintiff elected to retire early to preserve her benefits, it is undisputed that Plaintiff would have been terminated by September 3, 2021. *See* D.E. 33-2 at 37:4-22. As a result, Plaintiff has established sufficient record evidence of the first element of her age discrimination claim.

> **b. Plaintiff Was Qualified for Her Position and Defendant Failed to Consider Plaintiff for Alternative Positions**

9

As to the second element of her claim, Plaintiff must only show she was qualified for her position at the time of its elimination. *See Watkins*, 153 F.3d at 1314 (stating the second element requires that Plaintiff "was qualified for his current position **_or_** to assume another position at the time of discharge"). Plaintiff was qualified for her position as Purchasing Director and Defendant fails to point to any evidence to the contrary. Plaintiff worked for Defendant for over 29 years, held her position for over 9 years, and maintained a history of positive performance evaluations. *See* D.E. 33-7 at 23:20-25; D.E. 33-1 at ¶ 6.

Instead, Defendant's Motion misconstrues the legal standard in RIF cases and argues that Plaintiff's ADEA claim fails because Plaintiff "points to no position she claims she should have been given at the time of her job elimination." *See* D.E. 28, p. 17. As the Eleventh Circuit described in *Earley*, only in cases where a position is eliminated for entirely nondiscriminatory reasons is the Plaintiff required to show she was qualified for another available position at the time of her discharge. *See Earley v. Champion Int'l Corp.*, 907 F.2d 1077, 1083. Here, there is significant record evidence that Plaintiff's job elimination was motivated by discriminatory animus, including Defendant's selection of exclusively employees over the age of 40, age-related discriminatory remarks, and pretextual reasoning in eliminating Plaintiff's position.[2]

Even assuming Plaintiff was required to demonstrate she was qualified for another position at the time of her job elimination, she has unequivocally met her burden. At the time of her job elimination, Plaintiff was qualified for Defendant's available positions, namely the Communications Call Taker position. *See* D.E. 33-1 at ¶ 23; D.E. 33-7 at

---

[2] *See* discussion of Defendant's discriminatory intent *infra* Part I.C.

54:9-55:23. Defendant contends it had no duty to consider Plaintiff for another position within the organization and cites to *Earley* in support of this notion. *See* D.E. 28 at p. 17; *Earley*, 907 F.2d at 1083. Defendant's reliance in *Earley* is entirely misplaced. In *Earley*, the Court held that the defendants had no duty to consider plaintiffs for positions available months before or after the time of discharge because there were no available positions with defendants at the time of the plaintiff's discharge. *Id.* In stark contrast, here, the record evidence establishes Defendant had open and available positions at the time of its purported RIF and that Defendant failed to consider the Plaintiff for those positions.[3] At a minimum, Plaintiff has presented sufficient evidence to demonstrate an issue of material fact regarding her qualifications and Defendant's failure to consider her for alternative positions.

### c. Plaintiff Has Established Sufficient Record Evidence of Defendant's Discriminatory Intent

Plaintiff has provided sufficient evidence of Defendant's intent to discriminate on the basis of her age. To satisfy the third element of her claim, Plaintiff must provide evidence that would lead a reasonable factfinder to conclude (1) that the Defendant consciously refused to consider retaining her because of her age, or (2) Defendant regarded age as a negative factor in such consideration. *Allison v. W. Union Tel. Co.*, 680

---

[3] Defendant's Motion also argues that Plaintiff's claim is deficient because she did not apply for the Communications Call Taker position. *See* D.E. 28 at p. 17. This argument fails for similar reasons. Under Eleventh Circuit precedent, there is no requirement that a Plaintiff formally apply for open positions when there is evidence that an employer dissuaded the employee from applying to positions, or when there is evidence that an employer had a practice of transferring individuals to vacant positions without requiring an application. *See Crisman v. Fla. Atl. Univ. Bd. of Trs.*, 659 Fed. Appx. 572, 579 (11th Cir. 2016) (citing *Smith v. J. Smith Lanier & Co.*, 352 F.3d 1342, 1345-46 (11th Cir. 2003)).

F.2d 1318, 1321 (11th Cir. 1982) (quoting *Williams v. Gen. Motors Corp.*, 656 F.2d 120, 130 (5th Cir. 1981)).

Here, Plaintiff has established significant evidence of Defendant's discriminatory intent. As addressed further herein, this evidence includes: (1) Defendant's selection of exclusively employees over the age of 40 to have their positions eliminated as part of the RIF; (2) age-related discriminatory remarks targeted towards the Plaintiff; (3) significant inconsistencies and contradictions in Defendant's selection criteria in conducting the RIF; and (4) Defendant's failure to present specific evidence to support its decision to terminate Plaintiff as opposed to other employees.

In conducting its purported RIF, Defendant exclusively selected employees over the age of 40 to have their positions eliminated. *See* D.E. 33-9. Defendant's one-hundred-percent (100%) selection rate of employees over the age of 40, by itself, presents a significant issue of material fact. *See, e.g.*, *Rowell*, 433 F.3d at 798 (citing *Williams v. General Motors Corp.*, 656 F.2d 120 (5th Cir. Unit B Sept. 1981)); *see also Bennett v. SportsMedia Tech. Corp.*, 2023 U.S. Dist. LEXIS 131544, at *15 (M.D. Fla. Mar. 15, 2023) (finding that an employer's decision to eliminate a higher percentage of employees in a protected class and an employee's history of positive job performance established sufficient evidence of discriminatory intent under the RIF standard to deny summary judgment).

Defendant fails to address this crucial fact entirely and instead, attempts to include new employees in its RIF in 2021.[4] *See* D.E. 28, p. 17-18. Defendant now contends for

---

[4] Defendant's Motion also attempts to argue that Plaintiff's age discrimination claim fails because most of her duties were absorbed by Shannon Lehman, who was age 54 at the time of Plaintiff's termination.

the first time that (1) Tammy Rhodes' position as a Communications Secretary and (2) Karen Ciofani's position as a Communications Director, were both included in the same RIF as Plaintiff's. *Id.* This is contradicted by Defendant's own discovery responses and the testimony of Holloway. *See* D.E. 33-14 at p. 11; D.E. 33-2 at 28:8-16. Even more notable is Defendant's admission that Rhodes was transferred to a new position and Ciofiani simply had her title changed, neither of which were opportunities presented to Plaintiff. *See* D.E. 28 at p. 18. Further adding to the evidence of Defendant's targeting of Plaintiff, among the employees Defendant contends were included in the RIF, Plaintiff was the *only* employee to receive the letter giving her (10) days from receipt of the letter to either elect early retirement or be terminated, with no option to apply to alternative positions.[5]

Defendant's age-related disparaging remarks included suggesting Plaintiff should go on disability despite Plaintiff's positive job performance, making negative remarks about the cost of Plaintiff's salary and retirement benefits, and discouraging Plaintiff from seeking alternative positions because she did not have the required "memory" and "attention to detail." D.E. 33-1 at ¶ 20; D.E. 33-7 at 54:15-25, 55:1-5, 120:18-25, 121:1-9. Accordingly, Plaintiff has established genuine issues of material fact regarding Defendant's discriminatory intent in conducting the RIF.

---

Even assuming Plaintiff was required to show replacement by a younger individual under the RIF framework, which she is not, the Eleventh Circuit has deemed an age difference of as little as 3 years to be sufficient. *See, e.g.*, *Carter v. Decisionone Corp.*, 122 F.3d 997, 1003-1004 (11th Cir. 1997) (3 year age difference between plaintiff and employee replacement was sufficient to allow a *prima facie* case of age discrimination); *Damon v. Fleming Supermarkets of Florida, Inc.*, 196 F.3d 1354, 1360 (11th Cir. 1999) (5 year age difference between plaintiff and replacement employee was sufficient to allow a prima facie case of age discrimination).
[5] *See* D.E. 33-6 at 33:13-34:7; D.E. 33-4 at 82:10-20.

**d. Defendant's Justification for Plaintiff's Termination is Pretext for Discrimination**

At the summary judgment stage, "[t]he district court must evaluate whether the plaintiff has demonstrated such weaknesses, implausibilities, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could find them unworthy of credence." *Hornsby-Culpepper v. Ware*, 906 F.3d 1302, 1312 (11th Cir. 2018) (citing *Jackson v. State of Ala. State Tenure Comm'n*, 405 F.3d 1276, 1289 (11th Cir. 2005)).

In conducting its RIF, Defendant did not use any objective criteria in its analysis, and instead, argues its decision was based on a litany of intentionally vague factors, including talking to employees, questioning the work being performed, and discussing workloads. *See* D.E. 28, p. 9. The Eleventh Circuit has held that an employer "cannot testify in abstract terms as to what might have motivated the decision-maker; it must present specific evidence regarding the decision-maker's actual motivations with regard to each challenged employment decision." *Walker v. Mortham*, 158 F.3d 1177, 1182 n. 8 (11th Cir. 1998) (citing *Increase Minority Participation by Affirmative Change Today of Nw. Florida, Inc. (IMPACT) v. Firestone*, 893 F.2d 1189, 1193 (11th Cir. 1990)). This showing requires the presentation of facts which the decision-maker knew at the time when the decision was made. *See Steger v. Gen. Elec. Co.*, 318 F.3d 1066, 1076 (11th Cir. 2003).

Defendant has failed to articulate any specific, logical, or factually supported rationale for Defendant's decision to eliminate Plaintiff's position. In its Motion, Defendant contends that it concluded that Plaintiff and Shannon Lehman, employed as

Purchasing Manager, were performing the same work and that there was no need for a director level position. *See* D.E. 28 at p. 17. Defendant states that it ultimately determined that since Lehman was more proficient with an administrative software program than Plaintiff, Plaintiff's position should be eliminated as part of the RIF. *See* D.E. 28 at pp. 17-18. Yet, Defendant has failed to demonstrate that Holloway, the ultimate decision-maker, had any awareness of Plaintiff's proficiency with the software program. In his deposition, Holloway failed to make any reference to Plaintiff's skills, and in fact, expressly and repeatedly denied considering the characteristics of individual employees in the relevant positions because it "was about the position, not the person." D.E. 33-2 at 23:2-13, 60:24-25, 61:1-5; D.E. 33-3 at 11:25, 12:1-8. Holloway was unable to even recall who held the position of Purchasing Manager, further undermining Defendant's supposed analysis of Lehman and Plaintiff's job duties. D.E. 33-2 at 51:25-52:3.

Moreover, Defendant's basis for eliminating Plaintiff's position is replete with inconsistencies and is contradicted by the record evidence. In conducting the RIF, Holloway expressly denied reviewing or considering the salaries or payroll expenses of any positions in determining which positions to eliminate. D.E. 33-2 at 23:21-24:1-2. In a direct contradiction, Reno testified that Defendant's RIF was conducted for budgetary purposes and that she had even reviewed salary and payroll information with Holloway in determining the positions to be eliminated. D.E. 33-4 at 42:2-19, 62:2-12. Defendant now contends that the RIF helped ease increasing operational costs. *See* D.E. 28 at p. 19. Indeed, in the letter sent to Plaintiff notifying her of her termination, Defendant stated

that Defendant had incurred additional expenses and financial obligations necessitating the RIF. *See* D.E. 33-8.

Defendant's shifting explanations and inconsistent statements regarding the RIF and Plaintiff's termination are evidence of pretext. *See Bechtel Const. Co. v. Secretary of Labor*, 50 F.3d 926, 935 (11th Cir. 1995).[6] The factual accuracy of Holloway and Reno's testimony in conducting the RIF goes to the ultimate question of their credibility and must be determined by the fact finder. *See Damon v. Fleming Supermarkets of Fla., Inc.*, 196 F.3d 1354, 1361 (11th Cir. 1999).

Even setting aside the RIF standard, Plaintiff has established "a convincing mosaic of circumstantial evidence that would allow a jury to infer intentional discrimination." *Lewis v. City of Union City, Ga.*, 934 F.3d 1169, 1185 (11th Cir. 2019) (quoting *Smith v. Lockheed-Martin Corp.*, 644 F.3d 1321, 1328 (11th Cir. 2011)). Plaintiff can meet this standard by showing among other things: (1) suspicious timing, ambiguous statements, and other bits and pieces from which an inference of discriminatory intent might be drawn, (2) systematically better treatment of similarly situated employees, and (3) that the employer's justification is pretextual." *Id.* As described herein, Plaintiff has established a convincing mosaic of evidence sufficient for a jury to find for the Plaintiff. For these reasons, Defendant's Motion for Summary Judgment on Plaintiff's age discrimination claim must be denied.

## II.    Plaintiff Has Established a *Prima Facie* Case of FMLA Interference and Demonstrated Genuine Issues of Material Fact

---

[6] S*ee also Jordan v. City of Atlanta*, 2023 U.S. Dist. LEXIS 127096, at *40-41 (N.D. Ga. July 24, 2023) (denying summary judgment on ADEA claim where plaintiff presented conflicting testimony regarding defendant's articulated reasons for terminating the plaintiff as part of a RIF).

To establish an FMLA interference claim, a plaintiff must show: (1) she was entitled to a benefit under the FMLA, and (2) her employer denied her that benefit. *Krutzig v. Pulte Home Corp.*, 602 F.3d 1231, 1235 (11th Cir. 2010). An employee does not need to prove that the employer intended to deprive the employee of her FMLA rights: "the employer's motives are irrelevant." *Strickland v. Water Works and Sewer Bd. of Birmingham*, 239 F.3d 1199, 1208 (11th Cir. 2001).

### a. Defendant Denied Plaintiff Her FMLA Benefits

It is undisputed that Plaintiff was an eligible employee when she requested leave in August of 2021.[7] Plaintiff's surgery meets the requirements of the FMLA and, indeed, Defendant has conceded that Plaintiff shared sufficient information to know her surgery was a qualifying reason under the FMLA.[8] Defendant did not designate Plaintiff's leave as FMLA leave and failed to provide Plaintiff with required notices under the FMLA, pursuant to Defendant's internal practices. *See* D.E. 33-1 at ¶ 14; D.E. 33-6 at 18:15-19:14. Defendant's Motion does not dispute these facts, and instead, asserts that Plaintiff cannot establish that Defendant denied Plaintiff a benefit under the FMLA, and that the denial of the benefit resulted in prejudice to Plaintiff. *See* D.E. 28 at pp. 21-22. As described in further detail below, both arguments are without merit.

---

[7] Defendant's Motion does not challenge Plaintiff's eligibility for FMLA leave. Nonetheless, Defendant has previously conceded Plaintiff's eligibility for FMLA leave during the relevant time period. *See* D.E. 33-13 at p. 6 ("It is admitted that between January 1, 2021, and September 3, 2021, Jenna Clark was eligible to take FMLA leave for a qualifying reason, consistent with the terms of the FMLA leave policy of the Sheriff's Office.").

[8] Defendant's Motion also does not challenge that Plaintiff's surgical procedure was a qualifying reason under the FMLA. Defendant has also previously conceded that Plaintiff shared sufficient information to know that the surgical procedure was a qualifying reason under the FMLA. *See* D.E. 33-6 at 20:4-13.

Defendant interfered with Plaintiff's rights under the FMLA, including by: (1) Defendant's failure to designate Plaintiff's request for FMLA or inquire further about her FMLA requests, as required under 29 C.F.R. § 825.301; (2) Defendant's failure to provide Plaintiff with an eligibility notice within five days, as required under 29 C.F.R. § 825.300(b)(1); (3) Defendant's failure to provide Plaintiff with a rights-and-responsibilities notice, as required under 29 C.F.R. § 825.300(c)(1); and (4) Defendant's failure to restore Plaintiff to her position at the conclusion of her leave under 29 U.S.C. § 2614(a)(1).

### b. Plaintiff Was Prejudiced by the Denial of Her FMLA Benefits

To show prejudice, the plaintiff must "demonstrate some harm remediable by either 'damages' or 'equitable relief.'" *Evans v. Books-A-Million*, 762 F.3d 1288, 1296 (11th Cir. 2014) (quoting *Ragsdale v. Wolverine World Wide, Inc.*, 535 U.S. 81, 89 (2002)). Here, Plaintiff has established sufficient evidence of prejudice, including, that if not for Defendant's interference, Plaintiff (1) would have been able to take additional leave and use her paid leave benefits concurrently; (2) would have been restored to her position upon her leave ending; and (3) would not have incurred monetary losses and suffered the compensatory damages that were incurred due to her termination.

As to the first harm, Plaintiff was harmed by Defendant's interference in that she was denied the opportunity to take additional leave and use her paid leave benefits concurrently. Defendant's FMLA policy requires that employees use all available paid leave concurrently with their FMLA leave, including sick leave, personal leave, and vacation leave. *See* D.E. 28, p. 13. Under the policy, Plaintiff could select which type of

paid leave to use concurrently. *See* D.E. 33-6 at 20:14-21:1-16. Plaintiff was granted paid leave from August 17, 2021, until September 4, 2021. However, if Defendant had informed Plaintiff of her FMLA rights and designated her qualifying leave, she could have utilized up to 12 weeks of leave and structured her concurrent paid leave as she desired. *See* D.E. 33-1 at ¶ 15.

As to the second and third harms, Plaintiff has suffered prejudice "made prima facie showing of an FMLA interference claim, in that she demonstrated she was not reinstated" to her former position." *Leach v. State Farm Mut. Auto. Ins. Co.*, 431 Fed. Appx. 771, 776 (11th Cir. 2011) (quotation marks omitted) (quoting *Schaaf v. Smithkline Beecham Corp.*, 602 F.3d 1236, 1241 (11th Cir. 2010)). If Defendant had properly designated Plaintiff's leave and restored Plaintiff to her position at the conclusion of the leave, Plaintiff would have incurred compensatory damages resulting in the loss of her job. *See also Elkins v. Roman Catholic Archdiocese of Atlanta, Inc.*, 2023 U.S. Dist. LEXIS 97346, at *67-68 (N.D. Ga. June 5, 2023) (denying summary judgment because the employer had not established that Plaintiff's termination as part of a RIF was wholly unrelated to the FMLA leave).[9]

---

[9] Defendant's failure to properly designate Plaintiff's FMLA leave also resulted in significant monetary losses. Prior to her termination, Plaintiff had accrued vacation leave benefits of 404.51 hours, sick leave benefits of 263.23 hours, and personal leave benefits of 100 hours. D.E. 33-1 at Ex. 5. After Plaintiff's termination, Defendant paid out Plaintiff's 404.51 vacation leave hours, 100 sick leave hours, and 0 personal leave hours. As a result, Plaintiff lost the value of 163.24 accrued sick leave hours and the value of 100 accrued personal leave hours. *Id.* Although Defendant contends it paid out the required amount of accrued hours to Plaintiff, per its policies, Defendant fails to acknowledge that Plaintiff would have enjoyed the value of all of her accrued hours, rather than the lesser amounts paid out, if not for Plaintiff's termination.

Defendant's Motion argues that Plaintiff was not prejudiced by Defendant's FMLA violations because she was allowed to take leave during the period of August 18, 2021, to August 27, 2021, and was placed on paid administrative leave during that time.[10] *See* D.E. 28, p. 23. Defendant neglects Eleventh Circuit precedent which recognizes various other forms of harm in FMLA interference claims, including: (1) the employee would have requested more leave had they known of their rights under the FMLA; (2) the employee suffered compensatory damages; or (3) the employee incurred monetary losses. *See Moore v. City of Homewood*, No. 21-11378, 2023 U.S. App. LEXIS 431, at *25-26 (11th Cir. Jan. 9, 2023); *see also Ramji v. Hosp. Housekeeping Sys., LLC*, 992 F.3d 1233, 1246 (11th Cir. 2021) (finding plaintiff had sufficiently established harm on summary judgment where plaintiff alleged that she could have made informed decisions about her healthcare with the knowledge that her job would be protected and return to work after further medical treatment).[11]

The record evidence establishes a dispute of material fact as to whether Plaintiff was harmed by Defendant's failure to provide FMLA leave and provide her with notice

---

[10] In support of its argument, Defendant cites *De Bello v. Alutiiq, LLC.* 2023 U.S. Dist. LEXIS 138114, at *11 (M.D. Fla. Aug. 8, 2023). However, in *De Bello*, the Court determined that the plaintiff had failed to demonstrate harm as a result of the Defendant's non-compliance with the FMLA because the plaintiff had voluntarily resigned from her employment, and failed to assert any other harm caused by the violation. *Id.* at *10-11. In stark contrast with the present case, not only was Plaintiff terminated from her employment during her protected leave and shortly after requesting the protected leave, but Plaintiff has also articulated several types of prejudice caused by Defendant's interference.

[11] *See also Diamond v. Hospice of Florida Keys, Inc.*, 677 F. App'x 586, 594 (11th Cir. 2017) (reversing summary judgment for the employer and finding that the plaintiff had demonstrated prejudice by alleging that she would have taken additional leave if the employer had not discouraged her from doing so and that she incurred additional travels costs in traveling to her parents' home rather than being able to take leave); *Hannah P. v. Coats*, 916 F.3d 327, 346-47 (4th Cir. 2019) (precluding summary judgment on an interference claim when the record reflected that had the plaintiff known that the FMLA protected her position, she could have structured her leave differently and used sick leave for her leave of absence).

of her rights under the FMLA. Accordingly, Defendant's Motion for Summary Judgment on Plaintiff's FMLA interference claim must be denied.

### III.   Plaintiff Has Established a *Prima Facie* Case of FMLA Retaliation and Demonstrated Genuine Issues of Material Fact

To establish an FMLA retaliation claim, a plaintiff must show: (1) the employee engaged in statutorily protected conduct, (2) the employee suffered an adverse employment action, and (3) there is a causal connection between the two." *Krutzig v. Pulte Home Corp.*, 602 F.3d 1231, 1234 (11th Cir. 2010).

#### a.   Plaintiff Engaged in a Statutorily Protected Activity and Suffered an Adverse Employment Action

Under the FMLA, an employee engages in a statutorily protected activity when she requests time off or provides notice to her employer of her need to take time off for a serious health condition. *Walker v. UPS Inc.*, 2022 U.S. App. LEXIS 28712, at *7 (11th Cir. Oct. 27, 2022) (citing *Cruz v. Publix Super Mkts., Inc.*, 428 F.3d 1379, 1383-84 (11th Cir. 2005))). Plaintiff engaged in a statutorily protected activity when: (1) she requested qualifying FMLA leave from Defendant on August 12, 2021, and (2) she went on qualifying FMLA leave for her surgical procedure. *See* D.E. 33-10.

Plaintiff suffered an adverse employment action when her position was eliminated under the pretext of the RIF. As previously discussed herein,[12] a plaintiff's choice to retire early results in a constructive discharge when the retirement offer was "an impermissible take-it-or-leave-it choice between retirement and discharge." *Rowell*, 433 F.3d at 806 (quoting *Vega v. Kodak Caribbean, Ltd.*, 3 F.3d 476, 480 (1st Cir. 1993)). Indeed, Defendant

---

[12] *See* discussion of Defendant's adverse employment action *supra* Part I.A.

has admitted that Plaintiff would have been terminated by September 3, 2021, if she had not elected to retire early. *See* D.E. 33-2 at 37:4-22.

In addition to Plaintiff losing her job of more than 29 years, Plaintiff was also reprimanded by Reno for alleged insubordination while on qualifying FMLA leave. *See* D.E. 33-11. Reno had never disciplined Plaintiff for insubordination in the past and did so, just one day prior to Defendant's final decision to terminate Plaintiff's employment on August 20, 2021. D.E. 33-4 at 87:20-23, 90:9-12.  Four days later, August 24, 2021, Plaintiff was discouraged and prevented from applying for open positions and was subjected to age-related discriminatory remarks. D.E. 33-7 at 54:9-25, 55:1-23. Even assuming that Defendant's elimination of Plaintiff's position, by itself, was insufficient to establish an adverse employment action as Defendant suggests, Defendant's cumulative actions are sufficient to show a materially adverse action.[13] As a result, Plaintiff has established sufficient evidence to establish the first two elements of her FMLA retaliation claim.

### b. Plaintiff's Termination is Casually Related to Her Protected Activities

"To establish a causal connection, a plaintiff must show that the relevant decisionmaker was 'aware of the protected conduct, and that the protected activity and the adverse actions were not wholly unrelated.'" *Kidd v. Mando Am. Corp.*, 731 F.3d 1196,

---

[13] Materially adverse action need not be as serious as outright termination but may also encompass "adverse actions which fall short of ultimate employment decisions," such as a written reprimand. *Wideman v. Wal-Mart Stores, Inc.*, 141 F.3d 1453,1455-56 (11th Cir. 1998). The Eleventh Circuit has noted that "the cumulative weight of numerous individual incidents can be considered in determining whether the employee experienced materially adverse action." *Putman v. Sec'y, Dep't of Veterans Affs.*, 510 F. App'x 827, 831 (11th Cir. 2013) (citing *Shannon v. BellSouth Telecomms., Inc.*, 292 F.3d 712, 716 (11th Cir. 2002)).

1211 (11th Cir. 2013) (quoting *Shannon v. Bellsouth Telecomms., Inc.*, 292 F.3d 712, 716 (11th Cir. 2002)). "Generally, a plaintiff can show the two events are not wholly unrelated if the plaintiff shows that the decision maker was aware of the protected conduct at the time of the adverse employment action." *Krutzig v. Pulte Home Corp.*, 602 F.3d 1231, 1234 (11th Cir. 2010). Typically, "close temporal proximity between the employee's protected conduct and the adverse employment action is sufficient circumstantial evidence to create a genuine issue of material fact of a causal connection." *Brungart v. BellSouth Telecomm.'s, Inc.*, 231 F.3d 791, 799 (11th Cir. 2000).

Here, Plaintiff's position was eliminated just days after requesting FMLA leave. Defendant's letter notifying Plaintiff of her position being eliminated was dated August 15, 2021, just three (3) days after the leave request. Furthermore, Defendant contends that the final decision to eliminate Plaintiff's position was made on August 20, 2021, just nine (9) days after the leave request. *See* D.E. 28 at p. 13; D.E. 33-4 at 89:14-24. By Defendant's own admission, Plaintiff's position was eliminated during her qualifying FMLA leave, which began on August 18, 2021. *See* D.E. 28 at p. 13. The extremely close temporal proximity between Plaintiff's FMLA-qualifying leave and the elimination of her position "is more than sufficient to create a genuine issue of material fact of causal connection." *Martin v. Brevard County Pub. Sch.*, 543 F.3d 1261, 1268 (11th Cir. 2008) (vacating lower court's order granting defendant's motion for summary judgment where plaintiff was terminated while on FMLA leave). *See also Armbrust v. SA-ENC Operator Holdings, LLC*, 2015 U.S. Dist. LEXIS 70399, at *19-20 (M.D. Fla. June 1, 2015) (denying

defendant's motion for summary judgment on FMLA retaliation claim where defendant terminated the plaintiff while on FMLA leave).

In an attempt to obfuscate the close temporal proximity, Defendant erroneously claims that the record evidence confirms that Holloway's proposals for job eliminations "were completed and submitted to the Sheriff for consideration and approval in June and July 2021." *See* D.E. 28 at p. 14. Defendant argues that since these proposals were complete prior to Plaintiff's leave request in August of 2021, she cannot establish causation. *Id.* Defendant plainly misstates Holloway's own testimony.[14] Under Defendant's own purported narrative, the notification informing Plaintiff of her position elimination was drafted on August 20, 2021. *See* D.E. 28, p. 14; D.E. 33-4 at 89:14-19. As a result, if the final decision was made a week prior to Plaintiff's notification as Holloway testified, it would have been made on approximately August 13, 2021, just one day after Plaintiff's request for qualifying FMLA leave. Reno's testimony also contradicts Defendant's claim. Reno asserted that the decision to eliminate Plaintiff's position was made on August 20, 2021, and that she was even surprised to learn of the news. D.E. 33-4 at 89:14-19, 91:5-16.[15]

---

[14] When asked when he first made determinations as to what positions could be eliminated, Holloway stated:

> "Probably in July, I would say. June or July. It wasn't a certain date where you made the final determination as to those -- all of those that could be eliminated. Some of them were relatively obvious and some of those required more observation, more research, more discussion. **So I think the final -- the final determination for moving forward with more than just one or two was probably in July or early August.** It was probably a week or two before that notifications were made, whenever that was." D.E. 33-2 at 11:25-12:8.

[15] Defendant's timeline of events is even contradicted by its own EEOC Position Statement, which stated that Sheriff Marceno initially instructed Holloway to conduct his RIF analysis in July and August of 2021. *See* D.E. 33-15 at p. 3.

In support of its argument, Defendant relies on *Drago*, where the Eleventh Circuit determined that a plaintiff had failed to establish causation where "the record evidence [was] overwhelming that [the defendant] contemplated demoting him before he ever [engaged in statutorily protected activity.]" Defendant cites *Drago* to argue that, because Holloway submitted his RIF proposals for job eliminations prior to Plaintiff's notice for leave, Plaintiff cannot establish the element of causation. Defendant fails to recognize that *Drago* is inapposite to the present case. *See Drago v. Jenne*, 453 F.3d 1301, 1308 (11th Cir. 2006). Here, Defendant has failed to present any documentary evidence showing that Defendant contemplated eliminating Plaintiff's position prior to her request for leave, and instead, relies solely on conflicting testimony [16] *See Hurlbert v. St. Mary's Health Care Sys., Inc.*, 439 F.3d 1286, 1297 (11th Cir. 2006) (rejecting employer's argument that its decision to terminate to the plaintiff had been set in motion before the plaintiff's FMLA leave request).

Plaintiff's position elimination occurred during Plaintiff's leave, not months before her request. At a minimum, a genuine dispute of material fact exists regarding the timing of Plaintiff's job elimination. Accordingly, Defendant's Motion for Summary Judgment on Plaintiff's FMLA retaliation claim must be denied.

## CONCLUSION

For the reasons set forth above, Plaintiff respectfully requests that the Court deny the Defendant's Motion for Summary Judgment on Counts I, III, and IV.[17]

---

[16] *Compare* D.E. 33-2 at 11:25-12:8, *with* D.E. 33-15 at p. 3, *and* D.E. 33-4 at 89:14-19, 91:5-16.
[17] As stated previously herein, Plaintiff concedes dismissal of Count II of Plaintiff's Amended Complaint [D.E. 13], her claim for ADEA retaliation.

Dated:  Miami, Florida
        February 29, 2024,

**DEREK SMITH LAW GROUP, PLLC**
*Counsel for Plaintiff*

<u>/s/ Kyle T. MacDonald</u>
Kyle T. MacDonald, Esq.
Florida Bar No.: 1038749
Derek Smith Law Group, PLLC
520 Brickell Key Dr, Suite O-301
Miami, FL 33131
Tel: (305) 946-1884
<u>Kyle@dereksmithlaw.com</u>

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that a true and correct copy of the foregoing document is being served on February 29, 2024, on all counsel of record on the service list below via CM/ECF.

By: <u>*/s/ Kyle T. MacDonald*</u>
Kyle T. MacDonald, Esq.

## SERVICE LIST

**ALLEN, NORTON & BLUE, PA**

David J. Stefany
324 S. Hyde Park Ave
Suite 225
Tampa, FL 33606
813/251-1210
Fax: 813-253-2006
Email: dstefany@anblaw.com

*Counsel for Defendant*