```
 1              UNITED STATES DISTRICT COURT
                MIDDLE DISTRICT OF FLORIDA
 2

 3   JENNA CLARK,

 4        Plaintiff,                22-002723-CI

 5   vs.

 6   CARMINE MARCENO, in his
     official capacity as Sheriff of Lee
 7   County, Florida,

 8        Defendant.

 9   _____

10   DEPOSITION OF:    UNDERSHERIFF JOHN HOLLOWAY

11   DATE TAKEN:       October 10, 2023

12   TIME:             1:10 p.m. - 1:37 p.m.

13   PLACE:            Everyone appeared remotely
                       via Zoom
14
     REPORTED BY:      MELISSA FERNANDEZ
15                     Court Stenographer

16
     _____
17

18

19

20

21

22

23

24

25
```

Deposition of Undersheriff John Holloway                         Jenna Clark v. Carmine Marceno

```
 1    APPEARANCES:

 2         KYLE T. MACDONALD, ESQUIRE
           Derek Smith Law Group, PLLC
 3         Suite 1310
           701 Brickell Avenue
 4         Miami, Florida  33131
           (305) 946-1884
 5         kyle@dereksmithlaw.com
           (Appeared via Zoom)
 6
           APPEARED ON BEHALF OF THE PLAINTIFF
 7
           DAVID J. STEFANY, ESQUIRE
 8         Allen, Norton & Blue, PA
           Suite 225
 9         324 South Hyde Park Avenue
           Tampa, Florida  33606
10         (813) 251-1210
           dstefany@anblaw.com
11         (Appeared via Zoom)

12         APPEARED ON BEHALF OF THE DEFENDANT

13

14

15

16

17

18

19

20

21

22

23

24

25
```

1  TESTIMONY OF UNDERSHERIFF JOHN HOLLOWAY

2       Direct Examination by Mr. MacDonald          4

3  CERTIFICATE OF OATH                              17

4  CERTIFICATE OF REPORTER                          18

5  ERRATA SHEET                                     19

6  READ & SIGN COVER PAGE                           20

7                      - - - -

8                 S T I P U L A T I O N S

9  It is hereby agreed and so stipulated by and between

10 the parties hereto, through their respective counsel,

11 that the reading and signing of the transcript is

12 expressly reserved by the Deponent.

13                    - - - - -

14                 E X H I B I T S

15 Plaintiff's Exhibit 8
        Defendant's Bates label 565 and 566          12
16

17

18

19

20

21

22

23

24

25

1       The deposition of UNDERSHERIFF JOHN HOLLOWAY, was taken pursuant to

2   notice by counsel for the Plaintiff on the 10th day of October,

3   2023, commencing at 1:10 p.m.  Said deposition was reported by

4   Melissa Fernandez, Court Reporter, Notary Public, State of

5   Florida at Large.

6                       *   *   *   *   *

7                   UNDERSHERIFF JOHN HOLLOWAY,

8    having been duly sworn, was examined and testified upon his

9                       oath as follows:

10              THE WITNESS:  I do.

11                   DIRECT EXAMINATION

12   BY MR. MACDONALD:

13       Q    Good afternoon, Mr. Holloway.  Do you understand that

14   you've been placed under oath and you have an obligation to

15   testify truthfully today?

16       A    Yes, sir.

17       Q    And do you understand that even though we are

18   conducting this deposition via Zoom your testimony has the same

19   force and effect as if you were testifying before a judge and

20   jury?

21       A    Yes.

22       Q    Is there anything that would prevent you from

23   thinking clearly and testifying truthfully today?

24       A    No.

25       Q    Where do you currently work?

Deposition of Undersheriff John Holloway                                    Jenna Clark v. Carmine Marceno

1          A     At the Lee County Sheriff's Office in Fort Myers,

2     Florida.

3          Q     And what is your position with the Lee County

4     Sheriff's Office?

5          A     I'm the Undersheriff.

6          Q     And what do you do in your role as Undersheriff?

7          A     I'm responsible for day-to-day operations, budgeting,

8     planning, generally all aspects of the agency.  Everyone, I

9     think, but two people in the agency report directly to me or

10    report to me through the chain of command, and I report to the

11    Sheriff and impliment his goals and mission.

12         Q     And how long have you been Undersheriff for?

13         A     Approximately since '22, I think, 2022.  That seems

14    to be the number that sticks in my head.  Before then I was

15    Chief of Operations or Legal and operations and at some point I

16    transitioned into this role.  I think it was either in late '21

17    or early '22.

18         Q     And how long were you Chief of Legal and Operations

19    for?

20         A     I joined the agency in November of 2013 so

21    approximately seven to eight years.

22         Q     And I apologize.  I joined as the Chief of Legal

23    Services.  They added Operations at some point.  And then in

24    late '21 or '22 I moved over to the Undersheriff spot.  I

25    apologize.

Deposition of Undersheriff John Holloway                    Jenna Clark v. Carmine Marceno

1        Q     Do you supervise any employees as Undersheriff?

2        A     Yes, sir, I supervise directly or indirectly everyone

3   in the agency except for Major Laylor and Major Heuglin who

4   report directly to the Sheriff.   All the command staff reports

5   to me.

6        Q     Are you familiar with my client, Jenna Clark?

7        A     Yes, sir.

8        Q     When did you first meet Jenna Clark?

9        A     I believe it would have been in November of 2013 when

10  I came to the agency.   I'm sure that back then I requested

11  supplies and equipment from her and would have met her then.

12       Q     Do you recall what her position was when you met her?

13       A     I know she was in Purchasing.   What her title was, I

14  don't recall or don't believe I knew back then.

15       Q     Did Jenna Clark ever hold the title of Director of

16  Purchasing?

17       A     Yes, sir.

18       Q     And what did Ms. Clark do as the Director of

19  Purchasing for the Lee County Sheriff's Office?

20       A     She oversaw the Purchasing Department and the

21  employees that worked in the Purchasing Department.

22       Q     Who did Ms. Clark report to as Director of

23  Purchasing?

24       A     My memory is she reported to Annmarie Reno.   There

25  may have been times when she reported to someone else, but

1    that's my last memory was for some time she reported to

2    Annmarie.

3         Q    And what is Annmarie Reno's title at the Lee County

4    Sheriff's Office?

5         A    I don't recall.  I don't recall what her official

6    title was.  She had been part of the DROP program and when the

7    governor changed the DROP program she stayed and I don't

8    recall.  She now reports to Matt Sands who is the Director --

9    I'm sorry, he's the Chief of Support Services for the entire

10   agency.  So I never had any need to find out what she does or

11   what her title is.  I apologize.

12        Q    And you said the DROP program, D-R-O-P?

13        A    Yes, the Deferred Retirement Option Program, or

14   something like that, where if you enter into DROP your pension

15   payments are made into an escrow account on your behalf.  But

16   it used to be you had to retire within five years of entering

17   DROP and recently the governor changed that to give everyone

18   eight years.  So those people who were scheduled to retire

19   because DROP required they retire are now able to continue

20   their employment for an additional three years.

21        Q    Were you familiar with Jenna Clark's job performance

22   while she was at the Lee County Sheriff's Office?

23        A    To a degree.

24        Q    How would you describe Jenna Clark's job performance

25   at the Lee County Sheriff's Office?

Deposition of Undersheriff John Holloway                    Jenna Clark v. Carmine Marceno

1      A     Generally -- generally acceptable with problematical

2   moments.

3      Q     What moments would those be?

4      A     Things like personality clashes.  People would

5   complain about having unpleasant discussions with her.  People

6   indicated she was not cooperative.  She would occassionally be

7   verbally challenging.  I never thought that raised to the level

8   of anything -- those personality clashes aren't something I get

9   too invested in.  I think generally that's -- she was doing the

10  job.

11     Q     Who reported having personality clashes with Jenna

12  Clark?

13     A     I believe -- I believe Annmarie told me on some

14  occasions of complaints she was fielding.  Nobody came to me to

15  discuss their problems with Jenna.  Mainly, I guess, I just

16  don't have those kind of conversations with people.  But,

17  again, I never saw it as something that was earth-shattering.

18     Q     What did Annmarie Reno share with you regarding the

19  personality clashes with Ms. Clark?

20     A     Just that people had expressed concern that in their

21  conversations with Jenna she was short, she was abrasive.  She

22  would be difficult, challenging.  How serious or minor those

23  are, I never really got into, because 1,600, 1,700 people are

24  occasionally going to encounter each other in circumstances

25  that aren't always incredibly pleasant, and so I don't believe

1    I ever pursued any of those discussions.

2         Q    Did Annmarie Reno tell you who specifically

3    Ms. Clark had personality clashes with?

4         A    I'm sure she did, but I wouldn't recall.

5         Q    Did Annmaarie ever have personality clashes with

6    Ms. Clark?

7         A    I don't think so.  Annmarie is an incredibly patient

8    person.  Any issue she had with Jenna were more performance

9    related.

10        Q    What issues did Annmarie Reno have with Jenna Clark's

11   job performance?

12        A    On the few occasions I would be -- she would tell me

13   that she's having to go down and assure that Jenna was doing

14   what Annmarie had asked Jenna to do because it hadn't gotten

15   done, that there were things that Jenna had promised to do but

16   hadn't done them, and there were things that should have been

17   ordered and obtained that hadn't been ordered and obtained.

18   The usual -- I don't want to say usual.  I don't know how to

19   say this.  That's what management is, dealing with issues,

20   concerns, and problems.

21        Q    Did any of these performance issues result in Jenna

22   Clark being disciplined as far as you're aware?

23        A    Not as far as I'm aware.  I don't know.

24        Q    Did Annmarie Reno ever discuss disciplining

25   Ms. Clark with you?

1        A    I believe on at least one occasion or two occasions

2    she would ask for my input and I told Annmarie, just do what

3    you think is appropriate, I have great faith in you.  If you

4    feel you need to do something in writing, do it; if you think

5    you can handle it verbally, handle it verbally.  I'm just an

6    end-result person.  I would not tell Annmarie how to manage.

7        Q    Do you recall what specifically those instances were

8    about, where Annmarie Reno discussed possible discipline?

9        A    The only one that comes to mind without great

10   specificity, there were -- I think there were a bunch of --

11   something in Purchasing that we had tried to get rid of.  I

12   think there might have been shoes.  At one point in time our

13   agency was issuing, I want to say 1,400 pair of boots, and it

14   seem to me to be somewhat nonsensical.  So what we did was

15   instead of stocking inventory, auditing, invoicing, and paying

16   for 1,400 pairs of boots, we raised -- everybody who got free

17   boots we just a raised their salary a hundred dollars.  And

18   then I think there was some delay in getting rid of the boots

19   that were cramming the shelves in Purchasing.  I think that's

20   what it was.  And my comment to Annmarie was, just take

21   whatever action you think is appropriate.

22       Q    Do you recall when Jenna Clark left the Lee County

23   Sheriff's Office?

24       A    Not specifically.

25       Q    Did you ever discuss Jenna Clark's departure from the

1    Lee County Sheriff's Office with Annmarie Reno?

2        A    I'm sure I did because she reported to Annmarie and

3    Annmarie would have had input with me on whether my decision

4    was reasonable or not and making sure that the management that

5    remained was capable of absorbing whatever tasks that Jenna

6    previously performed.  So I'm sure I discussed it with her.

7        Q    Do you recall what Annmarie Reno said when you spoke

8    with her regarding Jenna Clark's departure from the Lee County

9    Sheriff's Office?

10       A    My recollection was that she supported that decision

11   and that it would not create hardship in the department.

12       Q    Did your conversation with Annmarie Reno regarding

13   Jenna Clark influence your decision to eliminate her position?

14           MR. STEFANY:  Which discussion, Counsel?

15           MR. MACDONALD:  Sorry, what was that?

16           MR. STEFANY:  Which discussion?

17           MR. MACDONALD:  Let me rephrase.

18   BY MR. MACDONALD:

19       Q    Did your discussion with Annmarie Reno regarding

20   Jenna Clark's departure impact your decision to eliminate

21   Jenna's Clark position at the Lee County Sheriff's Office?

22       A    To some extent I'm sure it did.  If Annmarie had

23   voiced great hesitation, restraint, or concern, I would

24   remember that.

25       Q    Did Jenna Clark's job performance have anything to do

```
 1   with her position being eliminated with the Lee County

 2   Sheriff's Office?

 3           MR. STEFANY:  Objection as to form.  Asked and

 4        answered.  You may answer it.

 5        A    Not in my decision-making process, because, again, I

 6   was looking at position, not people.  I hate to say it that

 7   way.  It makes me sound like I'm a mechanical robut, but that's

 8   my job, to look at positions, not the people in them.

 9   BY MR. MACDONALD:

10        Q    I'm going to show you a document.

11           MR. MACDONALD:  We'll mark this as Plaintiff's

12        Exhibit 8 and it's Defendant's Bates label 565 and 566.

13           (Whereupon, Plaintiff's Exhibit 8 was marked for

14        identification.)

15   BY MR. MACDONALD:

16        Q    I'll give you a moment to review.

17        A    I've read that, sir.  I've read that, sir.

18        Q    Do you recognize this document?

19        A    Yes, sir.  That's an e-mail to me from Annmarie Reno

20   about Purchasing director, Jenna Clark.

21        Q    Do you recall why Annmarie Reno sent this e-mail to

22   you?

23        A    No.

24        Q    Do you recall the circumstances of this e-mail from

25   Annmarie Reno at all?
```

1      A    No.  It's consistent with the concerns that

2  occasionally Annmarie would mention to me or voice about

3  Annmarie -- I'm sorry, about Jenna.  She apparently elected to

4  put them into writing and send them to me.

5      Q    Do you see on the second page where it says that

6  Director Clark clearly defied my directive to have all the old

7  items removed from LCSO inventory as instructed and showed

8  total insubordination towards me as her direct supervisor?

9      A    Yes, sir.

10     Q    Is this the first time that Annmarie Reno documented

11 an issue with Ms. Clark to you?

12     A    I don't recall.

13     Q    Has Annmarie Reno ever sent you a message like this

14 regarding another employee?

15          MR. STEFANY:  Objection as to form.  You may answer.

16     A    Possibly.  Because of her area of responsibility she

17 may have.

18 BY MR. MACDONALD:

19     Q    Do you specifically recall Annmarie Reno ever sending

20 you a message like this about another employee?

21          MR. STEFANY:  Same objection.  You may answer.

22     A    As we sit here today, I go through hundreds and

23 thousands of e-mails, whether or not she sent me one or not I

24 couldn't say.  I don't recall if she did or did not.

25 BY MR. MACDONALD:

1      Q     And do you see the date that this e-mail message was

2   sent to you?

3      A     Yes, sir.

4      Q     And what is that date?

5      A     August 19th, 2021.

6      Q     Do you recall when Jenna Clark was notified that her

7   position was being eliminated from the Lee County Sheriff's

8   Office?

9      A     I do not, sir.

10     Q     Are you aware that the letter sent to Jenna Clark

11  notifying her of her position being eliminated was dated August

12  15th, 2021?

13     A     Now that you've refreshed my recollection I believe

14  that's the date on that letter you showed me, sir.

15     Q     Do you know why Annmarie Reno sent you this e-mail

16  four days after the letter was dated notifying Ms. Clark of her

17  termination?

18     A     No, sir.

19     Q     Do you know why Annmarie Reno sent this e-mail four

20  days after August 15th, 2021?

21     A     No, sir.  As we sit here today I don't know.  I may

22  have known at the time, but I don't recall now if I knew then.

23     Q     Did you ever discuss Jenna Clark's position being

24  eliminated with Annmarie Reno prior to August 19th, 2021?

25     A     I'm sure I did.

1      Q     Do you believe that Ms. Clark's position being

2    eliminated had anything to do with this e-mail being sent by

3    Annmarie Reno?

4      A     I don't know.

5      Q     Did you ever discuss this e-mail with Annmarie Reno

6    after it was sent?

7      A     I probably did.  I don't recall.  I get -- that

8    e-mail looks to me to be maybe I was giving Annmarie some

9    trouble at the time about making sure that Purchasing was

10   operating effectively and efficiently and maybe that was her

11   explaining to me why some of the things I had noted needed to

12   be done were done.

13     Q     And none of these issues raised by Annmarie Reno had

14   any impact on your decision to eliminate Jenna Clark's

15   position, correct?

16     A     That's correct.

17     Q     Would you agree with Annmarie Reno's characterization

18   of Jenna Clark as insubordinant at any point during her

19   employment with the Lee County Sheriff's Office?

20         MR. STEFANY:  Objection as to form.  You may answer.

21     A     I think not having been there Annmarie would be in

22   the best position to identify whether that conduct was

23   insubordinant or not.  I usually require my managers to take

24   action and I'm not going to manage for them.  If they think

25   there's a problem, they need to fix it.

1    BY MR. MACDONALD:

2        Q    But in your personal opinion did you ever believe

3    that Jenna Clark was insubordinant during her employment at the

4    Lee County Sheriff's Office.

5            MR. STEFANY:  Objection as to form.  You may answer.

6        A    I don't have enough personal knowledge to make that

7    determination.

8            MR. MACDONALD:  All right.  That is all the questions

9        I have for you today, Mr. Holloway.  Thank you very much

10       for your time.  Mr. Stefany may have some questions for

11       you.

12           MR. STEFANY:  I have no questions of this witness.

13       Undersheriff, you have the right to read a transcript of

14       this desposition if one is made or you can waive reading.

15       It's up to you.  The court reporter needs to know what you

16       prefer.

17           THE WITNESS:  If a transcript is made I'd like to

18       read.  If one isn't made, I'm not asking for one.

19           MR. STEFANY:  Fair enough.

20           (At 1:37 p.m., no further questions were propounded

21       to this witness.)

22

23

24

25

Deposition of Undersheriff John Holloway                    Jenna Clark v. Carmine Marceno

```
 1                    CERTIFICATE OF OATH

 2    STATE OF FLORIDA

 3    COUNTY OF HILLSBOROUGH

 4         I, the undersigned authority, certify that UNDERSHERIFF

 5    JOHN HOLLOWAY remotely appeared before me and was duly sworn.

 6         WITNESS my hand and official seal this 10th day of

 7    October, 2023.

 8

 9

10         _____

11         MELISSA FERNANDEZ
           Notary Public - State of Florida
           Commission No.:  HH 278990
12         My Commission Expires:  6/21/2026

13

14

15

16

17

18

19

20

21

22

23

24

25
```

Deposition of Undersheriff John Holloway                    Jenna Clark v. Carmine Marceno

1                    REPORTER'S DEPOSITION CERTIFICATE

2     STATE OF FLORIDA

3     COUNTY OF HILLSBOROUGH

4          I, MELISSA FERNANDEZ, Court Reporter, certify

5     that I was authorized to and did stenographically report

6     the foregoing deposition, and that the transcript is

7     a true record of the stenographic notes.

8          I further certify that I am not a relative,

9     employee, attorney, or counsel of any of the parties,

10    nor am I a relative or employee of any of the parties'

11    attorney or counsel connected with the action, nor am

12    I financially interested in the action.

13         Dated this 26th day of December, 2023.

14

15

16    _____

17    MELISSA FERNANDEZ
      Court Stenographer

18

19

20

21

22

23

24

25

```
 1              DO NOT WRITE ON TRANSCRIPT - ENTER CHANGES

 2    IN THE CASE OF:  JENNA CLARK v. CARMINE MARCENO, in his
                       official capacity as Sheriff of Lee County,
 3                     Florida

 4    DEPOSITION OF:  UNDERSHERIFF JOHN HOLLOWAY  DATE:  10/10/2023

 5    PLEASE READ THE TRANSCRIPT OF YOUR DEPOSITION.  If YOU FEEL YOU
      NEED TO MAKE CORRECTIONS, PLEASE NOTE ON THIS PAGE.  DO NOT
 6    MARK ON THE TRANSCRIPT ITSELF.  SIGN AND DATE THE COVER PAGE
      AND RETURN BOTH ERRATA SHEET AND COVER PAGE AS DIRECTED.

 7
      PAGE    LINE          ERROR OR AMENDMENT
 8
      _____
 9
      _____
10
      _____
11
      _____
12
      _____
13
      _____
14
      _____
15
      _____
16
      _____
17
      _____
18
      _____
19
      _____
20                         (Melissa Fernandez)

21    PLEASE DISTRIBUTE TO:  Kyle T. MacDonald, Esquire
                             kyle@dereksmithlaw.com
22

23

24

25
```

Deposition of Undersheriff John Holloway                          Jenna Clark v. Carmine Marceno

1                         READ AND SIGN
                           COVER PAGE
2
         I have read the foregoing pages, and,
3    except for the corrections or amendments
     I have indicated on the sheet attached
4    for such purposes, I hereby subscribe to
     the accuracy of this transcript.
5

6        _____
         SIGNATURE OF DEPONENT
7

8        _____
         DATE              1/10/24
9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

Deposition of Undersheriff John Holloway                    Jenna Clark v. Carmine Marceno

```
 1           DO NOT WRITE ON TRANSCRIPT - ENTER CHANGES

 2  IN THE CASE OF:   JENNA CLARK v. CARMINE MARCENO, in his
                      official capacity as Sheriff of Lee County,
 3                    Florida

 4  DEPOSITION OF:  UNDERSHERIFF JOHN HOLLOWAY   DATE:  10/10/2023

 5  PLEASE READ THE TRANSCRIPT OF YOUR DEPOSITION.  If YOU FEEL YOU
    NEED TO MAKE CORRECTIONS, PLEASE NOTE ON THIS PAGE.  DO NOT
 6  MARK ON THE TRANSCRIPT ITSELF.  SIGN AND DATE THE COVER PAGE
    AND RETURN BOTH ERRATA SHEET AND COVER PAGE AS DIRECTED.

 7
    PAGE    LINE           ERROR OR AMENDMENT
 8  _____

 9  _____

10  _____

11  _____

12  _____

13  _____

14  _____

15  _____

16  _____

17  _____

18  _____

19  _____

20                  (Melissa Fernandez)

21  PLEASE DISTRIBUTE TO:  Kyle T. MacDonald, Esquire
                           kyle@dereksmithlaw.com
22

23

24

25
```

1    December 26, 2023

2    JOHN HOLLOWAY
     Allen, Norton & Blue
3    dstefany@anblaw.com
     Suite 225
4    324 South Hyde Park Avenue
     Tampa, Florida  33606

5

6    RE:  JENNA CLARK v. CARMINE MARCENO, in his official capacity
          as Sheriff of Lee County, Florida

7    Dear Mr. Stefany:

8    The deposition of UNDERSHERIFF JOHN HOLLOWAY taken on the 10th day of
     October, 2023, in the above-styled case has been transcribed.
9    Please follow the Options below coinciding with your transcript
     copy choice:

10
     OPTION 1:  If you have ordered a transcript copy, please use
11   the original Errata Sheet attached to your transcript copy for
     your client to note any changes/corrections.  When reading is
12   complete, please promptly (within 30 days) send a copy of the
     signed errata sheet to opposing counsel, Mr. MacDonald.

13
     OPTION 2:  If you have NOT ordered a transcript copy, please
14   notify your client that a copy of said transcript, along with
     the original Errata Sheet, will be made available at one of our
15   office locations for him/her to Read & Sign and note any
     corrections/changes.

16
     Please note:  Your client MUST CALL TO MAKE AN APPOINTMENT,
17   (215) 341-3616.  Please instruct your client to call our office
     during normal business hours to make an appointment within
18   thirty (30) business days.

19   Thank you,

20

21   _____
     Melissa Fernandez, Court Reporter
22
     cc:  Kyle T. MacDonald, Esquire
23

24

25

Deposition of Undersheriff John Holloway                                      Jenna Clark v. Carmine Marceno

### WORD INDEX

**< 1 >**
**1**  21:*9*
**1,400**  10:*13*, *16*
**1,600**  8:*23*
**1,700**  8:*23*
**1:10**  1:*12*  4:*3*
**1:37**  1:*12*  16:*20*
**10**  1:*11*
**10/10/2023**  19:*4*
**10th**  4:*2*  17:*6*  21:*8*
**12**  3:*15*
**1310**  2:*3*
**15th**  14:*12*, *20*
**17**  3:*3*
**18**  3:*4*
**19**  3:*5*
**19th**  14:*5*, *24*

**< 2 >**
**2**  21:*12*
**20**  3:*6*
**2013**  5:*20*  6:*9*
**2021**  14:*5*, *12*, *20*, *24*
**2022**  5:*13*
**2023**  1:*11*  4:*3*  17:*7*
  18:*13*  21:*1*, *8*
**21**  5:*16*, *24*
**215**  21:*17*
**22**  5:*13*, *17*, *24*
**22-002723-CI**  1:*4*
**225**  2:*8*  21:*3*
**251-1210**  2:*10*
**26**  21:*1*
**26th**  18:*13*
**278990**  17:*11*

**< 3 >**
**30**  21:*12*, *18*
**305**  2:*4*
**324**  2:*9*  21:*4*
**33131**  2:*4*
**33606**  2:*9*  21:*4*
**341-3616**  21:*17*

**< 4 >**
**4**  3:*2*

**< 5 >**
**565**  3:*15*  12:*12*
**566**  3:*15*  12:*12*

**< 6 >**
**6/21/2026**  17:*12*

**< 7 >**
**701**  2:*3*

**< 8 >**
**8**  3:*15*  12:*12*, *13*
**813**  2:*10*

**< 9 >**
**946-1884**  2:*4*

**< A >**
**able**  7:*19*
**above-styled**  21:*8*
**abrasive**  8:*21*
**absorbing**  11:*5*
**acceptable**  8:*1*
**account**  7:*15*
**accuracy**  20:*4*
**action**  10:*21*  15:*24*
  18:*11*, *12*
**added**  5:*23*
**additional**  7:*20*
**afternoon**  4:*13*
**agency**  5:*8*, *9*, *20*  6:*3*,
  *10*  7:*10*  10:*13*
**agree**  15:*17*
**agreed**  3:*9*
**Allen**  2:*8*  21:*2*
**AMENDMENT**  19:*6*
**amendments**  20:*3*
**Annmaarie**  9:*5*
**Annmarie**  6:*24*  7:*2*,
  *3*  8:*13*, *18*  9:*2*, *7*, *10*,
  *14*, *24*  10:*2*, *6*, *8*, *20*
  11:*1*, *2*, *3*, *7*, *12*, *19*, *22*
  12:*19*, *21*, *25*  13:*2*, *3*,
  *10*, *13*, *19*  14:*15*, *19*,
  *24*  15:*3*, *5*, *8*, *13*, *17*,
  *21*
**answer**  12:*4*  13:*15*,
  *21*  15:*20*  16:*5*
**answered**  12:*4*

**apologize**  5:*22*, *25*
  7:*11*
**apparently**  13:*3*
**APPEARANCES**  2:*1*
**appeared**  1:*13*  2:*5*,
  *11*, *12*  17:*5*
**APPOINTMENT**
  21:*15*, *17*
**appropriate**  10:*3*, *21*
**Approximately**  5:*13*,
  *21*
**area**  13:*16*
**asked**  9:*14*  12:*3*
**asking**  16:*18*
**aspects**  5:*8*
**assure**  9:*13*
**attached**  20:*3*  21:*11*
**attorney**  18:*9*, *11*
**auditing**  10:*15*
**August**  14:*5*, *11*, *20*,
  *24*
**authority**  17:*4*
**authorized**  18:*5*
**available**  21:*14*
**Avenue**  2:*3*, *9*  21:*4*
**aware**  9:*22*, *23*  14:*10*

**< B >**
**back**  6:*10*, *14*
**Bates**  3:*15*  12:*12*
**BEHALF**  2:*5*, *12*
  7:*15*
**believe**  6:*9*, *14*  8:*13*,
  *25*  10:*1*  14:*13*  15:*1*
  16:*2*
**best**  15:*22*
**Blue**  2:*8*  21:*2*
**boots**  10:*13*, *16*, *17*, *18*
**Brickell**  2:*3*
**budgeting**  5:*7*
**bunch**  10:*10*
**business**  21:*17*, *18*

**< C >**
**CALL**  21:*15*, *17*
**capable**  11:*5*
**capacity**  1:*6*  19:*2*
  21:*4*
**CARMINE**  1:*6*  19:*2*

  21:*4*
**CASE**  19:*2*  21:*8*
**cc**  21:*21*
**CERTIFICATE**  3:*3*,
  *4*  17:*1*  18:*1*
**certify**  17:*4*  18:*4*, *8*
**chain**  5:*10*
**challenging**  8:*7*, *22*
**changed**  7:*7*, *17*
**CHANGES**  19:*1*
**changes/corrections**
  21:*11*
**characterization**
  15:*17*
**Chief**  5:*15*, *18*, *22*  7:*9*
**choice**  21:*9*
**circumstances**  8:*24*
  12:*24*
**CLARK**  1:*3*  6:*6*, *8*,
  *15*, *18*, *22*  8:*12*, *19*
  9:*3*, *6*, *22*, *25*  10:*22*
  11:*13*, *21*  12:*20*  13:*6*,
  *11*  14:*6*, *10*, *16*  15:*18*
  16:*3*  19:*2*  21:*4*
**Clark's**  7:*21*, *24*
  9:*10*  10:*25*  11:*8*, *20*,
  *25*  14:*23*  15:*1*, *14*
**clashes**  8:*4*, *8*, *11*, *19*
  9:*3*, *5*
**clearly**  4:*23*  13:*6*
**client**  6:*6*  21:*11*, *14*,
  *15*, *17*
**coinciding**  21:*9*
**comes**  10:*9*
**command**  5:*10*  6:*4*
**commencing**  4:*3*
**comment**  10:*20*
**Commission**  17:*11*, *12*
**complain**  8:*5*
**complaints**  8:*14*
**complete**  21:*12*
**concern**  8:*20*  11:*23*
**concerns**  9:*20*  13:*1*
**conduct**  15:*22*
**conducting**  4:*18*
**connected**  18:*11*
**consistent**  13:*1*
**continue**  7:*19*
**conversation**  11:*12*

Deposition of Undersheriff John Holloway                                    Jenna Clark v. Carmine Marceno

conversations  8:*16*, *21*
cooperative  8:6
copy  21:*9*, *11*, *12*, *14*
correct  15:*15*, *16*
CORRECTIONS
19:5  20:*3*
corrections/changes
21:*15*
counsel  3:*10*  4:2
11:*14*  18:*9*, *11*  21:*12*
County  1:7  5:*1*, *3*
6:*19*  7:*3*, *22*, *25*
10:*22*  11:*1*, *8*, *21*
12:*1*  14:7  15:*19*
16:*4*  17:*3*  18:*3*  19:*2*
21:6
COURT  1:*1*, *15*  4:4
16:*15*  18:*4*, *17*  21:*21*
COVER  3:6  19:6
20:*1*
cramming  10:*19*
create  11:*11*
currently  4:*25*

< D >
DATE  1:*11*  14:*1*, *4*,
*14*  19:*4*, *6*  20:8
dated  14:*11*, *16*
18:*13*
DAVID  2:5
day  4:2  17:6  18:*13*
21:8
days  14:*16*, *20*  21:*12*,
*18*
day-to-day  5:7
dealing  9:*19*
Dear  21:7
December  18:*13*  21:*1*
decision  11:*3*, *10*, *13*,
*20*  15:*14*
decision-making  12:5
Defendant  1:8  2:*12*
Defendant's  3:*15*
12:*12*
Deferred  7:*13*
defied  13:6
degree  7:*23*
delay  10:*18*
Department  6:*20*, *21*
11:*11*

departure  10:*25*
11:8, *20*
Deponent  3:*12*  20:6
DEPOSITION  1:*10*
4:*1*, *3*, *18*  18:*1*, *6*
19:*4*, *5*  21:8
Derek  2:2
describe  7:*24*
desposition  16:*14*
determination  16:7
difficult  8:*22*
Direct  3:2  4:*11*  13:8
DIRECTED  19:6
directive  13:6
directly  5:9  6:2, *4*
Director  6:*15*, *18*, *22*
7:8  12:*20*  13:6
discipline  10:8
disciplined  9:*22*
disciplining  9:*24*
discuss  8:*15*  9:*24*
10:*25*  14:*23*  15:5
discussed  10:8  11:6
discussion  11:*14*, *16*,
*19*
discussions  8:5  9:*1*
DISTRIBUTE  19:*21*
DISTRICT  1:*1*
document  12:*10*, *18*
documented  13:*10*
doing  8:9  9:*13*
dollars  10:*17*
DROP  7:6, *7*, *12*, *14*,
*17*, *19*
D-R-O-P  7:*12*

dstefany@anblaw.com
2:*10*  21:*3*
duly  4:8  17:5

< E >
early  5:*17*
earth-shattering  8:*17*
effect  4:*19*
effectively  15:*10*
efficiently  15:*10*
eight  5:*21*  7:*18*
either  5:*16*
elected  13:*3*

eliminate  11:*13*, *20*
15:*14*
eliminated  12:*1*  14:7,
*11*, *24*  15:2
e-mail  12:*19*, *21*, *24*
14:*1*, *15*, *19*  15:2, *5*, *8*
e-mails  13:*23*
employee  13:*14*, *20*
18:*9*, *10*
employees  6:*1*, *21*
employment  7:*20*
15:*19*  16:3
encounter  8:*24*
end-result  10:6
enter  7:*14*  19:*1*
entering  7:*16*
entire  7:9
equipment  6:*11*
ERRATA  3:5  19:6
21:*11*, *12*, *14*
ERROR  19:6
escrow  7:*15*
ESQUIRE  2:2, *5*
19:*21*  21:*21*
everybody  10:*16*
Examination  3:2
4:*11*
examined  4:8
Exhibit  3:*15*  12:*12*,
*13*
Expires  17:*12*
explaining  15:*11*
expressed  8:*20*
expressly  3:*12*
extent  11:*22*

< F >
Fair  16:*19*
faith  10:*3*
familiar  6:6  7:*21*
far  9:*22*, *23*
feel  10:4  19:5
FERNANDEZ  1:*13*
4:4  17:*10*  18:*4*, *16*
19:*20*  21:*21*
fielding  8:*14*
financially  18:*12*
find  7:*10*
first  6:8  13:*10*

five  7:*16*
fix  15:*25*
FLORIDA  1:*1*, *7*
2:*4*, *9*  4:*5*  5:2  17:*2*,
*11*  18:*2*  19:*3*  21:*4*, *6*
follow  21:9
follows  4:*9*
force  4:*19*
foregoing  18:6  20:*1*
form  12:*3*  13:*15*
15:*20*  16:*5*
Fort  5:*1*
four  14:*16*, *19*
free  10:*16*
further  16:*20*  18:8

< G >
generally  5:8  8:*1*, *9*
getting  10:8
give  7:*17*  12:*16*
giving  15:8
go  9:*13*  13:22
goals  5:*11*
going  8:*24*  12:*10*
15:*24*
Good  4:*13*
gotten  9:*14*
governor  7:7, *17*
great  10:*3*, *9*  11:*23*
Group  2:2
guess  8:*15*

< H >
hand  17:6
handle  10:5
hardship  11:*11*
hate  12:6
head  5:*14*
hereto  3:*10*
hesitation  11:*23*
Heuglin  6:*3*
HH  17:*11*
HILLSBOROUGH
17:*3*  18:*3*
him/her  21:*15*
hold  6:*15*
HOLLOWAY  1:*10*
3:*1*  4:*1*, *7*, *13*  16:9
17:5  19:*4*  21:2, *8*

**hours** 21:*17*
**hundred** 10:*17*
**hundreds** 13:22
**Hyde** 2:9 21:*4*

**< I >**
**identification** 12:*14*
**identify** 15:22
**impact** 11:*20* 15:*14*
**impliment** 5:*11*
**incredibly** 8:25 9:7
**indicated** 8:6 20:*3*
**indirectly** 6:2
**influence** 11:*13*
**input** 10:2 11:*3*
**instances** 10:7
**instruct** 21:*17*
**instructed** 13:7
**insubordinant** 15:*18*, *23* 16:*3*
**insubordination** 13:8
**interested** 18:*12*
**inventory** 10:*15* 13:7
**invested** 8:9
**invoicing** 10:*15*
**issue** 9:8 13:*11*
**issues** 9:*10*, *19*, *21* 15:*13*
**issuing** 10:*13*
**items** 13:7

**< J >**
**JENNA** 1:*3* 6:6, *8*, *15* 7:*21*, *24* 8:*11*, *15*, *21* 9:*8*, *10*, *13*, *14*, *15*, *21* 10:22, *25* 11:*5*, *8*, *13*, *20*, *25* 12:*20* 13:*3* 14:6, *10*, *23* 15:*14*, *18* 16:*3* 19:2 21:*4*
**Jenna's** 11:*21*
**job** 7:*21*, *24* 8:*10* 9:*11* 11:25 12:8
**JOHN** 1:*10* 3:*1* 4:*1*, *7* 17:5 19:*4* 21:2, *8*
**joined** 5:*20*, *22*
**judge** 4:*19*
**jury** 4:*20*

**< K >**

**kind** 8:*16*
**knew** 6:*14* 14:22
**know** 6:*13* 9:*18*, *23* 14:*15*, *19*, *21* 15:*4* 16:*15*
**knowledge** 16:6
**known** 14:22
**KYLE** 2:2 19:*21* 21:*21*
**kyle@dereksmithlaw.c om** 2:*5* 19:*21*

**< L >**
**label** 3:*15* 12:12
**Large** 4:*5*
**late** 5:*16*, *24*
**Law** 2:2
**Laylor** 6:*3*
**LCSO** 13:7
**Lee** 1:*6* 5:*1*, *3* 6:*19* 7:*3*, *22*, *25* 10:22 11:*1*, *8*, *21* 12:*1* 14:7 15:*19* 16:4 19:2 21:6
**left** 10:22
**Legal** 5:*15*, *18*, *22*
**letter** 14:*10*, *14*, *16*
**level** 8:7
**LINE** 19:6
**locations** 21:*15*
**long** 5:*12*, *18*
**look** 12:8
**looking** 12:6
**looks** 15:8

**< M >**
**MACDONALD** 2:2 3:2 4:*12* 11:*15*, *17*, *18* 12:9, *11*, *15* 13:*18*, *25* 16:*1*, *8* 19:*21* 21:*12*, *21*
**Major** 6:*3*
**making** 11:4 15:9
**manage** 10:6 15:*24*
**management** 9:*19* 11:*4*
**managers** 15:*23*
**MARCENO** 1:6 19:2 21:*4*

**mark** 12:*11* 19:6
**marked** 12:*13*
**Matt** 7:8
**mechanical** 12:7
**meet** 6:8
**MELISSA** 1:*13* 4:4 17:*10* 18:4, *16* 19:*20* 21:*21*
**memory** 6:*24* 7:1
**mention** 13:2
**message** 13:*13*, *20* 14:*1*
**met** 6:*11*, *12*
**Miami** 2:4
**MIDDLE** 1:*1*
**mind** 10:9
**minor** 8:22
**mission** 5:*11*
**moment** 12:*16*
**moments** 8:2, *3*
**moved** 5:*24*
**Myers** 5:*1*

**< N >**
**need** 7:*10* 10:4 15:25 19:5
**needed** 15:*11*
**needs** 16:*15*
**never** 7:*10* 8:7, *17*, *23*
**nonsensical** 10:*14*
**normal** 21:*17*
**Norton** 2:8 21:2
**Notary** 4:4 17:*11*
**NOTE** 19:5 21:*11*, *15*
**noted** 15:*11*
**notes** 18:7
**notice** 4:2
**notified** 14:6
**notify** 21:*14*
**notifying** 14:*11*, *16*
**November** 5:20 6:9
**number** 5:*14*

**< O >**
**OATH** 3:*3* 4:9, *14* 17:*1*
**Objection** 12:*3* 13:*15*, *21* 15:20 16:5

**obligation** 4:*14*
**obtained** 9:*17*
**occasion** 10:*1*
**occasionally** 8:*24* 13:2
**occasions** 8:*14* 9:*12* 10:*1*
**occassionally** 8:6
**October** 1:*11* 4:2 17:7 21:8
**Office** 5:*1*, *4* 6:*19* 7:*4*, *22*, *25* 10:*23* 11:*1*, *9*, *21* 12:2 14:8 15:*19* 16:4 21:*15*, *17*
**official** 1:*6* 7:5 17:6 19:2 21:*4*
**old** 13:6
**operating** 15:*10*
**operations** 5:7, *15*, *18*, *23*
**opinion** 16:2
**opposing** 21:*12*
**Option** 7:*13* 21:9, *12*
**Options** 21:9
**ordered** 9:*17* 21:9, *12*
**original** 21:*11*, *14*
**oversaw** 6:*20*

**< P >**
**p.m** 1:*12* 4:*3* 16:*20*
**PA** 2:8
**PAGE** 3:6 13:5 19:5, 6 20:*1*
**pages** 20:*1*
**pair** 10:*13*
**pairs** 10:*16*
**Park** 2:9 21:*4*
**part** 7:6
**parties** 3:*10* 18:9, *10*
**patient** 9:7
**paying** 10:*15*
**payments** 7:*15*
**pension** 7:*14*
**people** 5:9 7:*18* 8:4, *5*, *16*, *20*, *23* 12:6, *8*
**performance** 7:*21*, *24* 9:8, *11*, *21* 11:25
**performed** 11:6

Deposition of Undersheriff John Holloway

Jenna Clark v. Carmine Marceno

**person**  9:*8*  10:*6*
**personal**  16:*2, 6*
**personality**  8:*4, 8, 11, 19*  9:*3, 5*
**PLACE**  1:*13*
**placed**  4:*14*
**Plaintiff**  1:*4*  2:*5*  4:*2*
**Plaintiff's**  3:*15*
*12:11, 13*
**planning**  5:*8*
**pleasant**  8:*25*
**PLEASE**  19:*5, 21*
*21:9, 12, 15, 17*
**PLLC**  2:*2*
**point**  5:*15, 23*  10:*12*
*15:18*
**position**  5:*3*  6:*12*
*11:13, 21*  12:*1, 6*
*14:7, 11, 23*  15:*1, 15, 22*
**positions**  12:*8*
**possible**  10:*8*
**Possibly**  13:*16*
**prefer**  16:*16*
**prevent**  4:*22*
**previously**  11:*6*
**prior**  14:*24*
**probably**  15:*7*
**problem**  15:*25*
**problematical**  8:*1*
**problems**  8:*15*  9:*20*
**process**  12:*5*
**program**  7:*6, 7, 12, 13*
**promised**  9:*15*
**promptly**  21:*12*
**propounded**  16:*20*
**Public**  4:*4*  17:*11*
**Purchasing**  6:*13, 16, 19, 20, 21, 23*  10:*11, 19*  12:*20*  15:*9*
**purposes**  20:*4*
**pursuant**  4:*1*
**pursued**  9:*1*
**put**  13:*4*

**< Q >**
**questions**  16:*8, 10, 12, 20*

**< R >**

**raised**  8:*7*  10:*16, 17*
*15:13*
**READ**  3:*6*  12:*17*
*16:13, 18*  19:*5*  20:*1*
*21:15*
**reading**  3:*11*  16:*14*
*21:11*
**really**  8:*23*
**reasonable**  11:*4*
**recall**  6:*12, 14*  7:*5, 8*
*9:4*  10:*7, 22*  11:*7*
*12:21, 24*  13:*12, 19, 24*  14:*6, 22*  15:*7*
**recognize**  12:*18*
**recollection**  11:*10*
*14:13*
**record**  18:*7*
**refreshed**  14:*13*
**regarding**  8:*18*  11:*8, 12, 19*  13:*14*
**related**  9:*9*
**relative**  18:*8, 10*
**remained**  11:*5*
**remember**  11:*24*
**remotely**  1:*13*  17:*5*
**removed**  13:*7*
**Reno**  6:*24*  8:*18*  9:*2, 10, 24*  10:*8*  11:*1, 7, 12, 19*  12:*19, 21, 25*
*13:10, 13, 19*  14:*15, 19, 24*  15:*3, 5, 13*
**Reno's**  7:*3*  15:*17*
**rephrase**  11:*17*
**report**  5:*9, 10*  6:*4, 22*  18:*5*
**REPORTED**  1:*13*
*4:3*  6:*24, 25*  7:*1*
*8:11*  11:*2*
**REPORTER**  3:*4*  4:*4*
*16:15*  18:*4*  21:*21*
**REPORTER'S**  18:*1*
**reports**  6:*4*  7:*8*
**requested**  6:*10*
**require**  15:*23*
**required**  7:*19*
**reserved**  3:*12*
**respective**  3:*10*
**responsibility**  13:*16*
**responsible**  5:*7*

**restraint**  11:*23*
**result**  9:*21*
**retire**  7:*16, 18, 19*
**Retirement**  7:*13*
**RETURN**  19:*6*
**review**  12:*16*
**rid**  10:*11, 18*
**right**  16:*8, 13*
**robut**  12:*7*
**role**  5:*6, 16*

**< S >**
**salary**  10:*17*
**Sands**  7:*8*
**saw**  8:*17*
**says**  13:*5*
**scheduled**  7:*18*
**seal**  17:*6*
**second**  13:*5*
**see**  13:*5*  14:*1*
**send**  13:*4*  21:*12*
**sending**  13:*19*
**sent**  12:*21*  13:*13, 23*  14:*2, 10, 15, 19*  15:*2, 6*
**serious**  8:*22*
**Services**  5:*23*  7:*9*
**seven**  5:*21*
**share**  8:*18*
**SHEET**  3:*5*  19:*6*
*20:3*  21:*11, 12, 14*
**shelves**  10:*19*
**Sheriff**  1:*6*  5:*11*  6:*4*
*19:2*  21:*6*
**Sheriff's**  5:*1, 4*  6:*19*
*7:4, 22, 25*  10:*23*
*11:1, 9, 21*  12:*2*  14:*7*
*15:19*  16:*4*
**shoes**  10:*12*
**short**  8:*21*
**show**  12:*10*
**showed**  13:*7*  14:*14*
**SIGN**  3:*6*  19:*6*  20:*1*
*21:15*
**SIGNATURE**  20:*6*
**signed**  21:*12*
**signing**  3:*11*
**sir**  4:*16*  6:*2, 7, 17*
*12:17, 19*  13:*9*  14:*3,*

*9, 14, 18, 21*
**sit**  13:*22*  14:*21*
**Smith**  2:*2*
**somewhat**  10:*14*
**sorry**  7:*9*  11:*15*  13:*3*
**sound**  12:*7*
**South**  2:*9*  21:*4*
**specifically**  9:*2*  10:*7, 24*  13:*19*
**specificity**  10:*10*
**spoke**  11:*7*
**spot**  5:*24*
**staff**  6:*4*
**State**  4:*4*  17:*2, 11*
*18:2*
**STATES**  1:*1*
**stayed**  7:*7*
**STEFANY**  2:*5*
*11:14, 16*  12:*3*  13:*15, 21*  15:*20*  16:*5, 10, 12, 19*  21:*7*
**Stenographer**  1:*15*
*18:17*
**stenographic**  18:*7*
**stenographically**  18:*5*
**sticks**  5:*14*
**stipulated**  3:*9*
**stocking**  10:*15*
**subscribe**  20:*4*
**Suite**  2:*3, 8*  21:*3*
**supervise**  6:*1, 2*
**supervisor**  13:*8*
**supplies**  6:*11*
**Support**  7:*9*
**supported**  11:*10*
**sure**  6:*10*  9:*4*  11:*2, 4, 6, 22*  14:*25*  15:*9*
**sworn**  4:*8*  17:*5*

**< T >**
**take**  10:*20*  15:*23*
**TAKEN**  1:*11*  4:*1*
*21:8*
**Tampa**  2:*9*  21:*4*
**tasks**  11:*5*
**tell**  9:*2, 12*  10:*6*
**termination**  14:*17*
**testified**  4:*8*
**testify**  4:*15*
**testifying**  4:*19, 23*

**TESTIMONY**  3:*1*
4:*18*
**Thank**  16:*9*  21:*19*
**Things**  8:*4*  9:*15, 16*
15:*11*
**think**  5:*9, 13, 16*  8:*9*
9:*7*  10:*3, 4, 10, 12, 18,*
*19, 21*  15:*21, 24*
**thinking**  4:*23*
**thirty**  21:*18*
**thought**  8:*7*
**thousands**  13:*23*
**three**  7:*20*
**TIME**  1:*12*  7:*1*
10:*12*  13:*10*  14:*22*
15:*9*  16:*10*
**times**  6:*25*
**title**  6:*13, 15*  7:*3, 6,*
*11*
**today**  4:*15, 23*  13:*22*
14:*21*  16:*9*
**told**  8:*13*  10:2
**total**  13:*8*
**transcribed**  21:*8*
**transcript**  3:*11*
16:*13, 17*  18:6  19:*1,*
*5, 6*  20:4  21:9, *11, 12,*
*14*
**transitioned**  5:*16*
**tried**  10:*11*
**trouble**  15:*9*
**true**  18:*7*
**truthfully**  4:*15, 23*
**two**  5:*9*  10:*1*

**< U >**
**UNDERSHERIFF**
1:*10*  3:*1*  4:*1, 7*  5:*5,*
*6, 12, 24*  6:*1*  16:*13*
17:*4*  19:*4*  21:*8*
**undersigned**  17:*4*
**understand**  4:*13, 17*
**UNITED**  1:*1*
**unpleasant**  8:*5*
**use**  21:*9*
**usual**  9:*18*
**usually**  15:*23*

**< V >**

**verbally**  8:*7*  10:*5*
**voice**  13:*2*
**voiced**  11:*23*
**vs**  1:*5*

**< W >**
**waive**  16:*14*
**want**  9:*18*  10:*13*
**way**  12:*7*
**WITNESS**  4:*10*
16:*12, 17, 21*  17:6
**work**  4:*25*
**worked**  6:*21*
**WRITE**  19:*1*
**writing**  10:*4*  13:*4*

**< Y >**
**years**  5:*21*  7:*16, 18,*
*20*

**< Z >**
**Zoom**  1:*13*  2:*5, 11*
4:*18*

Deposition of Undersheriff John Holloway

Jenna Clark v. Carmine Marceno

### WORD LIST

**< 1 >**
**1** *(1)*
**1,400** *(2)*
**1,600** *(1)*
**1,700** *(1)*
**1:10** *(2)*
**1:37** *(2)*
**10** *(1)*
**10/10/2023** *(1)*
**10th** *(3)*
**12** *(1)*
**1310** *(1)*
**15th** *(2)*
**17** *(1)*
**18** *(1)*
**19** *(1)*
**19th** *(2)*

**< 2 >**
**2** *(1)*
**20** *(1)*
**2013** *(2)*
**2021** *(4)*
**2022** *(1)*
**2023** *(6)*
**21** *(2)*
**215** *(1)*
**22** *(3)*
**22-002723-CI** *(1)*
**225** *(2)*
**251-1210** *(1)*
**26** *(1)*
**26th** *(1)*
**278990** *(1)*

**< 3 >**
**30** *(2)*
**305** *(1)*
**324** *(2)*
**33131** *(1)*
**33606** *(2)*
**341-3616** *(1)*

**< 4 >**
**4** *(1)*

**< 5 >**

**565** *(2)*
**566** *(2)*

**< 6 >**
**6/21/2026** *(1)*

**< 7 >**
**701** *(1)*

**< 8 >**
**8** *(3)*
**813** *(1)*

**< 9 >**
**946-1884** *(1)*

**< A >**
**able** *(1)*
**above-styled** *(1)*
**abrasive** *(1)*
**absorbing** *(1)*
**acceptable** *(1)*
**account** *(1)*
**accuracy** *(1)*
**action** *(4)*
**added** *(1)*
**additional** *(1)*
**afternoon** *(1)*
**agency** *(7)*
**agree** *(1)*
**agreed** *(1)*
**Allen** *(2)*
**AMENDMENT** *(1)*
**amendments** *(1)*
**Annmaarie** *(1)*
**Annmarie** *(38)*
**answer** *(5)*
**answered** *(1)*
**apologize** *(3)*
**apparently** *(1)*
**APPEARANCES** *(1)*
**appeared** *(6)*
**APPOINTMENT** *(2)*
**appropriate** *(2)*
**Approximately** *(2)*
**area** *(1)*
**asked** *(2)*
**asking** *(1)*
**aspects** *(1)*

**assure** *(1)*
**attached** *(2)*
**attorney** *(2)*
**auditing** *(1)*
**August** *(4)*
**authority** *(1)*
**authorized** *(1)*
**available** *(1)*
**Avenue** *(3)*
**aware** *(3)*

**< B >**
**back** *(2)*
**Bates** *(2)*
**BEHALF** *(3)*
**believe** *(9)*
**best** *(1)*
**Blue** *(2)*
**boots** *(4)*
**Brickell** *(1)*
**budgeting** *(1)*
**bunch** *(1)*
**business** *(2)*

**< C >**
**CALL** *(2)*
**capable** *(1)*
**capacity** *(3)*
**CARMINE** *(3)*
**CASE** *(2)*
**cc** *(1)*
**CERTIFICATE** *(4)*
**certify** *(3)*
**chain** *(1)*
**challenging** *(2)*
**changed** *(2)*
**CHANGES** *(1)*
**changes/corrections** *(1)*
**characterization** *(1)*
**Chief** *(4)*
**choice** *(1)*
**circumstances** *(2)*
**CLARK** *(25)*
**Clark's** *(10)*
**clashes** *(6)*
**clearly** *(2)*
**client** *(5)*
**coinciding** *(1)*

**comes** *(1)*
**command** *(2)*
**commencing** *(1)*
**comment** *(1)*
**Commission** *(2)*
**complain** *(1)*
**complaints** *(1)*
**complete** *(1)*
**concern** *(2)*
**concerns** *(2)*
**conduct** *(1)*
**conducting** *(1)*
**connected** *(1)*
**consistent** *(1)*
**continue** *(1)*
**conversation** *(1)*
**conversations** *(2)*
**cooperative** *(1)*
**copy** *(6)*
**correct** *(2)*
**CORRECTIONS** *(2)*
**corrections/changes** *(1)*
**counsel** *(6)*
**County** *(19)*
**COURT** *(7)*
**COVER** *(4)*
**cramming** *(1)*
**create** *(1)*
**currently** *(1)*

**< D >**
**DATE** *(7)*
**dated** *(3)*
**DAVID** *(1)*
**day** *(4)*
**days** *(4)*
**day-to-day** *(1)*
**dealing** *(1)*
**Dear** *(1)*
**December** *(2)*
**decision** *(5)*
**decision-making** *(1)*
**Defendant** *(2)*
**Defendant's** *(2)*
**Deferred** *(1)*
**defied** *(1)*
**degree** *(1)*
**delay** *(1)*

Deposition of Undersheriff John Holloway                                    Jenna Clark v. Carmine Marceno

Department *(3)*
departure *(3)*
Deponent *(2)*
DEPOSITION *(9)*
Derek *(1)*
describe *(1)*
desposition *(1)*
determination *(1)*
difficult *(1)*
Direct *(3)*
DIRECTED *(1)*
directive *(1)*
directly *(3)*
Director *(6)*
discipline *(1)*
disciplined *(1)*
disciplining *(1)*
discuss *(5)*
discussed *(2)*
discussion *(3)*
discussions *(2)*
DISTRIBUTE *(1)*
DISTRICT *(2)*
document *(2)*
documented *(1)*
doing *(2)*
dollars *(1)*
DROP *(6)*
D-R-O-P *(1)*

dstefany@anblaw.com
*(2)*
duly *(2)*

< E >
early *(1)*
earth-shattering *(1)*
effect *(1)*
effectively *(1)*
efficiently *(1)*
eight *(2)*
either *(1)*
elected *(1)*
eliminate *(3)*
eliminated *(5)*
e-mail *(9)*
e-mails *(1)*
employee *(4)*
employees *(2)*

employment *(3)*
encounter *(1)*
end-result *(1)*
enter *(2)*
entering *(1)*
entire *(1)*
equipment *(1)*
ERRATA *(5)*
ERROR *(1)*
escrow *(1)*
ESQUIRE *(4)*
everybody *(1)*
Examination *(2)*
examined *(1)*
Exhibit *(3)*
Expires *(1)*
explaining *(1)*
expressed *(1)*
expressly *(1)*
extent *(1)*

< F >
Fair *(1)*
faith *(1)*
familiar *(2)*
far *(2)*
feel *(2)*
FERNANDEZ *(7)*
fielding *(1)*
financially *(1)*
find *(1)*
first *(2)*
five *(1)*
fix *(1)*
FLORIDA *(12)*
follow *(1)*
follows *(1)*
force *(1)*
foregoing *(1)*
form *(4)*
Fort *(1)*
four *(2)*
free *(1)*
further *(2)*

< G >
generally *(4)*
getting *(1)*
give *(2)*

giving *(1)*
go *(2)*
goals *(1)*
going *(3)*
Good *(1)*
gotten *(1)*
governor *(2)*
great *(3)*
Group *(1)*
guess *(1)*

< H >
hand *(1)*
handle *(2)*
hardship *(1)*
hate *(1)*
head *(1)*
hereto *(1)*
hesitation *(1)*
Heuglin *(1)*
HH *(1)*
HILLSBOROUGH
*(2)*
him/her *(1)*
hold *(1)*
HOLLOWAY *(10)*
hours *(1)*
hundred *(1)*
hundreds *(1)*
Hyde *(2)*

< I >
identification *(1)*
identify *(1)*
impact *(2)*
impliment *(1)*
incredibly *(2)*
indicated *(1)*
indirectly *(1)*
influence *(1)*
input *(2)*
instances *(1)*
instruct *(1)*
instructed *(1)*
insubordinant *(3)*
insubordination *(1)*
interested *(1)*
inventory *(2)*
invested *(1)*

invoicing *(1)*
issue *(2)*
issues *(4)*
issuing *(1)*
items *(1)*

< J >
JENNA *(32)*
Jenna's *(1)*
job *(6)*
JOHN *(8)*
joined *(2)*
judge *(1)*
jury *(1)*

< K >
kind *(1)*
knew *(2)*
know *(8)*
knowledge *(1)*
known *(1)*
KYLE *(3)*
kyle@dereksmithlaw.c
om *(2)*

< L >
label *(2)*
Large *(1)*
late *(2)*
Law *(1)*
Laylor *(1)*
LCSO *(1)*
Lee *(17)*
left *(1)*
Legal *(3)*
letter *(3)*
level *(1)*
LINE *(1)*
locations *(1)*
long *(2)*
look *(1)*
looking *(1)*
looks *(1)*

< M >
MACDONALD *(16)*
Major *(2)*
making *(2)*
manage *(2)*

Deposition of Undersheriff John Holloway                                    Jenna Clark v. Carmine Marceno

management  *(2)*
managers  *(1)*
MARCENO  *(3)*
mark  *(2)*
marked  *(1)*
Matt  *(1)*
mechanical  *(1)*
meet  *(1)*
MELISSA  *(7)*
memory  *(2)*
mention  *(1)*
message  *(3)*
met  *(2)*
Miami  *(1)*
MIDDLE  *(1)*
mind  *(1)*
minor  *(1)*
mission  *(1)*
moment  *(1)*
moments  *(2)*
moved  *(1)*
Myers  *(1)*

< N >
need  *(4)*
needed  *(1)*
needs  *(1)*
never  *(4)*
nonsensical  *(1)*
normal  *(1)*
Norton  *(2)*
Notary  *(2)*
NOTE  *(4)*
noted  *(1)*
notes  *(1)*
notice  *(1)*
notified  *(1)*
notify  *(1)*
notifying  *(2)*
November  *(2)*
number  *(1)*

< O >
OATH  *(4)*
Objection  *(5)*
obligation  *(1)*
obtained  *(2)*
occasion  *(1)*
occasionally  *(2)*

occasions  *(3)*
occassionally  *(1)*
October  *(4)*
Office  *(16)*
official  *(5)*
old  *(1)*
operating  *(1)*
operations  *(5)*
opinion  *(1)*
opposing  *(1)*
Option  *(3)*
Options  *(1)*
ordered  *(4)*
original  *(2)*
oversaw  *(1)*

< P >
p.m  *(4)*
PA  *(1)*
PAGE  *(7)*
pages  *(1)*
pair  *(1)*
pairs  *(1)*
Park  *(2)*
part  *(1)*
parties  *(3)*
patient  *(1)*
paying  *(1)*
payments  *(1)*
pension  *(1)*
people  *(9)*
performance  *(6)*
performed  *(1)*
person  *(2)*
personal  *(2)*
personality  *(6)*
PLACE  *(1)*
placed  *(1)*
Plaintiff  *(3)*
Plaintiff's  *(3)*
planning  *(1)*
pleasant  *(1)*
PLEASE  *(9)*
PLLC  *(1)*
point  *(4)*
position  *(12)*
positions  *(1)*
possible  *(1)*
Possibly  *(1)*

prefer  *(1)*
prevent  *(1)*
previously  *(1)*
prior  *(1)*
probably  *(1)*
problem  *(1)*
problematical  *(1)*
problems  *(2)*
process  *(1)*
program  *(4)*
promised  *(1)*
promptly  *(1)*
propounded  *(1)*
Public  *(2)*
Purchasing  *(10)*
purposes  *(1)*
pursuant  *(1)*
pursued  *(1)*
put  *(1)*

< Q >
questions  *(4)*

< R >
raised  *(4)*
READ  *(9)*
reading  *(3)*
really  *(1)*
reasonable  *(1)*
recall  *(17)*
recognize  *(1)*
recollection  *(2)*
record  *(1)*
refreshed  *(1)*
regarding  *(5)*
related  *(1)*
relative  *(2)*
remained  *(1)*
remember  *(1)*
remotely  *(2)*
removed  *(1)*
Reno  *(22)*
Reno's  *(2)*
rephrase  *(1)*
report  *(6)*
REPORTED  *(7)*
REPORTER  *(5)*
REPORTER'S  *(1)*
reports  *(2)*

requested  *(1)*
require  *(1)*
required  *(1)*
reserved  *(1)*
respective  *(1)*
responsibility  *(1)*
responsible  *(1)*
restraint  *(1)*
result  *(1)*
retire  *(3)*
Retirement  *(1)*
RETURN  *(1)*
review  *(1)*
rid  *(2)*
right  *(2)*
robut  *(1)*
role  *(2)*

< S >
salary  *(1)*
Sands  *(1)*
saw  *(1)*
says  *(1)*
scheduled  *(1)*
seal  *(1)*
second  *(1)*
see  *(2)*
send  *(2)*
sending  *(1)*
sent  *(9)*
serious  *(1)*
Services  *(2)*
seven  *(1)*
share  *(1)*
SHEET  *(6)*
shelves  *(1)*
Sheriff  *(5)*
Sheriff's  *(14)*
shoes  *(1)*
short  *(1)*
show  *(1)*
showed  *(2)*
SIGN  *(4)*
SIGNATURE  *(1)*
signed  *(1)*
signing  *(1)*
sir  *(13)*
sit  *(2)*
Smith  *(1)*

Deposition of Undersheriff John Holloway                          Jenna Clark v. Carmine Marceno

somewhat  *(1)*
sorry  *(3)*
sound  *(1)*
South  *(2)*
specifically  *(4)*
specificity  *(1)*
spoke  *(1)*
spot  *(1)*
staff  *(1)*
State  *(4)*
STATES  *(1)*
stayed  *(1)*
STEFANY  *(12)*
Stenographer  *(2)*
stenographic  *(1)*
stenographically  *(1)*
sticks  *(1)*
stipulated  *(1)*
stocking  *(1)*
subscribe  *(1)*
Suite  *(3)*
supervise  *(2)*
supervisor  *(1)*
supplies  *(1)*
Support  *(1)*
supported  *(1)*
sure  *(8)*
sworn  *(2)*

< T >
take  *(2)*
TAKEN  *(3)*
Tampa  *(2)*
tasks  *(1)*
tell  *(3)*
termination  *(1)*
testified  *(1)*
testify  *(1)*
testifying  *(2)*
TESTIMONY  *(2)*
Thank  *(2)*
Things  *(4)*
think  *(14)*
thinking  *(1)*
thirty  *(1)*
thought  *(1)*
thousands  *(1)*
three  *(1)*
TIME  *(7)*

times  *(1)*
title  *(5)*
today  *(5)*
told  *(2)*
total  *(1)*
transcribed  *(1)*
transcript  *(13)*
transitioned  *(1)*
tried  *(1)*
trouble  *(1)*
true  *(1)*
truthfully  *(2)*
two  *(2)*

< U >
UNDERSHERIFF
  *(13)*
undersigned  *(1)*
understand  *(2)*
UNITED  *(1)*
unpleasant  *(1)*
use  *(1)*
usual  *(2)*
usually  *(1)*

< V >
verbally  *(3)*
voice  *(1)*
voiced  *(1)*
vs  *(1)*

< W >
waive  *(1)*
want  *(2)*
way  *(1)*
WITNESS  *(5)*
work  *(1)*
worked  *(1)*
WRITE  *(1)*
writing  *(2)*

< Y >
years  *(4)*

< Z >
Zoom  *(4)*

# EXHIBIT 8

To:      Undersheriff John Holloway

From:    Executive Director Annmarie Reno

Date:    August 19, 2021

Re:      Purchasing Director Jenna Clark


In July 2021 I held a meeting with both Purchasing Director Clark & Manager Lehman to discuss ordering Civilian Support Unit uniforms and supplies (formerly VOICE).  I instructed them both to start issuing them out to the members (including jackets) as soon as the new polo shirts arrived so that we could start to remove the VOICE items from the shelves and burn them.

I continued to request an update on the status of the new items because I wanted to ensure the that we were going to meet the launch date for the *New Civilian Support Unit.*  Director Clark ensured me that we would meet the date and everything was under control.  Again I reminded her that they needed to remove all the VOICE items from inventory and she told me that she would take care of it.

I also requested that we start discarding all the older uniforms that were no longer being utilized because we were running out of room in Purchasing.

On Thursday, August 12, 2021 @1:30 pm I held a meeting in my office with both Director Clark & Manager Lehman to inform them that we would be moving forward with the implementation of the new bar coding Inventory Management System for our warehouse.  I explained to them that Diana Blewis would be the Project Manager and that they needed to allow her to converse with the members of Purchasing so that they had some input to the setup.  Both Director and Manager were excited about the new system.  After leaving my office I was informed by Manager Blewis that Director Clark was less than receptive to the point that Manager Blewis informed Director Clark that she was asked to complete a project and that if she continued to talk over her while she was explaining the goal that she would walk down to my office and inform me that Director Clark was not being a team player.

On Monday, August 16, 2021 I walked down to Purchasing to inquire how the project was moving along.  I was given a tour by Manager Lehman (since Director Clark is out of the office) to show me around only to see boxes of old uniforms and old stock that was still in the warehouse.  When I inquired as to why all the items were still in our inventory I was informed that Director Clark would not allow them to dispose of it.  There were multiple boxes of old holsters, old civilian and certified uniforms, old time cards, old voice uniforms, and old unusable equipment.  When I asked Purchasing Agent Gwen Legler why we still had old VOICE shirts, jackets, hats and windbreakers I was told that Director Clark would not let her get rid of the items because we might need to use them.  I asked Purchasing Agency Legler to please bag up

LCSO/ Clark
DEF000565

all the old VOICE items to be burned and any items that the Dominican Republic could use we would drop off on their dock.

As of today all old items have been removed from the Warehouse and we are ready to start the bar code scanning Inventory Management System implementation project.

Director Clark clearly defied my directive to have all the old items removed from LCSO Inventory as instructed and showed total insubordination towards me as her direct supervisor.


Annmarie Reno
Executive Director
Support Services

**LCSO/ Clark**
**DEF000566**