UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

| | |
|---|---|
| JENNA CLARK,<br><br>              Plaintiff,<br><br>v.<br><br>CARMINE MARCENO, in his official capacity as Sheriff of Lee County, Florida,<br><br>              Defendant. | Case No. 2:22-cv-614-SPC-NPM |

**DEFENDANT'S REPLY TO PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

COMES NOW CARMINE MARCENO, as the duly elected Sheriff of Lee County, Florida, ("Sheriff" or "Defendant") by and through his undersigned counsel and pursuant to applicable federal and local rules, hereby files his reply to Plaintiff's Response in Opposition to Defendant's Motion for Summary Judgment (D.E. 33) ("Response").

<u>Plaintiff's Response features arguments predicated upon erroneous facts.</u>

Clark's Response repeatedly cites to a "Positions Eliminated" chart - later marked in discovery as "LCSO/Clark DEF000123" (D.E. 28-2, Ex. 4) - as purported evidence that in conducting its 2021 RIF, Defendant "considered Plaintiff's age" and "exclusively selected employees over the age of 40." Response, at 4 and 9 (disputing Paragraphs 16 and 19 of Defendant's Facts) and 12 (referring to D.E. 33-9). Plaintiff's reliance on this chart to argue that age was considered is surprising, since Jill Jones

testified that she created the chart and explicitly denied that it was created during the process of effectuating the 2021 RIF (D.E. 28-7, 47:19-25 to 48:1-18, 64:2-18).

In fact, the Positions Eliminated chart (D.E. 33-9) was created by Jill Jones on February 12, 2023 at the request of the Sheriff's in-house legal team to help respond to Plaintiff's Interrogatory #12, which sought the "name, age, gender, title and direct supervisor) of each employee who was terminated or had their job eliminated as part of the 2021 RIF. (D.E. 34-1, ¶3, Ex. 1). Defendant's response to Interrogatory #12 explicitly identified that it was limited to "only civilian positions eliminated as part of the agency-wide reduction-in-force in 2021, where the incumbent in the position left the agency" or "accept[ed] a lower position for less pay." (D.E. 33-14 at pdf 996). In responses to Clark's Request for Admissions, the Defendant confirms that Jami Bartz, Marsha Sprankel and Tracy Estep had already retired and left their positions and Anthony Ramsey had already resigned and left his employment when the Sheriff made the decision to eliminate their positions as part of the 2021 RIF. (D.E.33-13, Responses to Admissions #11-13, 16). To state the obvious, the chart's data does not provide evidence that the ages of those on the chart were considered when the positions had been vacated *before* the Sheriff elected to eliminate these positions from the organization. Both Holloway and Reno further confirmed at deposition that the ages of incumbents in affected positions were not considered as part of the process in effectuating the 2021 RIF. (D.E. 28-2, 60:21-23; D.E. 28-4, 83:3-14).

Plaintiff also incorrectly asserts that Tammy Rhodes and Karen Ciofani are "new" employees affected by the 2021 RIF in its list of positions effected by the 2021 RIF (Response, pp. 12-13, referring to Bates LCSO/Clark #DEF000122) (D.E. 28-8, Ex. 5), but again, Plaintiff is incorrect. As noted above, Defendant's response to Interrogatory #12 was limited, with other job eliminations and position changes occurring in 2021 (and outside of 2021) identified in a larger list of job eliminations and other Change Orders to positions impacted by the RIFs taking place before, during and after 2021. (D.E. 34-1, ¶ 4, Ex. 2). With over 1600 employees in 2021 (D.E. 28-1, ¶ 6), the fact that in conducting the 2021 RIF employees younger than Clark were retained or transferred to other positions raises no inference of age-based discrimination. *Barnes v. Southwest Forest Industries, Inc.*, 654 F. Supp. 193, 1999, n. 4 (N.D.Fla. 1986), *affirmed*, 814 F.2d 607 (11th Cir. 1987) (rejecting assertion of age-based RIF decisions and highlighting flaws in analysis of only the ages of those affected and those retained). Clark points to no evidence in this record that the Sheriff intended to discriminate against her by failing to consider her for another position, as she must provide to establish a *prima facie* ADEA case arising from a reduction-in-force. *Rowell v. BellSouth Corp.,* 433 F.3d 794, 798 (11th Cir. 2005).

<u>Clark's job elimination was not a constructive discharge.</u>

Clark's contention that she was constructively discharged (Response at pp. 8-9) is not supported by the record facts or applicable law. After her position was eliminated as part of the 2021 RIF, Clark had the option to apply and continue

3

employment with the LCSO as a Communications Call Taker position. While Heikkila's letter to Clark did not specifically identify the option to apply for this open position, it is undisputed that on August 21, 2021 Reno encouraged Clark to explore her available options with Heikkila (D.E. 28-01, ¶20), Clark researched her available options by checking the agency's accessible job postings for open positions (D.E. 28-08, 521-25 to 52:1-8), and then discussed the Call Taker position and her opportunity to apply for the open positions with Heikkila on August 23, 2021 (28-8, 76:1-23; 28-08, Ex. 4). However, Clark unequivocally lost further interest in applying for the open position when Heikkila confirmed that by LCSO's existing policies, Clark's future accrued leave benefits on separation from the agency should she obtain the Communications Call Taker position would be computed at her new and lower rate of pay ($36,500 annually), rather than at her higher rate of pay as Purchasing Director ($93,000, annually).   (D.E. 28-08, 54:10-25 to 55:1-23, 77:12-18, 55:6-23).

Contrary to Clark's untimely affidavit and its questionable statements (e.g., D.E. 33-1, ¶¶ 15, 16, 29 and 30),[1] in electing to retire with the Florida Retirement

---

[1] To the extent statements in Clark's affidavit contradicts her sworn deposition testimony, such statements should be stricken or disregarded as a sham affidavit.  For example, at deposition Clark could not answer how she had suffered financial or economic damages by being placed on paid administrative leave for 113 hours rather than being allowed to use accrued sick leave. (D.E. 28-8, 134:22-25 to 135, 1-19).  In her sham affidavit executed well after her deposition, she now manufactures a claim of having suffered compensatory damages (D.E. 33-1, ¶ 30), and further makes the nonsensical assertion that she would have taken a greater amount of leave to recover from her August 2021 surgery (D.E. 33-1, ¶15) has she been provided FMLA documentation.  Such a claim ignores the fact that the Sheriff provided her 113 hours of Paid Administrative Leave from August 16, 2021, through September 3, 2021. (D.E. 28-8, 45:6-13; D.E 33-7, at pdf 784-785), and assumes as speculation that the Sheriff or Undersheriff even knew she was having a medical procedure in August 2021.

System ("FRS"), Clark was paid for all benefits that she was entitled to under the LCSO's policies (D.E. 28-8, 92:24-25 to 931-6; D.E. 28-8, Ex. 22).

Therefore, Clark was well informed of her available options before electing to retire with the FRS and separate her employment with the LCSO, rather than resign on September 3, 2021 and delay her election to retire while looking for comparable employment with another "employer" as defined by FRS,[2] or take a lesser paying job as a Communications Call Taker and continue to earn service credit with the FRS, albeit at a lower salary than that which she earned as the Director of Purchasing. (D.E. 28-08, 37:23-25 to 38:1-2).  Under these facts, Clark was not constructively discharged as a matter of law. As with the circumstances of the plaintiff in *Rowell v. BellSouth Corp.*, 433 F.3d 794 (11th Cir. 2005), Clark was not given an ultimatum to retire or be discharged.  Clark had the option to transfer to a new available position for which she was qualified to earn the additional months of FRS service credit she coveted (D.E. 28-08, 55:6-10), to resign in order to receive separation benefits measured at her salary as the Purchasing Director, to resign and await making application for a higher paying job opening at the LCSO should one come available after September 3, 2021 or another "employer" as defined by the FRS,[3] or to resign and seek uncertain employment with another public sector FRS "employer." Except for her election to resign and to retire with the FRS to trigger eligibility for her FRS

---

[2] The term "employer" is defined by the FRS in Section 121.021(10), Florida Statutes.

benefits,[4] each of the other options involved varying levels of uncertain outcomes, and the potential delay in receipt of (and even negative consequences to the dollar amount of) her separation benefits under LCSO policies.

> Clark's assertion of "significant inconsistencies and contradictions in <u>selection criteria</u>" are illusory.

Clark argues in her Response (p. 12) that there exist inconsistencies in Defendant's selection criteria in conducting the 2021 RIF. No such inconsistencies exist in the evidentiary record. To the extent that other employees had their positions changed as part of the 2021 RIF and remained employed, these facts were noted through the production of a chronology of executed Change Orders (D.E. 34-1, Ex. 2). Clark contends that she received a unique letter notifying her of her job elimination, citing the deposition testimony of Dawn Heikkila, who at her deposition simply disavowed sending a similar job elimination notice letter to Anthony Ramsey, Amy Dellaquilla, Marcia Sprinkel or James Jones. However, Ramsey resigned prior to the Sheriff's decision to eliminate his job (D.E. 33-13, Response to Admission #16), Amy Dellaquilla left her employment by entering into a services contract with the LCSO (D.E. 33-13, Response to Admission #14), Marcia Sprinkel retired months prior to the Sheriff's elimination of her job (D.E. 33-13, Response to Admission #12), and

---

[4] Under the FRS and since retirement benefits are determined based upon "average final compensation," (Section 121.021(24)(a), Florida Statutes), a member is required to cease or terminate all credible service with an FRS employer to be eligible to commence the receipt of FRS retirement benefits. Clark acknowledged her understanding of this fact when she elected to retire on August 27, 2021. (D.E. 28-8 at pdf 1015).

James Jones elected to remain employed in a lesser paying position when the Sheriff eliminated Jones' position as Director of Fleet Management (D.E. 33-13, Response to Admission #15). Simply stated, none of these employees identified by Heikkila at deposition received a letter similar to the one Heikkila sent to Clark because the other affected employees were not similarly situated to Clark.

There also are no material contradictions in the record evidence. In response to Paragraph 12 of the Statement of Material Facts, Clark asserts a contradiction of when the 2021 RIF discussions started, but the material facts are that the discussions of operational changes in staffing was an ongoing process and the Sheriff's direction to effectuate the recommended 2021 RIF was given and carried out in July or August of 2021 as part of the agency's ongoing efforts to operate more efficiently. This direction was the same mandate Undersheriff Holloway received when the Sheriff directed that the Undersheriff's recommended job eliminations be implemented, after first proposing the conceptual idea of a RIF to the Sheriff in early 2021. (D.E. 28-2, 9:23-25 to 10:1-15).

Dated this 14th day of March 2024.   Respectfully submitted,

*s/ David J. Stefany*
DAVID J. STEFANY
Florida Bar No. 438995
DANIEL E. KALTER
Florida Bar No. 1025094
*Counsel for Defendant*

**ALLEN NORTON & BLUE, P.A.**
Hyde Park Plaza - Suite 225
324 South Hyde Park Avenue
Tampa, Florida 33606-4127
(813) 251-1210 | (813) 253-2006 – Fax
E-mail: dstefany@anblaw.com
       dkalter@anblaw.com
Secondary: awilliams@anblaw.com

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 14th day of March 2024 I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system, which will electronically send a notice of electronic filing to Kyle T. MacDonald, Esquire and to Lauren Wilson, Esquire of Derek Clark Law Group, PLLC, 520 Brickell Key Drive, Suite O-301, Miami, Florida 33131 [k*yle@derekClarklaw.com; lauren@derekClarklaw.com*]

                                      *s/ David J. Stefany*
                                      ATTORNEY