UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

JENNA CLARK,

    Plaintiff,

v.                                    Case No.:   2:22-cv-614-SPC-NPM

CARMINE MARCENO,

    Defendant.
_____/

## OPINION AND ORDER

Before the Court is Defendant Carmine Marceno's Motion for Summary Judgment. (Doc. 28). Plaintiff Jenna Clark responded in opposition (Doc. 33), and Defendant replied (Doc. 34).

## BACKGROUND

Clark began working for the Lee County Sheriff's Office (LCSO) in 1992. She began her career as a Financial Assistant, and by the time she resigned in September 2021, she was Director of Purchasing. (Doc. 33-1). At the time of her resignation, Clark was nine months shy of receiving full retirement benefits from the Florida Retirement System (FRS). (Doc. 28-8 at 48, 55).

The context of her resignation provides the basis for this suit. In early 2021, John Holloway (the LCSO Undersheriff) proposed a reduction in force (RIF) to Sheriff Carmine Marceno. (Doc. 28-2 at 9). This RIF was a

continuation of the 2019 RIF to combat increasing costs in areas such as inmate healthcare. (Doc. 28-4 at 43-45, 48). In 2019, LCSO eliminated five positions. (Doc. 28-8).

Holloway asked Anne Reno (Executive Director of the Support Services Division) to "look closely at the administrative staffing within certain Departments" while he looked for "opportunities to operate more efficiently and effectively." (Doc. 28-1 at 5; Doc. 28-2 at 9). Holloway believed the Purchasing Department was a good candidate for the RIF because it had too many employees for its workload and its work was "not so complicated and complex as to require a Director." (Doc. 28-2 at 17).

But the RIF was not finalized until months later. In the interim, Holloway spoke to employees throughout LCSO about their duties and workloads. For her part, Reno (Clark's supervisor) told Holloway in early summer 2021 that the Purchasing Department did not need both a Director and Manager. (Doc. 28-1 at 6).

Sometime in July or early August, Holloway presented his elimination proposal to the Sheriff. (Doc. 28-2 at 12). The proposal included six positions for possible elimination, including Clark's. (Doc. 28-2 at 13). Holloway and the Sheriff discussed "whether the responsibilities assigned to that position warranted the level of management for that position, how those responsibilities would be absorbed elsewhere, [and] . . . whether those

2

responsibilities needed to exist." (Doc. 28-2 at 13). After taking some time to think about it, the Sheriff approved Holloway's proposal as presented. (Doc. 28-2 at 14).

Then, the timeline of events accelerates. On August 12, 2021, Clark emailed LCSO's Human Resources Department (HR) to request leave for an upcoming surgery. (Doc. 28-4 at 196). Because she was requesting a short leave period (seven working days), Dawn Heikkila (Director of HR) told Clark that she was going to "hold off on" categorizing Clark's leave as FMLA leave and requiring FMLA paperwork. (Doc. 28-4 at 196).

Clark's surgery was scheduled for August 18th, and she began her leave when she left work early on August 17th. (Doc. 28-4 at 196; Doc. 28-8 at 46, 79). Her leave was scheduled to last until August 27th. (Doc. 28-4 at 196).

On August 20th, while Clark was still on leave, Heikkila learned that Clark's position was being eliminated in the RIF. Heikkila prepared a termination letter to mail to Clark,[1] but Reno did not want Clark to learn the news via mail. (Doc. 28-8 at 48). So Reno called Clark on August 21st to tell

---

[1] The letter is dated August 15, 2021. (Doc. 28-2 at 99). But Reno learned of Clark's elimination on August 20th. (Doc. 28-4 at 89). And Heikkila learned of Clark's elimination from Reno. (Doc. 28-5 at 87). When asked about it in her deposition, Heikkila said she "must have just dated the letter based on the pay period that the position was eliminated." (Doc. 28-5 at 99). And the August 20th timeline fits other evidence in the record, such as the call from Reno to Clark on August 21st, as well as Clark's belief that Heikkila did not learn about the elimination until August 20th. (Doc. 28-8 at 48; Doc. 28-8 at 60). August 15, 2021, was a Sunday.

her her position was being eliminated. (Doc. 28-8 at 48). Reno told Clark that she needed to speak to HR about her options. (Doc. 28-8 at 50). Two days later, Clark called Heikkila to discuss her options. (Doc. 28-8 at 206). And four days after that, Clark signed her FRS paperwork to initiate retirement. (Doc. 28-8 at 249).

On September 4, 2021, Clark's position was officially eliminated, and her duties were mostly absorbed by her subordinate, Shannon Lehman. (Doc. 28-4 at 50, 55). Clark's position was one of seven positions eliminated in 2021. (Doc. 28-2 at 98). Four of these positions were eliminated in the September to November timeframe. (Doc. 28-2 at 98).

## LEGAL STANDARD

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). And a material fact is in genuine dispute "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

The moving party bears the initial burden to show a lack of genuinely disputed material fact. *Clark v. Coats & Clark,* 929 F.2d 604, 608 (11th Cir. 1991). If carried, the burden shifts to the nonmoving party to point out a

4

genuine dispute. *Id.* At this stage, courts view all facts and draw all reasonable inferences in the light most favorable to the nonmoving party. *Rojas v. Florida*, 285 F.3d 1339, 1341-42 (11th Cir. 2002).

## DISCUSSION

Clark filed a four-count complaint. (Doc. 13). In that complaint, she alleged Age Discrimination and Retaliation under the Age Discrimination in Employment Act (ADEA), 29 U.S.C. § 623, as well as Family and Medical Leave Act (FMLA) Interference and Retaliation under 29 U.S.C. § 2615. Clark withdrew her age-based retaliation claim in her Response in Opposition to Defendant's Motion for Summary Judgment (Doc. 33 at n.1), so the claims before this Court are: Count I (Age Discrimination), Count III (FMLA Interference), and Count IV (FMLA Retaliation).

**A. Count I: Age Discrimination**

The ADEA prohibits employers from discharging employees who are at least 40 years old "because of" the employee's age. 29 U.S.C. §§ 623(a), 631(a). When an employee's position is eliminated as part of a reduction in force (RIF) and the employee sues for age discrimination, the employee-plaintiff must show that: (1) she was in a protected age group and was adversely affected by an employment decision, (2) she was qualified for her current position or to assume another position at the time of discharge, and (3) the evidence could lead a fact-finder to reasonably conclude that the employer intended to

5

discriminate on the basis of age in making its employment decision. *Smith v. J. Smith Lanier & Co.*, 352 F.3d 1342, 1344 (11th Cir. 2003) (internal citation omitted). A plaintiff must prove that age was the "but-for" cause of the adverse employment decision. *Mazzeo v. Color Resolutions, Int'l, LLC,* 746 F.3d 1264, 1270 (11th Cir. 2014) (internal citation omitted).

Once plaintiff satisfies her prima facie burden, the burden then shifts to the defendant to articulate a legitimate reason for the adverse action. *Maddow v. Procter & Gamble Co., Inc.,* 107 F.3d 846, 851 (11th Cir. 1997). If the defendant does so, the plaintiff must then show that the defendant's proffered reason is pretextual. *Id.*

The parties do not dispute that Clark falls into the protected age group, although they do dispute whether Clark suffered an adverse employment action (constructive discharge) or simply resigned. (Doc. 28 at 17). The parties do not dispute that Clark was qualified for the Purchasing Director position when it was eliminated, though they do dispute whether this discrimination prong requires Clark to also prove she was qualified for another job with LCSO at elimination.[2] *See Ayala v. Lambert*, 594 F. App'x 602, 603 n.1 (11th Cir. 2015).

---

[2] To the extent that Clark was qualified for an open position at LCSO at the time of her elimination, it was a "communications call-taker" position. Clark discussed this position with Heikkila after learning her Purchasing Director position was being eliminated. Heikkila told her that the call-taker position paid significantly less than what Clark was making, and Clark would not keep all of her Purchasing Director benefits if she became a call-taker. (Doc.

6

But the Court need not decide whether Clark was constructively discharged or whether Clark was qualified for another job at LCSO. This is because she fails the third prong needed to establish her prima facie case—she does not have evidence that could lead a fact-finder to reasonably conclude that Defendant intended to discriminate on the basis of age in making its employment decision.

Clark's evidence of discrimination can be summed up as follows: (1) every person eliminated during the 2021 RIF was over the age of 40, (2) Clark experienced "age-related discriminatory remarks," and (3) there are "inconsistencies and contradictions" in the RIF's selection criteria. The Court will address this evidence in turn.

First, Clark cites *Rowell v. BellSouth Corp.*, 433 F.3d 794, 798 (11th Cir. 2005), for the proposition that because everyone eliminated in the 2021 RIF was over the age of 40, this "by itself presents a significant issue of material fact." (Doc. 33 at 12). But *Rowell* merely says that "circumstantial statistical evidence regarding age" can be considered. *Id.* at 798. And Clark's "statistical" data is undermined by its lack of analytical foundation and by the fact that LCSO also retained employees over the age of 40 in the Purchasing

---

28-8 at 55). Upon learning that, Clark was no longer interested in moving to the call-taker position. (Doc. 28-8 at 55-58). Clark never applied for the call-taker position, even though it was publicly advertised on LCSO's website. (Doc. 28-8 at 51). Under these circumstances, Clark cannot use her failure to get the call-taker job as support for a prima facie case of discrimination. *Crisman v. Fla. Atl. Univ. Bd. of Trs.*, 659 F. App'x 572, 578 (11th Cir. 2016).

Department. *Mitchell v. City of Lafayette*, 504 F. App'x 867, 871 (11th Cir. 2013). In fact, most of the Clark's Purchasing Director duties were absorbed by Shannon Lehman, who was 54 years old at the time. (Doc. 28-1 at 17).

Next, Clark presents two statements by LCSO employees as "age-related discriminatory remarks." (Doc. 33 at 22). The first occurred when Clark spoke to Heikkila about her elimination and the open "call-taker" position at LCSO. Heikkila told Clark "[something] along the lines of this [job] requires memory, this [job] requires attention to detail." (Doc. 33-7 at 54-55; 129). This comment is age-neutral. *See, e.g.*, *Mitchell v. USBI Co.*, 186 F.3d 1352, 1355 (11th Cir. 1999) (neutral or "ambiguous" statements by employers include "older people have more go wrong" and "the Hardy Corporation was going to weed out the old ones"); *Dyer v. Paxson Communs. Corp.,* 267 F. App'x 901, 903 (11th Cir. 2008) (in the context of a conversation about age discrimination, a manager's statement to the plaintiff that she was "different" from the other employees in her department was not an age-related comment). And Heikkila was not involved in the RIF decision-making process, which means her comments do not raise an inference of discrimination. *Rowell v. BellSouth Corp.*, 433 F.3d 794, 801 (11th Cir. 2005).

The next comments Clark cites are from Reno, who *was* involved in the RIF decision-making process. Clark says that in 2019, Reno told her she should "Look into going on disability . . . for all of that, and she waived [her

8

hand] over [Clark's] chest." (Doc. 33-7 at 121). And in 2020, Reno said, "[LCSO] pays 30 percent of your salary to [the Florida Retirement System]." (Doc. 33-7 at 124). But these comments are also age-neutral. And the comments are also not without context. For the preceding ten years, Clark had been writing on her Career and Counseling Plan that her "long-term goal" was retirement. (Doc. 28-8 at 26).

But even assuming Clark's cited comments and the age of her eliminated coworkers give Clark a prima facie case, she cannot show that her elimination during the RIF was pretextual. Defendant has offered the RIF—which was undertaken to cut costs—as a legitimate reason for eliminating Clark's position. "Eliminating a position to avoid unnecessary expenditure" is a recognized legitimate, nondiscriminatory reason for an employment decision. *Mitchell v. City of Lafayette*, 504 F. App'x 867, 870 (11th Cir. 2013). So at this point, the burden shifts.

To prove pretext, Clark disputes Defendant's selection process for the RIF. But the Court "do[es] not sit as a super-personnel department that reexamines an entity's business decisions." *Alphin v. Sears, Roebuck & Co.*, 940 F.2d 1497, 1501 (11th Cir. 1991) (internal citation omitted). Once the burden shifts to the plaintiff to establish pretext, "the plaintiff must meet the employer's reason head on and rebut it, and may not simply quarrel with the wisdom of the reason." *Mitchell v. City of Lafayette*, 504 F. App'x 867, 870 (11th

9

Cir. 2013) (internal citation omitted). If a plaintiff chooses to do this "indirectly by showing that the proffered reason is unworthy of credence," she must "demonstrate such weaknesses, implausibilities, inconsistencies, or contradictions in the proffered reason that a reasonable factfinder could conclude it unworthy of credit." *Id.* The procedures and context of the RIF do not imply discriminatory intent.

The timeline for the RIF arguably starts as early as 2019, when five positions were eliminated. (Doc. 28-8 at 204). Since that time, "people were always nervous that [LCSO was] still going to get rid of people." (Doc. 28-8 at 75). So after a slight break during the tumultuous year of 2020, it was no surprise that LCSO continued reducing its force in 2021.

As early as April 2020, Holloway began considering how to reduce costs, since he predicted either a zero-increase budget or a budget cut for fiscal years 2020-2021 and 2021-2022. (Doc. 28-8 at 301). And in early 2021, Holloway proposed continuing the RIF that began in 2019. (Doc. 28-2 at 9; Doc. 28-4 at 43-45, 48). As a result, LCSO eliminated seven positions in 2021. (Doc. 28-2 at 98). Four of those positions—including Clark's—were eliminated in a two-month period straddling the budget window.[3]

---

[3] Clark's position was eliminated on September 4, 2021. (Doc. 28-2 at 98). Amy DellAquilla's position was eliminated on October 11, 2021. *Id.* Anthony Ramsey's position was eliminated on October 14, 2021. *Id.* And James Jones' position was eliminated on November 4, 2021. *Id.* The fiscal year for LCSO runs from September 30th to October 1st. (Doc. 28-1 at 2).

Before selecting positions for elimination, Holloway spoke to employees throughout the agency, asking "who physically does what, how are procedures done, what do we do, why do we do it . . . what the workloads were, why were their workloads what they were, why we were doing certain things, why we didn't do other things."  (Doc. 28-2 at 11).  He also spoke to high-level management, including Reno, about the operation of their subordinate departments.  Reno told Holloway that the Purchasing Department did not need both a Director and Manager.  (Doc. 28-1 at 6).

Clark's position was eliminated because it was simply unnecessary.  The positions Holloway proposed for elimination in the 2021 RIF "were not borderline.  They were not marginal.  They were simply obvious areas where the taxpayer was paying more to provide public safety to the residents than it needed to pay because [LCSO] had positions that didn't warrant or couldn't reasonably be justified."  (Doc. 28-2 at 19).

The Purchasing Department's "workload was not so complicated and complex as to require a director."  (Doc. 28-2 at 17, 51).  Perhaps because of this, Clark only directly supervised one person.  (Doc. 28-4 at 41).  Clark was doing "pretty much the same work" as her immediate subordinate, Shannon Lehman.  (Doc. 28-4 at 50).

Clark was eliminated (while Lehman was retained) because Lehman was at the correct management level.  Lehman was also the better candidate

11

for retention because she understood LCSO's new financial management system. (Doc. 28-4 at 57-58). And of course, no one was hired to take Clark's place as Purchasing Director; the position was truly eliminated. This also supports that the Purchasing Director position was superfluous.

Clark alleges that Holloway and Reno provided diverging deposition testimony about Clark's skills with Tyler Munis (LCSO's new financial management system) and about whether payroll expenses were considered in selecting positions for termination in the RIF. But neither Clark's software skills nor salary are tied to age.

For the reasons discussed, Clark has neither established pretext under the burden-shifting framework nor presented "a convincing mosaic of circumstantial evidence that would allow a jury to infer intentional discrimination by a decisionmaker." *Alsobrook v. Fannin Cty.*, 698 F. App'x 1010, 1014 (11th Cir. 2017) (internal citation omitted). Clark's arguments "rely only on her speculation, which is insufficient to satisfy the convincing mosaic standard." *Boan v. Fla. Dep't of Corr.*, No. 23-13116, 2024 WL 3084388, at *3 (11th Cir. Jun. 21, 2024).

## B. Count III: FMLA Interference

FMLA interference requires three elements: (1) the plaintiff must show that she was entitled to a benefit under the FMLA, (2) the plaintiff must show that her employer denied her that benefit, and (3) the plaintiff must

12

"demonstrate harm, or prejudice, resulting from the employer's interference with her exercise (or attempted exercise) of an FMLA benefit." *Graves v. Brandstar, Inc.*, 67 F.4th 1117, 1121 (11th Cir. 2023). To state a claim for interference with an FMLA right, a plaintiff needs to demonstrate by a preponderance of the evidence that she was entitled to (but denied) the right. *O'Connor v. PCA Fam. Health Plan, Inc.,* 200 F.3d 1349, 1353-54 (11th Cir. 2000). The parties do not dispute that Clark was entitled to FMLA leave for her August 2021 surgery, so only the second and third elements are at issue.

Clark alleges that her FMLA benefit was denied by Defendant because "Defendant instructed Plaintiff not to submit FMLA leave requests and denied Plaintiff's request to use her FMLA leave benefits in or around August of 2021." (Doc. 13 at 15).

No evidence supports either allegation. In an email exchange between Heikkila and Clark, Clark said, "I called you to let you know I have surgery scheduled on the 18th – [Reno] said to let you know, she already approved my time." (Doc. 28-4 at 196). Heikkila responded, "Ok…if you are out more than a week I will forward it to Amy [in Risk Management] for FMLA…do you know how long you plan to be out?" After Clark gave her anticipated dates of absence, Heikkila responded, "[W]e are so busy right now that I am going to hold off on the FMLA…if you end up needing more time than that just let me know and I will have to do the FMLA paperwork." (Doc. 28-4 at 196).

13

Clark believes that through this exchange, Heikkila "instructed [her] not to submit FMLA leave requests" and denied her FMLA leave request. (Doc. 28-8 at 133). But it strains credulity to read the conversation that way. First, Clark said that her leave had already been approved, and she was emailing HR as a formality. Second, it is LCSO's practice to not require FMLA formalities for leave of seven days or less. Heikkila's "hold[ing] off on the FMLA" simply meant she was not going to require Clark to submit the supporting medical documentation generally required for FMLA leave. (Doc. 28-5 at 18-19). In the words of Heikkila, "by the time you get all that paperwork together, you're back to work." (Doc. 28-5 at 19). Clark's leave was not denied, nor was she discouraged from taking leave. Instead, she was simply not required to submit supporting documentation from her doctor to her employer. (Doc. 28-5 at 80).

Defendant's failure to demand medical documentation from Clark's treating physician(s) did not impinge on Clark's FMLA entitlements. But even if it did, Clark did not suffer harm as a result. As explained in the LCSO Operations Manual, FMLA leave is generally unpaid (unless it runs concurrently with paid leave), and employees are required to use "all available accruals (sick, personal, vacation)" while on FMLA leave. (Doc. 28-1 at 88-89; Doc. 28-5 at 73). Defendant put Clark on administrative leave *with pay* during her FMLA leave. (Doc. 28-8 at 46-47; 85). This meant that Clark was not using

her sick leave during her FMLA leave, as she had originally planned to. (Doc. 28-28-8 at 46). This left her free to be compensated for more unused sick days when she left LCSO.[4] Clark cannot point to any damages she suffered because her FMLA leave was designated as administrative leave with pay rather than sick leave. (Doc. 28-8 at 134-35).

Finally, in her response to Defendant's Motion, Clark for the first time raises two specific violations of her FMLA rights: (1) Defendant did not provide Clark with an eligibility notice under 29 CFR § 825.300(b)(1), and (2) Defendant did not provide Clark with a rights and responsibilities notice under 29 CFR § 825.300(c)(1). Even if the Court considers these late-raised arguments,[5] Clark does not establish "harm, or prejudice, resulting from the employer's interference with her exercise (or attempted exercise) of an FMLA benefit" here either. *Graves,* 67 F.4th at 1121. Clark says if she had received these notices, she could have taken additional leave and used her paid benefits concurrently. She also says she would have been restored to her position when her FMLA leave ended, and she would not have suffered damages from her termination.

---

[4] Clark disputes her compensation for her sick days, saying that she was not paid for all her accrued sick time. (Doc. 28-8 at 92-93). Yet she does admit that she was paid out in accordance with LCSO policy on sick pay. (Doc. 28-8 at 92-93).
[5] *See, e.g., Cacciamani v. Target Corp.,* 622 F. App'x 800, 804 (11th Cir. 2015).

Clark's contention that she could have taken additional leave is unsupported. The FMLA permits employers to require medical certification that outlines the "probable duration" of the serious health condition, "medical facts [which] must be sufficient to support the need for leave," and "information sufficient to establish that the employee cannot perform the essential functions of the employee's job." 29 CFR § 825.306(a). Though Defendant did not require Clark to submit medical certification, the fact remains that FMLA leave needs to be connected to a serious health condition. Clark said in her email to Heikkila that she required seven days of leave. Nothing in the record shows that Clark needed more than seven days to attend to her serious health condition. So any contention that she "could have taken more time"—without supporting evidence—rings hollow.

And finally, of course, Clark alleges that her harm comes from her position being eliminated. This analysis fits more neatly under Clark's Count IV (FMLA Retaliation) and will be addressed below.

### C. Count IV: FMLA Retaliation

The FMLA prohibits employers from retaliating against employees for engaging in protected activities. *Munoz v. Selig Enters.*, 981 F.3d 1265, 1275 (11th Cir. 2020). FMLA retaliation claims are assessed under the McDonnell Douglas burden-shifting framework. *Id.* FMLA retaliation requires three elements: (1) the employee engaged in statutorily protected conduct, (2) the

16

employee suffered an adverse employment action, and (3) there is a causal connection between the two. *Hubert v. St. Mary's Health Care Sys. Inc.*, 439 F.3d 1286, 1297 (11th Cir. 2006).

If the plaintiff establishes a prima facie case, the burden then shifts to the defendant to articulate a legitimate reason for the adverse action. *Id.* If the defendant provides such a reason, the plaintiff must then show that the defendant's proffered reason for the adverse action is pretextual. *Id.* To establish a retaliation claim, the plaintiff also must show that the employer's actions were motivated by an impermissible retaliatory or discriminatory animus. *Id.*

The causal connection element is satisfied if a plaintiff shows that the protected activity and adverse action were "not wholly unrelated." *Brungart v. BellSouth Telecomms., Inc.*, 231 F.3d 791, 799 (11th Cir. 2000). Generally, a plaintiff can show the two events are not wholly unrelated if the plaintiff shows that the decision maker was aware of the protected conduct at the time of the adverse employment action. *Id.*

The parties do not dispute that Clark engaged in statutorily protected conduct by requesting (and commencing) leave under the FMLA. As discussed above, the parties dispute whether Clark suffered an adverse employment

17

action considering her resignation.⁶ But the Court need not decide whether Clark was constructively discharged because for an FMLA retaliation claim, Clark also needs to prove that her RIF elimination was pretextual. Clark cannot do so.

The Court realizes the proximity between Clark's FMLA leave (commenced August 18th) and the elimination of her position (August 20th). But assuming without deciding that this proximity allows Clark to establish a prima facie case, she cannot show that Defendant's proffered reason for her termination (the RIF) is pretextual, nor can she show that Defendant's actions were motivated by an impermissible retaliatory or discriminatory animus.

A plaintiff's right to be restored to her position post-FMLA leave is not absolute. An employer can deny reinstatement "if it can demonstrate that it would have discharged the employee had he not been on FLMA leave." *Martin v. Brevard Cnty. Pub. Sch.*, 543 F.3d 1261, 1267 (11th Cir. 2008) (internal

---

⁶ When discussing Count IV, Clark suggests in her Response to Defendant's Motion for Summary Judgment that her "adverse employment action" was not just her job loss, but also the reprimand she received from Reno for insubordination. (Doc. 33 at 22). It is unclear whether the Court should consider an "adverse employment action" that was not raised in the complaint and is now being raised by Clark at the summary judgment stage. *See, e.g.*, *Cacciamani v. Target Corp.*, 622 F. App'x 800, 804 (11th Cir. 2015). But even if the Court considers this reprimand, Clark's argument still falls short in the causal connection/pretext analysis. There is no causal connection between Clark's reprimand, her FMLA leave, and her elimination. And even assuming there was, Clark has not shown that Defendant's proffered reason for the reprimand is pretextual. Clark agrees that it was her responsibility to "clean out the old storage room because new stuff had to come in" and does not deny that she failed to do what Reno asked her to do. (Doc. 28-8 at 114). Clark merely argues that her failure to dispose of the old clothes "wasn't that big a deal." (Doc. 28-8 at 114).

18

citations omitted). The RIF is a legitimate reason to eliminate Clark's position. And Clark has not shown that the RIF was a pretext to penalize her for taking FMLA leave.

First, the RIF analysis discussed above applies equally here. The RIF was conducted to "avoid unnecessary expenditure"—a legitimate, nondiscriminatory reason. *Mitchell v. City of Lafayette*, 504 F. App'x 867, 870 (11th Cir. 2013). And Clark's position was selected for elimination because it was unnecessary.

Next, there is the timeline of events to consider. While the precise timeline is unclear, Holloway presented his proposal to the Sheriff sometime in July or early August. (Doc. 28-2 at 12). That means before August, Holloway began assessing which positions could be eliminated. And Reno told Holloway in "early summer" 2021 that the Purchasing Department did not require a Director and a Manager. (Doc. 28-1 at 6).

Clark did not email HR to request FMLA leave until August 12, 2021. (Doc. 28-4 at 196). So Clark's position was under consideration for elimination long before she requested FMLA leave.[7] Even Clark is skeptical that her position was eliminated because she requested FMLA leave. (Doc. 28-8 at 136).

---

[7] Clark says she electronically submitted a leave request for her FMLA leave sometime in July (before her August email to HR). (Doc. 28-8 at 42). Accepting this fact, Clark's position was still being considered for elimination long before her leave request.

19

For these reasons, Clark has not shown pretext, nor has she shown retaliatory or discriminatory animus.

Accordingly, it is now

**ORDERED:**

1. Defendant Carmine Marceno's Motion for Summary Judgment (Doc. 28) is **GRANTED**.

2. The Clerk is **DIRECTED** to terminate any pending deadlines and close the case.

**DONE** and **ORDERED** in Fort Myers, Florida on July 19, 2024.

*Sheri Polster Chappell*
SHERI POLSTER CHAPPELL
UNITED STATES DISTRICT JUDGE

Copies: All Parties of Record